## UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TEXAS

## SAN ANTONIO DIVISION

| | |
|---|---|
| **LUIS RANGEL, SETH ADOMAKO, CHRISTINA CABELLO,  ELISABETH NGUYEN, JOSE SANCHEZ, CHRISTAL TURNER, MELISSA WILSON, MARTIN OLOYEDE, NATHALIE YEKA, TRISTEN WILSON, TERRELL WHITE, DAVID W. JESSOP, DENAIRIUS ROBINSON II, EMRAN ALHYASAT, TERESA ANAYA, TIFFANY BROWN, MED CULLINS, KEVIN D. EARLS, TYHESSIA ELLIS, CRYSTAL HAYDEN, RHONDA JAMES, EMMANUEL MAKARI, CHRISTOPHER MARTIN, CATHERINE MCCARTY, VICTOR SEKGANTSO, MARK DAVIS, CANDACE D. SMITH, LATASHA SOLOMON, ALAN TA, GEORGE VAN-LARE, SAUL VEGA, ROSALINDA A. VELA ESCOBAR, JUSTIN WIGGINS, PATRICK ACHEAMPONG, JOANNA AGUILERA, KINNEY BARCUCH, YOUNGHEE BERMINGHAM, , NINA BURNS, CHRISTIAN BURROW, MIKE DEAN, FRANKIE EARLY JR., SHARONDA FORD, JAYSON FOX, COURTNEY FRAZIER, JENNIFER GAILLEY, RYAN GRIZZLE, JEREMY HENGY, LISA HOWARD, NATHANIEL JONES, DERRICK KEITH, PROSPER KISWAGA, NORMA MARTINEZ-CANTU, GODFREY MOMANYI, MICHELLE ORR, LAWRENCE OWONIKOKO, ANDRES SALAZAR, KIMBERLY SEARCY, LACHANNA SNEED, SCOTT SULLIVAN, MIRANDA VAN COLEN, EDWARD WATTS, CARL WAYNE WILLIAMS, SEAN WILLIAMS, WILLIE GARRET, RICHARD SHAW, TREVOR REED, HEATHER MICHELLE EMMONS,**<br><br>Plaintiffs, | **NO:   SA:5:18-CV-00082-DAE**<br><br>**Honorable Judge David A. Ezra**<br><br><br><br>**FIRST AMENDED COMPLAINT**<br><br>**1.     VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT (Tex. Bus. & Com. Code §§ 17.41 *et seq.*)**<br><br>**2.     FRAUD**<br><br>**3.     NEGLIGENT MISREPRESENTATION**<br><br>**4.     RESTITUTION FOR UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |

vs.

**ADTALEM GLOBAL EDUCATION, INC.
formerly known as DEVRY EDUCATION
GROUP, INC. and DEVRY UNIVERSITY,
INC.**

           Defendants.

---

Plaintiffs complain and allege as follows:

## <u>INTRODUCTION</u>

**1.**     This lawsuit seeks damages from Defendants for violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), fraud, negligent misrepresentations, and restitution for unjust enrichment against Defendants ADTALEM GLOBAL EDUCATION, INC. and DEVRY UNIVERSITY INC. Defendants misrepresented the benefits of graduating from DeVry University, Inc. Defendants falsely and misleadingly advertised the employment rate and income rate of their graduates to induce potential students to purchase educational products and services, and to remain students through graduation. Plaintiffs relied on these misrepresentations in choosing to purchase educational products and services from DeVry University, Inc.

**2.**     Advertisements for DeVry University, Inc. stated, with slight variations, that "90% of DeVry University graduates actively seeking employment obtained careers in their field within six months of graduation…."  This was actually termed "the standard 90% ad" by counsel for Defendants, Alan N. Salpeter, at a hearing held May 2, 2016 on Defendants motion to dismiss in *Federal Trade Commission v. DeVry Education Group, Inc., et al.,* Case No. 2:16-cv-579, C.D. Cal. Consequently, the various versions of the employment rate representations will be referred to throughout this Complaint as "the Standard 90% Ad" or "the 90% Representation." As explained below, these representation are false and unsubstantiated.

3.      In addition, advertisements for DeVry University, Inc. conveyed the message that graduates obtain jobs that pay more than jobs obtained by graduates of other colleges and universities. For instance, Defendants represented that, one year after graduation, DeVry University, Inc. graduates with bachelor's degrees earned 15% more than graduates with bachelor's degrees from all other colleges and universities. This was termed "Defendants' 'higher income claim'" in *Federal Trade Commission v. DeVry Education Group, Inc., et al.,* Case No. 2:16-cv-579, C.D. Cal.  The various versions of the higher income claim will be referred to throughout this Complaint as "the Higher Income Ad" or "the Higher Earnings Representation." As explained below, these representations are false and unsubstantiated.

4.      Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action under 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and pursuant to 28 U.S.C. §1391(d) because Defendants have sufficient contacts with this district to be subject to personal jurisdiction.

## PARTIES

7.      Plaintiff Luis Rangel was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled in DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2014 with a Bachelor of Science degree in Network and Communications Management. Plaintiff attended classes at the San Antonio campus and online. Plaintiff relied on

Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad approximately in 2010 in brochures and advertised on television. The Standard 90% representation was repeated in person by an enrollment counselor during the enrollment process at the San Antonio campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

8.     Plaintiff Seth Adomako was at all relevant times a resident of Manor, Texas. Plaintiff enrolled in DeVry's Keller Graduate School of Management in 2010, paid tuition and associated costs of attending the Keller Graduate School of Management, and graduated in 2011 with a master's degree in Business Administration and in 2012 with a master's degree in Project Management.  Plaintiff attended classes at the Austin campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2010 in a television ad. The Standard 90% representation was repeated in person by an advisor and in a brochure during the enrollment process at the Austin campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income

Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

9.     Plaintiff Christina Cabello was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2010 with a bachelor's degree in Technical Management. Plaintiff attended classes at the San Antonio campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially became aware of the Standard 90% Ad in approximately 2008 through a recruiter. The Standard 90% representation was repeated in person by an advisor during the enrollment process at the San Antonio campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered

"in their field" is significantly smaller than 90%.

10.     Plaintiff Elisabeth Nguyen was at all relevant times a resident of Austin, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2012 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the Austin campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 in a brochure. The Standard 90% representation was repeated in person by an enrollment counselor during the enrollment process at the Austin campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

11.     Plaintiff Jose Sanchez was at all relevant times a resident of Carrollton, Texas. Plaintiff enrolled in DeVry in 2011, paid tuition and associated costs of attending DeVry, and graduated in 2015 with a Bachelor of Science degree in Biomedical Engineering Technology. Plaintiff attended classes at the Irving campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in

approximately 2011 via a recruiter at his high school. The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Irving campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

12.     Plaintiff Christal Turner was at all relevant times a resident of Dallas, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2011 with a bachelor's degree in Science Technical Management. Plaintiff attended classes at the Dallas campus. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 on the DeVry website.  The Standard 90% representation was repeated in person by Christopher Miller, a DeVry admissions advisor and in a brochure during the enrollment process at the Dallas campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates

7

who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

13.     Plaintiff Melissa Wilson was at all relevant times a resident of Austin, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2013 with a bachelor's degree in Technical Management. Plaintiff attended classes at the Austin campus and online.  Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 in a television ad, on the DeVry website, in DeVry brochures, and from a DeVry admissions advisors. The Standard 90% representation was repeated in person by an advisor and in a brochure during the enrollment process at the Austin campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry.  Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

14.     Plaintiff Martin Oloyede was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2014 with a Bachelor of Science degree in Computer Information Systems. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll

8

in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately in 2010 on the DeVry website. The Standard 90% representation was repeated in person by an enrollment counselor during the enrollment process over the telephone. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

15. Plaintiff Nathalie Yeka was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2012 with an associate's degree in Health Information Technology. Plaintiff attended classes at the Houston campus. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2008 on the DeVry website. The Standard 90% representation was repeated to Plaintiff in person by an advisor and in a brochure during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six

months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

16.     Plaintiff Tristen Wilson was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2012 with a bachelor's degree in Computer Information Systems.  Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2008 through a recruiter that visited his high school. The Standard 90% representation was repeated in person by an advisor and in a brochure during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of

DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

17.     Plaintiff Terrel White was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled at DeVry's Keller Graduate School of Management in 2010, paid tuition and associated costs of attending the Keller Graduate School of Management, and graduated in 2015 with a master's degree in Business Administration. Plaintiff attended classes at the San Antonio campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2010 in a television ad. The Standard 90% representation was repeated over the phone and in person by an enrollment representative and in a brochure during the enrollment process at the San Antonio campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

18.     Plaintiff David Jessop was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2014 with a bachelor's degree in Computer Technology and Engineering. Plaintiff

attended classes at the Houston Campus. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2008 on the DeVry website and on digital displays around campus. The Standard 90% representation was repeated in person by an admissions counselor during the enrollment process at the Houston Campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

19.     Plaintiff Denarius Robinson II was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2015 with a Bachelor of Science degree in Multimedia Design and Development. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 on the DeVry website and through a DeVry recruiter who visited his high school. The Standard 90% representation was repeated in person by a DeVry representative during the enrollment process at the Houston Campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the

Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

20.     Plaintiff  Emran Alhyasat was at all relevant times a resident of Webster, Texas. Plaintiff enrolled in DeVry's Keller Graduate School of Management in 2012, paid tuition and associated costs of attending Keller Graduate School of Management, and graduated in 2014 with a master's degree in Accounting and Finance Management. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll at the Keller Graduate School of Management. Plaintiff initially saw the Standard 90% Ad in approximately 2012 on television, on the DeVry website and via emails and phone conversations with an advisor. The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from the DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior

to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

21.     Plaintiff Teresa Anaya was at all relevant times a resident of Humble, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2011 with a bachelor's degree in Technical Management.  Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 at a military base in Houston Texas with a DeVry recruiter and on the DeVry website.  The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

14

22.     Plaintiff Tiffany Brown was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2011, paid tuition and associated costs of attending DeVry, and graduated in 2013 with a bachelor's degree in Business and Technical Management. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2011 on campus with a recruiter and heard the ad on the radio. The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

23.     Plaintiff Med Cullins was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry's Keller Graduate School of Management in 2012, paid tuition and associated costs of attending the Keller Graduate School of Management, and graduated in 2014 with a master's degree in Business Administration. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2012 on television and

through email advertisements. The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

24. Plaintiff Kevin D. Earls was at all relevant times a resident of Angleton, Texas. Plaintiff enrolled in DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2011 with a bachelor's degree in Technical Management and in 2013 with a master's degree in Business Administration from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the Sugar Land campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2010 on a television commercial and from a DeVry representative. The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Sugar Land campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment

in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

25.     Plaintiff Tyhessia Ellis was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2012 with a bachelor's degree in Science Management and graduated in 2014 with a master's degree in Human Resources Management from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 on the DeVry website and heard about it during a phone call with a recruiter. The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs

after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

26.    Plaintiff Crystal Hayden was at all relevant times a resident of Porter, Texas. Plaintiff enrolled in DeVry in 2014, paid tuition and associated costs of attending DeVry, and graduated in 2016 with a bachelor's degree in Technical Management. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2014 in a DeVry television ad. The Standard 90% representation was repeated in person by an academic advisor during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

27.    Plaintiff  Rhonda James was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2013   with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately

2009 in an email from DeVry and on the DeVry website. The Standard 90% representation was repeated in person by an academic advisor during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

28.     Plaintiff Emmanuel Makari was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2011 with an associate's degree in Network Systems Administration. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 on the DeVry website and through emails from DeVry.  The Standard 90% representation was repeated in person by an advisor and on brochures and posters provided during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry.

Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

29.     Plaintiff Christopher Martin was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2011 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately in 2009 on the DeVry website. The Standard 90% representation was repeated in person by an admissions counselor during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

30.     Plaintiff Catherine McCarty was at all relevant times a resident of Houston, Texas.

Plaintiff enrolled in DeVry in 2014, paid tuition and associated costs of attending DeVry, and graduated in 2016 with a bachelor's degree in Technical Management. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2014 on television. The Standard 90% representation was repeated in person by a recruiter during a visit to her job at United Airlines in Houston prior to enrollment. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry.  Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**31.**     Plaintiff Victor Sekgantso was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2011 with a bachelor's degree in Technical Management. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 on a DeVry brochure and heard about it from speaking to a DeVry representative. The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher

Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**32.** Plaintiff Mark Davis was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2013 with a bachelor's degree in Technical Management. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 on the DeVry website. The Standard 90% representation was repeated by a recruiter over the phone during the enrollment process. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of

DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

33.     Plaintiff Candace D. Smith was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2012 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 on television commercials and  Facebook. The Standard 90% representation was repeated over the phone with a recruiter and in person by an admissions advisor and in a brochure during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

34.     Plaintiff Latasha Soloman was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2011, paid tuition and associated costs of attending DeVry, and graduated in 2014 with a bachelor's degree in Business Administration. Plaintiff attended classes

at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2011 on the DeVry website.  The Standard 90% representation was repeated in person by a counselor and in a brochure during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

35.     Plaintiff Alan Ta was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2011, paid tuition and associated costs of attending DeVry, and graduated in 2014 with a Bachelor of Science degree in Computer Information Systems. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2011 on the DeVry website and Television ads.  The Standard 90% representation was repeated in person by a recruiter and in a brochure during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain

a job in his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

36.     Plaintiff George Van-Lare was at all relevant times a resident of Katy, Texas. Plaintiff enrolled in DeVry's Keller Graduate School of Management in 2010, paid tuition and associated costs of attending the Keller Graduate School of Management, and graduated in 2013 with a master's degree in Business Administration. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in the Keller Graduate School of Management. Plaintiff initially saw the Standard 90% Ad in approximately 2010 through a DeVry representative and posters on campus.  The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from the Keller Graduate School of Management.  Plaintiff would not have enrolled in the Keller Graduate School of Management  if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

37.     Plaintiff Saul Vega was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2011 with a Bachelor of Science degree in Business Administration and in 2014 with a Master of Public Administration and a Master of Business Administration with a graduate certificate in Health Services Management from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially learned about the Standard 90% Ad in approximately 2008 through a recruiter that visited his high school.   The Standard 90% representation was repeated in person by an advisor and in a brochure during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

38.     Plaintiff Rosalinda A. Vela Escobar was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2012, paid tuition and associated costs of attending DeVry, and graduated in 2016 with a Bachelor of Science degree in Healthcare Administration. Plaintiff

attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2012 on television and the DeVry website.  The Standard 90% representation was repeated in person by an advisor and in a brochure during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry.  Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

39.     Plaintiff Justin Wiggins was at all relevant times a resident of Houston, Texas. Plaintiff enrolled in DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2013 with a bachelor's degree in Technical Management. Plaintiff attended classes at the Houston campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2010 through a recruiter at his place of work.  The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Houston campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six

months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

40. Plaintiff Patrick Acheampong was at all relevant times a resident of Arlington, Texas. Plaintiff enrolled in DeVry in 2013, paid tuition and associated costs of attending DeVry, and graduated in 2016 with a bachelor's degree in Technical Management. Plaintiff attended classes at the Irving campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2013 on television. The Standard 90% representation was repeated in person by an advisor and in a brochure during the enrollment process at the Irving campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

28

41.     Plaintiff Joanna Aguilera was at all relevant times a resident of Austin and Dallas, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2012 with a bachelor's degree in Technical Management. Plaintiff attended classes at the Austin and Irving campuses and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2008 on campus with an advisor. The Standard 90% representation was repeated in person by an advisor and in a brochure during the enrollment process at the Austin campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

42.     Plaintiff Kinney Barcuch was at all relevant times a resident of Cleburne, Vanalstyne, and Carrolton, Texas. Plaintiff enrolled in DeVry in 2012, paid tuition and associated costs of attending DeVry, and graduated in 2014 with an associates' degree in Network Administration and in 2016 with a bachelor's degree in Network and Communications Management. Plaintiff attended classes at the Fort Worth and Irving campuses and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw

29

the Standard 90% Ad in approximately 2012 via a television ad.  The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Fort Worth campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

43.     Plaintiff Younghee Bermingham was at all relevant times a resident of Arlington, Texas. Plaintiff enrolled in DeVry in 2011, paid tuition and associated costs of attending DeVry, and graduated in 2013 with a Bachelor of Science degree in Multimedia Design & Development. Plaintiff attended classes at the Fort Worth, Irving and Houston campuses and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2011 on television.  The Standard 90% representation was repeated in person by an advisor and in a brochure during the enrollment process on campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry.  Plaintiff would not have enrolled

30

in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

44.     Plaintiff Nina Burns was at all relevant times a resident of Quitman and Alba, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2011 with a bachelor's degree in Business Administration. Plaintiff attended classes on online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2008 on the DeVry website and via a DeVry recruiter. The Standard 90% representation was repeated in person by an advisor during the enrollment process at a hotel in Longview, Texas, during a DeVry admissions meeting. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

45.     Plaintiff Christian Burrow was at all relevant times a resident of Fort Worth, Texas. Plaintiff enrolled in DeVry in 2012, paid tuition and associated costs of attending DeVry, and graduated in 2017 with an associate's degree in Network Systems Administration. Plaintiff attended classes at the Fort Worth and Irving campuses and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially became aware of the Standard 90% Ad in approximately 2012 via radio ads.   The Standard 90% representation was repeated in person by an advisor and in a brochure during the enrollment process at the Fort Worth campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

46.     Plaintiff Mike Dean was at all relevant times a resident of Garland, Texas. Plaintiff enrolled in DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2013 with a bachelor's degree in Technical Management. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially heard about the Standard 90% Ad in approximately 2010 via an advisor on campus.   The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Richardson campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff

would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

47.     Plaintiff Frankie Early Jr. was at all relevant times a resident of Irving, Texas. Plaintiff enrolled in DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2016 with a bachelor's degree in Network Communications Management. Plaintiff attended classes at the Irving campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2010 in a television ad. The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Irving campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

48.     Plaintiff Sharonda Ford was at all relevant times a resident of Longview, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2011 with an associate's degree in Health Information Technology. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2008 on the DeVry website.   The Standard 90% representation was repeated via a phone call by an advisor during the enrollment process. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

49.     Plaintiff Jayson Fox was at all relevant times a resident of Edinburg and Austin, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2012 with a bachelor's degree in Technical Management and Human Resources. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff became aware of the Standard 90% Ad in approximately 2009 on the DeVry website, on the radio, and in a phone conversation with an advisor. The Standard 90% representation was repeated by an advisor on the phone during the enrollment process. Plaintiff

continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

50.     Plaintiff Courtney Frazier was at all relevant times a resident of Irving, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2013 with a bachelor's degree in Network and Communications Management. Plaintiff attended classes at the Irving campus and on online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 through a DeVry recruiter. The Standard 90% representation was repeated via a phone call with an advisor during the enrollment process at the Irving campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates

who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

51.     Plaintiff Jennifer Gailley was at all relevant times a resident of Garrison, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2012 with an associates' degree in Health Information Technology.  Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 on the DeVry website and during a conversation with a recruiter over the phone.   The Standard 90% representation was repeated in person by an advisor during the enrollment process over the phone and online. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

52.     Plaintiff Ryan Grizzle was at all relevant times a resident of Arlington and Amarillo, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending

DeVry, and graduated in 2013 with a Bachelor of Science degree in Electronics Engineering Technology. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2008 on the DeVry website and through a DeVry recruiter. The Standard 90% representation was repeated over the phone by a DeVry representative during the enrollment process. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry.  Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

     **53.**     Plaintiff Jeremy Hengy was at all relevant times a resident of Lewisville, Texas. Plaintiff enrolled in DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2015 with a Bachelor of Science degree in Multimedia Design and Development. Plaintiff attended classes at the Irving Campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2010 on television. The Standard 90% representation was repeated in person by a counselor during the enrollment process at an open enrollment event at the Irving campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing

to remain a student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

54.     Plaintiff Lisa Howard was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry's  Keller Graduate School of Management in 2010, paid tuition and associated costs of attending the Keller Gradate School of Management, and graduated in 2013 with a master's degree in Business Administration. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2010 on the DeVry website.  The Standard 90% representation was repeated by an enrollment counselor during the enrollment process over the phone. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry.  Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

55.     Plaintiff Nathaniel Jones was at all relevant times a resident of Irving, Texas. Plaintiff enrolled in DeVry in 2010, paid tuition and associated costs of attending DeVry, and

graduated in 2013 with an associate's degree in Network Systems Administration. Plaintiff attended classes at the Irving campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately in 2010 on television prior to a DeVry recruiter visiting his place of work, Nissan of Irving, to recruit students. The Standard 90% representation was repeated in person by an enrollment counselor during the enrollment process at the Irving campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

56.    Plaintiff Derrick Keith was at all relevant times a resident of Prosper, Texas. Plaintiff enrolled in DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2017 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the Irving Campus. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2010 on the DeVry website while conducting research on the school. The Standard 90% representation was repeated in person by an enrollment counselor during the enrollment process at the Irving Campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in,

his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

57.    Plaintiff Prosper Kiswaga was at all relevant times a resident of Dallas, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2013 with an associate's degree in Network Systems Administration. Plaintiff attended classes at the Irving, Richardson, and Houston campuses. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 in a brochure. The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Irving campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

58.     Plaintiff Norma Martinez-Cantu was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2012 with an associate's degree in Health Information Technology. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially heard the Standard 90% Ad in approximately the summer of 2008 over the phone while speaking with an enrollment representative. The Standard 90% representation was repeated by an academic advisor during the enrollment process over the phone. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

59.     Plaintiff Godfrey Momanyi was at all relevant times a resident of McKinney, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2010 with an Associate's of Applied Science degree, in 2013 with a Bachelor of Science degree in Network Systems Administration and in 2015 with a Master of Science degree in Information Systems Management. Plaintiff attended classes at the Richardson and Irving campuses and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in

DeVry. Plaintiff initially saw the Standard 90% Ad in approximately in 2010 on television. The Standard 90% representation was repeated in person by an enrollment counselor during the enrollment process at the Richardson campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

      **60.**    Plaintiff Michelle Orr was at all relevant times a resident of Little Elm, Texas. Plaintiff enrolled in DeVry in 2011, paid tuition and associated costs of attending DeVry, and graduated in 2014 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the Irving and Richardson campuses and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately in 2011 in brochures. The Standard 90% representation was repeated in person by an enrollment counselor during the enrollment process at the Irving campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six

months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

61.     Plaintiff Lawrence Owonikoko was at all relevant times a resident of Dallas, Texas. Plaintiff enrolled in DeVry's Keller Graduate School of Management in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2011 with a master's degree in Information Systems Management. Plaintiff attended classes at the Irving campus. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 on the DeVry website. The Standard 90% representation was repeated in person by an enrollment counselor during the enrollment process at the Irving campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual

43

percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

62.     Plaintiff Andres Salazar was at all relevant times a resident of Irving, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2015 with a Bachelor's degree in Electronic Engineering. Plaintiff attended classes at the Fort Worth and Irving campuses and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 on the DeVry website and on YouTube. The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Irving campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

63.     Plaintiff Kimberly Searcy was at all relevant times a resident of Winnsboro, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2012 with a bachelor's degree in Technical Management. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry.

Plaintiff initially saw the Standard 90% Ad in approximately 2008 on the DeVry website. The Standard 90% representation was repeated via a phone conversation with an admissions advisor during the enrollment process. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

     **64.**    Plaintiff LaChanna Sneed was at all relevant times a resident of Fort Worth, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2012 with a master's degree in Business Administration. Plaintiff attended classes at the Fort Worth campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 in an e-mail from DeVry. The Standard 90% representation was repeated in person by a recruiter and in a brochure during the enrollment process at the Fort Worth campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six

months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

65.    Plaintiff Scott Sullivan was at all relevant times a resident of Wiley, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2012 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2008 on the DeVry website and through a DeVry recruiter. The Standard 90% representation was repeated in person by an advisor during the enrollment process at the Richardson campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the

time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

66.     Plaintiff Miranda Van Colen was at all relevant times a resident of Sour Lake, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2010 with an associate's degree in Web Graphic Design. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2008 on the DeVry website. The Standard 90% representation was repeated to Plaintiff over the phone by an admissions advisor. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

67.     Plaintiff Edward Watts was at all relevant times a resident of Commerce, Texas. Plaintiff enrolled in DeVry in 2012, paid tuition and associated costs of attending DeVry, and graduated in 2015 with an associate's degree in Electronics and Computer Technology. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately in 2012 on television commercials. The Standard 90% representation was repeated to Plaintiff over the phone by an

enrollment counselor during the enrollment process. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

68.     Plaintiff Carl Wayne Williams was at all relevant times a resident of Irving and Fort Worth, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated costs of attending DeVry, and graduated in 2015 with a bachelor's degree in Network Communication Management. Plaintiff attended classes at the Fort Worth, and Irving campuses. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009 on the DeVry website and in person.  The Standard 90% representation was repeated in person by DeVry counselors and in a brochure during the enrollment process at the Fort Worth campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that

could be reasonably considered "in their field" is significantly smaller than 90%.

69.     Plaintiff Sean Williams was at all relevant times a resident of Irving and Dallas, Texas. Plaintiff enrolled in DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2012 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the Irving and Dallas campuses. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2008 on the DeVry website. The Standard 90% representation was repeated in person by a recruiter and in a brochure during the enrollment process at the Irving campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

70.     Plaintiff Willie Garret was at all relevant times a resident of Mesquite, Texas. Plaintiff enrolled in DeVry in 2011, paid tuition and associated costs of attending DeVry, and graduated in 2014 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the Mesquite campus and online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2011 in a television ad as well as heard the ads on the radio. The Standard 90% representation was repeated over the phone by a DeVry representative during the enrollment process online and in brochures

at a DeVry campus. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants'
Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the
Higher Income Ad in choosing to remain a student at DeVry.  Plaintiff actively sought employment
in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff
would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad:
(1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry;
(2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants
excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result,
the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that
could be reasonably considered "in their field" is significantly smaller than 90%.

      **71.**     Plaintiff Richard Shaw was at all relevant times a resident of Yokan, Oklahoma,
Plano, Texas and Dallas, Texas. Plaintiff enrolled in DeVry in 2009, paid tuition and associated
costs of attending DeVry, and graduated in 2011 with a Bachelor of Science degree in Technical
Management from DeVry in the state of Texas. Plaintiff attended classes at the Oklahoma City
and Irving, Texas campuses and online. Plaintiff relied on Defendants' Standard 90% Ad when
choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2009
on the DeVry website.  The Standard 90% representation was repeated in person by an admissions
advisor and in a brochure during the enrollment process. Plaintiff continued to see the Standard
90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied
on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry.
Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of
graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order
to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs

they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

72. Plaintiff Trevor Reed was at all relevant times a resident of College Station, Texas. Plaintiff enrolled in DeVry in 2011, paid tuition and associated costs of attending DeVry, and graduated in 2013 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad approximately in 2011 on television, Facebook and website advertisements. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

73. Plaintiff Heather Emmons was at all relevant times a resident of Gunbarrel City, Texas. Plaintiff enrolled in DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2012 with an associate's degree in Health Information Technology. Plaintiff

attended classes online. Plaintiff relied on Defendants' Standard 90% Ad when choosing to enroll in DeVry. Plaintiff initially saw the Standard 90% Ad in approximately 2010 via a DeVry brochure. The Standard 90% representation was repeated via a phone call by an advisor during the enrollment process. Plaintiff continued to see the Standard 90% Ad, and also saw Defendants' Higher Income Ad, while a student at DeVry. Plaintiff relied on the Standard 90% Ad and the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled in DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

74.     Defendant Adtalem Education Group, Inc. ("Adtalem") is a publicly traded Delaware corporation with its principle place of business at 3005 Highland Parkway, Downers Grove, Illinois 60515. Adtalem was formerly known as DeVry Education Group, Inc., which was formerly known as DeVry, Inc. Adtalem transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, with respect to the acts and practices of DeVry University, Inc. identified below, Adtalem dominated or controlled those acts and practices, knew of or approved those acts and practices, and/or benefitted from those acts and practices. Adtalem disseminated and/or controlled dissemination of the challenged advertisements.

75.     Defendant DeVry University, Inc., including its Keller Graduate School of Management ("DeVry"), is a Delaware corporation that is a subsidiary of Adtalem, with its principle place of business at 3005 Highland Parkway, Downers Grove, Illinois 60515. DeVry transacts or has transacted business in this district and throughout the United States. At all times

material to this Complaint, acting alone or in concert with others, DeVry has advertised, marketed, distributed, or sold educational products and services to consumers, throughout the United States, including to Plaintiffs in the state of Texas. Adtalem and DeVry are collectively referred to as "Defendants" in this Complaint

## FACTS COMMON TO CAUSES OF ACTION

76.     To induce prospective students to purchase DeVry educational products and services, Defendants have disseminated, or caused to be disseminated, advertisements for their educational products and services in various formats, including but not limited to, television advertisements, websites, YouTube videos, brochures, radio advertisements, social media platforms and print advertisements.

77.     Since at least 2008, Defendants' advertisements have been widely disseminated throughout the United States including within the state of Texas and this federal district.

78.     Defendants have widely disseminated this and other advertisements containing the same or substantially similar statements and depictions pertaining to the "Standard 90% Ad" and the "Higher Income Ad" to induce prospective students to purchase DeVry educational products and services.

79.     Plaintiffs were persuaded to purchase DeVry's educational products and services, took classes at Defendants' locations in Texas, and some attended Devry locations within the jurisdiction of the United States District Court for the Western District of Texas, San Antonio Division.

80.     Adtalem has at all relevant times operated DeVry, including its Keller Graduate School of Management, a private, for-profit postsecondary educational institution with campuses throughout the United States, and at times has had as many as 96 campuses. DeVry also offered

online classes and degree programs.

81.    Annual new-student enrollment between 2008 and 2014 ranged from approximately 29,000 to 49,000. More than 870,000 students have reportedly enrolled at DeVry since 1975.

82.    Adtalem's total gross revenues between 2008 and mid-2015 reportedly exceeded $14.5 billion. DeVry's gross revenues between 2008 and mid-2015 exceeded $8.6 billion.

83.    In each fiscal year between and including 2011 and 2014, DeVry spent more than $135 million on advertising, marketing, or other promotion of its educational products and services.

84.    Defendants misrepresented the benefits of obtaining a degree from DeVry in advertising, marketing, or other promotion of educational products and services. The advertising, marketing, or other promotion included statements such as "90% of all graduates in the active job market had careers in their fields within six months" and "90% of our **grads** actively seeking employment **had careers** in 6 months." Defendants also targeted Spanish language markets with similar statements, such as "el 90% de nuestros **graduados** que buscaron empleo de forma activa **ejercian su carrera** en 6 meses."   Although Defendants slightly varied the wording and percentages in their statements, the consistent message of the Standard 90% Ads was that a very high percentage of Defendants' graduates obtained a good job in their field of study within six months of graduation.

85.    The 90% Representations were made through various means such as television, internet webpages, YouTube, brochures, print advertisements, emails, radio ads and in person by Defendants' employees or representatives.

86.    Defendants also represented that DeVry graduates would earn more money, as compared to the graduates of other colleges and universities, with statements such as "An education that pays" and "One year after graduation, DeVry University grads report earning 15% more than median earnings reported by all other bachelor's degree graduates."

87.     Defendants' actions led to a lawsuit filed by the Federal Trade Commission to enjoin the deceptive trade practices. *See Federal Trade Commission v. DeVry Education Group, Inc., et al.,* Case No. 2:16-cv-579, C.D. Cal., filed January 27, 2016 (the "FTC case").

88.     The FTC case was reported as settled in December 2016.

89.     Upon information and belief, based on the May 2, 2016 hearing transcript in the FTC case, the FTC spent two years investigating the case before filing suit against Defendants.

90.     Upon information and belief, based on the August 30, 2016 hearing transcript in the FTC case, Defendants produced more than 2 million pages of documents to the FTC.

91.     Upon information and belief, the Standard 90% Ads and the Higher Earnings Ads were false and misleading.[1] The FTC case was reported as settled in December 2016. The settlement included a permanent injunction against "[m]aking any representation, expressly or by implication, about the benefit of any educational product or service, or the success or likely success of any student or graduate, unless the representation is non-misleading, and, at the time such representation is made, DeVry possesses and relies upon Competent and Reliable Evidence that is sufficient to substantiate that the representation is true."

92.     Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, in order to manufacture support for the 90% Representation, Defendants counted a substantial number of DeVry graduates who should not be counted and excluded a substantial number of graduates who should not be excluded.

93.     Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, in order to manufacture support for the 90% Representation, Defendants included a substantial percentage of graduates who did not obtain a job as a result of earning a degree from DeVry.

---

[1] The information and belief supporting Plaintiffs' claims that the Standard 90% Ads and Higher Income Ads were false and misleading is based on the allegations contained in the complaint filed in the FTC case, the fact that the allegations were made after a two-year investigation by the FTC involving a document production by Defendants of over 2 million pages, the fact that counsel for the FTC were required to have a good faith basis for the allegations, the statements by counsel and the court in the May 2, 2016 and August 30, 2016 hearing transcripts from the FTC case, the fact that Defendants decided to settle the FTC case rather than move for summary judgment, and the terms of the settlement agreement.

94.     Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, in order to manufacture support for the 90% Representation, a significant percentage of the jobs that Defendants counted as being in the graduate's field of study include jobs that would not reasonably be considered in the graduate's field of study.

95.     Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, in order to manufacture support for the 90% Representation, Defendants also excluded certain students from the calculation who in fact were actively seeking employment.

96.     Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could reasonably be considered "in their field" is significantly smaller than 90%.

97.     Upon information and belief, based on an announcement from the Attorney General of Massachusetts, the investigation leading to that lawsuit against and settlement with DeVry found that certain DeVry programs had job placement rates as low as 52%.

98.     Upon information and belief, based on the May 2, 2016 and August 30, 2016 hearing transcripts from the FTC case, the FTC had more factual information from its investigation than was included in the complaint.

99.     Upon information and belief, based on the May 2, 2016 hearing transcript, only some "examples" of the Standard 90% Ad were included in the complaint filed in the FTC case. Counsel for the FTC, Christina V. Tusan, argued at the hearing: "We're not going to include every example. We're not required to."

100.    Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, Defendants' did not have a reasonable basis for making the Higher Earnings Representations.

101.    Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, the Higher Earnings Representations were based upon a third-party "income report." The sampling methods and methodology behind the income report gave or should have

given Defendants reason to question the reliability of the conclusions and information contained in the report. Among other problems, the comparison of incomes of DeVry graduates with graduates from other schools did not adjust for significant salary drivers such as age, experience, and degree field.

102.     Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, the statistics collected by DeVry from thousands of its graduates about their incomes differed significantly from the third-party's statistics.

103.     Upon information and belief, based on the allegations contained in the complaint filed in the FTC case, comparing the information in Defendants' own files with publicly available income data will show that DeVry graduates, one year after graduating, do not in fact earn significantly more than graduates from all other schools combined.

104.     Upon information and belief, based on the August 30, 2016 hearing transcript from the FTC case, documents in DeVry's possession and produced to the FTC will provide additional support for the allegations that the Standard 90% Ads and the Higher Earnings Representations were false and misleading. As noted by the Honorable Suzanne H. Segal during the hearing, the FTC's disclosures "gave quite a bit of detail to the FTC's allegations against the Defendants and included some very specific allegations and references to documents."

105.     In the words of the FTC's counsel, Ms. Tusan, "[t]he detailed provision we gave in our initial disclosures, which went above and beyond what was required, was in response to Defendants' raising of those issues with the Court and saying they were unclear of our theory of the case, they felt like they needed more detail." However, the disclosures were placed under seal and that additional level of detail is not available to counsel for Plaintiffs at this time.

106.     Upon information and belief, based on the August 30, 2016 hearing transcript from the FTC case, the FTC as part of its investigation obtained "third-party documents" through subpoenas that support the allegations in the complaint filed in the FTC case.

57

107.   Defendants intended that plaintiffs rely on the 90% Representations and the Higher Earnings Representations when deciding to purchase DeVry's educational products and services, and/or to continue their studies with DeVry through graduation.

108.   Plaintiffs reasonably relied on Defendants' representations in making their decision to purchase DeVry's educational products and services, and/or to continue their studies through graduation.

109.   As a result of the reasonable reliance by each named Plaintiff herein, Plaintiffs incurred financial harm, and other damages.

110.   Plaintiffs' claims presented herein rise to the level of plausibility set forth in *Bell Atlantic Corp. v. Twombly* by asserting the who, what, where and how of the misconduct which caused Plaintiffs' damages: The "who" (Defendants); the "what" (misrepresentations regarding post-graduation employment rates and income); the "when" (between 2008 and 2016); the "where" (TV, Youtube, brochures, websites, emails, radio, in person); and the "how" (by miscounting three categories of graduates for the Standard 90% Ad and unreliable sampling and methodology for the Higher Earnings Representation). *See* Fed. Trade Comm'n v. DeVry Educ. Grp., Inc., No. CV-16-00579-MWF-SSX, 2016 WL 6821112, at *3 (C.D. Cal. May 9, 2016). *See generally Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

## FIRST CAUSE OF ACTION
### DECEPTIVE TRADE PRACTICES ACT

111.   Plaintiffs incorporate paragraphs 1 through 110 of this Complaint as though fully alleged herein.

112.   Defendants misrepresented the benefits of obtaining a degree from DeVry in advertising, marketing, or other promotion of its educational products and services. The 90% Representations—that 90% of Defendants' graduates were employed in their field within six

months of graduation— were made through various means such as television, internet webpages, YouTube, brochures, radio, print advertisements, and in person by Defendants' employees. The 90% Representations were false, misleading, and deceptive. Defendants' Higher Earnings Representations were also false, misleading, and deceptive. Plaintiffs reasonably relied on Defendants' representations in deciding to enroll in and/or to continue their studies at DeVry through graduation. Plaintiffs did not obtain employment or a career in their field of study within six months of graduation, despite diligent efforts to secure post-graduation employment within their field of study.

113.    Plaintiffs are consumers as defined in the DTPA in that Plaintiffs sought or acquired educational products and services by purchase from DeVry and the purchase of these educational products and services are the basis of Plaintiffs' claims.

114.    Plaintiffs each delivered to Defendants a demand letter detailing their claims, including the amount of the claim, together with a demand for reasonable attorney's fees and expenses to the date of the letter. Therefore, all conditions precedent to Plaintiffs' recovery in this action have been performed or have occurred.

115.    Defendants have not tendered payment or presented an adequate offer of settlement in writing in response to Plaintiffs' demand letters.

116.    Defendants knowingly or intentionally engaged in false, misleading, or deceptive practices in the transactions described above, which were a producing cause of damages to Plaintiffs. Defendants' conduct took advantage of Plaintiffs' lack of knowledge, ability, experience, or capacity to a grossly unfair degree so as to be a producing cause of damages to Plaintiffs.

117.    As a result of Defendants' conduct, Plaintiffs have been injured in that they paid tuition, purchased books and supplies, incurred debt, and attended classes in reliance on Defendants' representations. Plaintiffs have also suffered mental anguish as a result of Defendants' conduct.

118.    Defendants are required to restore to Plaintiffs any money or property that was

illegally acquired in violation of the Texas Deceptive Trade Practices Act.

**119.**   To pursue this claim against Defendants, Plaintiffs had to retain The Carlson Law Firm, PC as attorneys and agreed to pay that law firm reasonable fees for their services in maintaining Plaintiffs' claims. Plaintiffs are entitled to recover those fees from Defendants under Section 17.50(d) of the Texas Business and Commerce Code.

## SECOND CAUSE OF ACTION
### FRAUD

**120.**   Plaintiffs incorporate paragraphs 1 through 119 of this Complaint as though fully alleged herein.

**121.**   Defendants made material representations to Plaintiffs about the employment rate of DeVry graduates. The 90% Representations—that 90% of Defendants' graduates were employed in their field of study within six months of graduation—were made through various means such as television, internet webpages, radio, YouTube, brochures, print advertisements, and in person by Defendants' employees.

**122.**   Defendants' representations about the employment rate of DeVry graduates were false.

**123.**   Defendants also represented that DeVry graduates would earn more money with statements such as "An education that pays" and "One year after graduation, DeVry University grads report earning 15% more than median earnings reported by all other bachelor's degree graduates."

**124.**   The Higher Earnings Representations were also false.

**125.**   When the representations were made, Defendants either knew that they were false or made the representations recklessly without knowledge of the truth and as a positive assertion.

126.    Defendants made the 90% Representations and Higher Earnings representations with the intent that Plaintiffs should act on them by enrolling in DeVry and/or continuing their studies with DeVry through graduation.

127.    Plaintiffs acted in reliance on Defendants' representations in making their decision to enroll and/or continue their studies with Defendants through graduation.

128.    Plaintiffs did not obtain employment or a career in their field of study within six months of graduation.

129.    Plaintiffs thereby suffered damages.

130.    Plaintiffs are hereby entitled to restitution of the monetary benefits conferred unto Defendants, where under Texas law, one who is induced by fraud to enter into a contract may be entitled to an equitable remedy of restitution that would restore him or her to the position s/he would have been in had s/he not been the victim of fraud.

## THIRD CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

131.    Plaintiffs incorporate paragraphs 1 through 130 of this Complaint as though fully alleged herein.

132.    In the course of their business, Defendants' supplied false information about the benefits of obtaining a degree from DeVry in advertising, marketing, or other promotion of its educational products and services. Defendants supplied false information about the employment rate of its graduates, the 90% Representations, for the guidance of others, including Plaintiffs herein.

133.    In the course of their business, Defendants also represented that DeVry graduates would earn more money than graduates of other colleges and universities, with statements such as "An education that pays" and "One year after graduation, DeVry University grads report earning 15% more than median earnings reported by all other bachelor's degree graduates"—the Higher

Earnings Representations. These representations were made for the guidance of others, including Plaintiffs herein.

**134.** Although Defendants may claim to have believed that the 90% Representations and Higher Earnings Representations were true, Defendants did not exercise reasonable care or competence in obtaining or communicating the information.

**135.** Plaintiffs justifiably relied on Defendants' representations in deciding to purchase educational products and services from DeVry, and/or continue their studies with DeVry through graduation.

**136.** Plaintiffs did not obtain employment or a career in their field of study within six months of graduation, and Defendants' negligent misrepresentations proximately caused Plaintiffs' injuries and damages.

**137.** Plaintiffs are entitled to a restoration of the monetary benefits conferred unto Defendants, where these monetary benefits were wrongfully secured by Defendants and it would be unconscionable for Defendants to retain them.

## FOURTH CAUSE OF ACTION
### RESTITUTION FOR UNJUST ENRICHMENT

**138.** Plaintiffs incorporate paragraphs 1 through 137 of this Complaint as though fully alleged herein.

**139.** Defendants obtained benefits from Plaintiffs in the form of monies paid for tuition, fees, and other costs associated with enrolling in and continuing to pursue studies at DeVry through graduation.

**140.** Defendants misrepresented the benefits of obtaining a degree from DeVry. Defendants represented that 90% of Defendants' graduates were employed in their field of study within six months of graduation.

**141.** Defendants' representations about the employment rate of DeVry graduates were false.

**142.** Defendants also represented that DeVry graduates would earn more money with statements such as "An education that pays" and "One year after graduation, DeVry University grads report earning 15% more than median earnings reported by all other bachelor's degree graduates."

**143.** The Higher Earnings Representations were also false.

**144.** As such, Defendants have been unjustly enriched through wrongfully obtaining benefits from Plaintiffs by fraud and/or the taking of undue advantage of Plaintiffs.

**145.** Plaintiffs are therefore entitled to restitution and/or restoration for unjust enrichment and/or money had and received.

## DEMAND FOR JURY TRIAL

**146.** In accordance with Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury on all issues.

## PRAYER FOR RELIEF

Therefore, Plaintiffs respectfully request that Defendants be cited to appear and answer, and that on final hearing, Plaintiffs have:

a. Restitution;

b. Economic damages;

c. Mental anguish damages;

d. Additional DTPA damages of three times each plaintiff's economic and mental anguish damages;

e. Attorney's fees through entry of final judgment in this action;

f. Prejudgment and postjudgment interest;

g. Costs of this suit; and

h. Any other relief that the Court finds proper.

Respectfully submitted,

**THE CARLSON LAW FIRM, P.C.**
1717 N. Interstate Highway 35, Suite 305
Round Rock, Texas 78664
Phone: (512) 671-7277
Fax:    (512) 238-0275

By:     /s/ John R. Fabry
        **JOHN R. FABRY, OF COUNSEL**
        Texas Bar No. 06768480

        JFabry@carlsonattorneys.com

        **LUIS MUNOZ**
        Texas Bar No. 24081056

        LMunoz@carlsonattorneys.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document was

filed and served electronically through the Court's CM/ECF system on <u>May 8, 2018</u> upon the

following counsel of record:

Terance A. Gonsalves
**STEPTOE & JOHNSON LLP**
115 South LaSalle Street, Suite 3100
Chicago, Illinois 60603
Phone:  (312) 577-1275
Fax:  (312) 577-1370
tgonsalves@steptoe.com

Stephen K. Lecholop II
**ROSENTHAL PAUERSTEIN SANDOLOSKI AGATHER LLP**
755 East Mulberry Ave., Suite 200
San Antonio, Texas 78212
Phone:  (210) 244-8836
Fax:  (210) 244-8936
slecholop@rpsalaw.com

/s/ John R. Fabry
**JOHN R. FABRY, OF COUNSEL**
