UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| LUIS RANGEL, SETH ADOMAKO,CHRISTINA CABELLO, ELISABETH NGUYEN, JOSE SANCHEZ, CHRISTAL TURNER, MELISSA WILSON, MARTIN OLOYEDE, NATHALIE YEKA, TRISTEN WILSON, TERRELL WHITE, DAVID W.JESSOP, DENAIRIUS ROBINSON II, EMRAN ALHYASAT, TERESA ANAYA, TIFFANY BROWN, MED CULLINS, KEVIN D. EARLS, TYHESSIA ELLIS, CRYSTAL HAYDEN, RHONDA JAMES, EMMANUEL MAKARI, CHRISTOPHER MARTIN, CATHERINE MCCARTY, VICTOR SEKGANTSO, MARK DAVIS, CANDACE D. SMITH, LATASHA SOLOMON, ALAN TA, GEORGE VAN-LARE, SAUL VEGA, ROSALINDA A. VELA ESCOBAR, JUSTIN WIGGINS, PATRICK ACHEAMPONG, KINNEY BARCUCH, NINA BURNS, CHRISTIAN BURROW, MIKE DEAN, FRANKIE EARLY JR., SHARONDA FORD, JAYSON FOX, COURTNEY FRAZIER, JENNIFER GAILLEY, RYAN GRIZZLE, JEREMY HENGY, LISA HOWARD, NATHANIEL JONES, DERRICK KEITH, PROSPER KISWAGA, NORMA MARTINEZ-CANTU, GODFREY MOMANYI, MICHELLE ORR, LAWRENCE OWONIKOKO, ANDRES SALAZAR, KIMBERLY SEARCY, LACHANNA SNEED, SCOTT SULLIVAN, MIRANDA VAN COLEN, EDWARD WATTS, CARL WAYNE WILLIAMS, SEAN WILLIAMS, WILLIE GARRET, RICHARD SHAW, TREVOR REED, HEATHER MICHELLE EMMONS, TROY LINDBERG, RUBEN ESPINOZA, LUIS A. LOZANO, CLAUDIA ACOSTA, BARRIE BERGANS, DWAYNE BOLDEN, DAVID CORVIN, BOBBY GARZA, DAVID GABRIEL HARDIN, JOSE JOVEL, KEVIN LEWIS SR., SHARIQ MOHAMMAD, TARIG OWENS, OMER QURESHI, DIEGO SANCHEZ-DEJARMY, JOSHUA THOMPSON, BRAD BOOTH, YUMEKA GIBSON, KEVIN GUEST, EBONY IJEH, BRANDON JORDAN, LAFAYETTE JEFFERY, KHANG NGUYEN, TENEIKA | Civil Action No. 5:18-cv-0082-DAE Honorable David A. Ezra <br><br><br> SECOND AMENDED COMPLAINT <br><br><br> 1.     VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT (Tex. Bus. & Com. Code §§ 17.41 *et seq.*) <br><br> 2.     FRAUD <br><br> 3.     NEGLIGENT MISREPRESENTATION <br><br> 4.     RESTITUTION FOR UNJUST ENRICHMENT <br><br> DEMAND FOR JURY TRIAL |

LATASHA TILLIS, APRIL WILSON,
ARKEISKA JEFFERSON, LEE
NICHOLSON, STEPHANIE YELL,
TAMAR ROCKMORE, WHITNEY
BURTON, MICHELLE DONAHUE, BILLY
MORRIS, BRIANDA AGUILAR,
MICHELLE GARRETT, MITCHELL
GARRETT, KENDRIC MURRAY,
NEREIDA PITA, EDDIE SILAS,
TUWANDRA HARRIS, LINDA HAIR,
COREY CARROLL, JOSHUA
PALCZYNSKY, MARQUITA
HOLLOMAN-HEROD,  REBECCA
MILLER,

        **Plaintiffs.**

   **VS.**

**ADTALEM GLOBAL EDUCATION, INC.**
**formerly known as DEVRY EDUCATION**
**GROUP, INC. and DEVRY UNIVERSITY,**
**INC.**

      **Defendants.**

Plaintiffs complain and allege as follows:

## INTRODUCTION

**1.**     This lawsuit seeks damages from Defendants for violations of the Texas Deceptive

Trade Practices-Consumer Protection Act ("DTPA"), fraud, negligent misrepresentations, and

restitution for unjust enrichment against Defendants ADTALEM GLOBAL EDUCATION, INC.

and DEVRY UNIVERSITY INC. Defendants misrepresented the benefits of graduating from

DeVry University, Inc. Defendants falsely and misleadingly advertised the employment rate and

income rate of their graduates to induce potential students to purchase educational products and

services, and to remain students through graduation. Plaintiffs relied on these misrepresentations

in choosing to purchase educational products and services from DeVry University, Inc.

**2.**     Advertisements for DeVry University, Inc. stated, with slight variations, that "90%

of DeVry University graduates actively seeking employment obtained careers in their field within

six months of graduation…."  This was actually termed "the standard 90% ad" by counsel for

2

Defendants, Alan N. Salpeter, at a hearing held May 2, 2016 on Defendants motion to dismiss in *Federal Trade Commission v. DeVry Education Group, Inc., et al.,* Case No. 2:16-cv-579, C.D. Cal. Consequently, the various versions of the employment rate representations will be referred to throughout this Complaint as "the Standard 90% Ad" or "the 90% Representation." As explained below, these representations are false and unsubstantiated.

3.      In addition, advertisements for DeVry University, Inc. conveyed the message that graduates obtain jobs that pay more than jobs obtained by graduates of other colleges and universities. For instance, Defendants represented that, one year after graduation, DeVry University, Inc. graduates with bachelor's degrees earned 15% more than graduates with bachelor's degrees from all other colleges and universities. This was termed "Defendants' 'higher income claim'" in *Federal Trade Commission v. DeVry Education Group, Inc., et al.,* Case No. 2:16-cv-579, C.D. Cal. The various versions of the higher income claim will be referred to throughout this Complaint as "the Higher Income Ad" or "the Higher Earnings Representation." As explained below, these representations are false and unsubstantiated.

4.      Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge[1].

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action under 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district, and pursuant to 28 U.S.C. §1391(d) because Defendants have sufficient contacts with this district to be subject to personal jurisdiction.

---

[1] Plaintiffs' investigation included requests made under the Freedom of Information Act (FOIA), filed with the Federal Trade Commission (FTC) and the U.S. Department of Education (DOE), for documents obtained by these government agencies during their investigations into DeVry University's false and deceptive marketing campaign.

## PARTIES

7.      Plaintiff Luis Rangel was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled at DeVry in August 2010, paid tuition and associated costs of attending DeVry, and graduated in May 2014 with a Bachelor of Science degree in Network and Communications Management, and in December 2016 with a Master's degree in Network and Communications Management. Plaintiff attended classes at the DeVry San Antonio Campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately October 2008 through a DeVry recruiter. The DeVry recruiter visited Plaintiff's English class at Jourdanton High School. The recruiter delivered a presentation about DeVry to Plaintiff and his classmates in Ms. Kellerman's English class. Plaintiff recalls the statement by the DeVry recruiter, repeated several times during the presentation, that 90% of DeVry graduates were employed in their field of study within six months of graduation. The DeVry recruiter showed a PowerPoint during the presentation that contained the 90% Representation, and gave students brochures that also contained the 90% Representation. The recruiter collected Plaintiff's email address and sent him periodic recruiting emails that contained the 90% Representation. Plaintiff also looked at the DeVry website and saw the 90% Representation there. Plaintiff recalls the message from the recruiter, the PowerPoint, the brochure, the emails and the website, that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation from the DeVry recruiter, in the PowerPoint, in the brochure, in the emails and on the website. Plaintiff contacted DeVry about potentially becoming a student, and then met with Gwynn Jackson, an Admissions Advisor for DeVry. Gwynn Jackson reiterated the 90% Representation, stating: "You should consider enrolling at DeVry because, unlike other schools, ninety percent of our graduates find a job in their field

within six months of graduating, and our graduates are recruited by top companies. You will have employment in your field of study within the first six months of graduating from DeVry, and have a higher income level because of the courses taught at DeVry." Gwynn Jackson made this statement of the 90% Representation during a meeting on or about June 9, 2009 at the DeVry San Antonio campus. Gwynn Jackson did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered from the DeVry recruiter, the PowerPoint, the brochure, the emails and the website as confirmed by Gwynn Jackson, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in television, radio and website advertisements, in posters on campus, and in fliers and brochures distributed on campus, from an academic advisor, and from his professor of the Career Development Strategies Class. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry in posters and brochures around the campus, from Dean Robert Birdwell at the San Antonio campus, and from his professor of the Career Development Strategies class. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. In addition, Plaintiff heard both the 90% Representation and the Higher Earnings Representation in December 2014 at the San Antonio campus from his Career Counselor, who told Plaintiff that he should pursue graduate studies at DeVry because it is a good investment since 90% of Keller graduates find employment in their field of study within six months of graduation, and earn higher salaries than graduates of other schools. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with

the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

      **8.**     Plaintiff Seth Adomako was at all relevant times a resident of Manor, Texas. Plaintiff enrolled at DeVry's Keller School of Management in July 2010, paid tuition and associated costs of attending DeVry, and graduated in December 2011 with a Master of Business Administration degree, and in October 2012 with a Master of Project Management degree. Plaintiff attended classes at the Austin, Texas campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately May 2010 in television commercials. Plaintiff recalls the message from the television commercials that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials. Plaintiff next contacted DeVry about potentially becoming a student, and then met with George Castro, an Admissions Services Representative for DeVry. George Castro reiterated the 90% Representation, stating "Ninety percent of our graduates get a job in their field within six months." George Castro made this statement of the 90% Representation in approximately June 2010, at the DeVry Austin, Texas campus, in his office, during a campus visit. George Castro did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in television commercials as confirmed by George Castro, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in television commercials, in brochures at the Austin campus, from professors, and in meetings with Melissa Callaway a Student Success

Coach for DeVry. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

      **9.**      Plaintiff Christina Cabello (Luna) was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled at DeVry in December 2008 (Session B), paid tuition and associated costs of attending DeVry, and graduated in June 2010 with a Bachelor's degree in Technical Management. Plaintiff attended classes at the San Antonio campus and online. Plaintiff initially encountered the Standard 90% Ad in approximately October 2008 through a DeVry recruiter at a job fair held at a hotel in San Antonio, Texas. The recruiter gave Plaintiff a DeVry flier and took Plaintiff's email address. The DeVry recruiter periodically sent Plaintiff emails. Plaintiff recalls the message from the flier and the emails from the recruiter that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff received at least five emails from the recruiter before contacting DeVry about potentially becoming a student. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in the flier and the emails she received from the DeVry recruiter. Plaintiff then met with Bobbi Block, an Admissions Advisor for DeVry. Bobbi Block reiterated the 90% Representation, using a booklet

to illustrate the success rate of DeVry graduates, stating "You should enroll in the Technical Management major as ninety percent of our graduates are employed in their field within six months of graduation." Bobbi Block made this statement of the 90% Representation on approximately December 4, 2008, at the DeVry San Antonio campus. Bobbi Block did not in any way limit or qualify the statement. Bobbi Blok also assured Plaintiff that the increased income she would make after graduating from DeVry would quickly make up for the cost of attending DeVry. In reliance on the 90% Representation encountered in the flier and emails she received from the DeVry recruiter as confirmed by Bobbi Block, as well as the assurance of increased income, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in fliers distributed around the San Antonio campus and on posters displayed in the administration office. In addition, in April 2009, Plaintiff received an email from David J. Pauldine, DeVry University President, advising her of a tuition increase which would be going into effect. In the email, President Pauldine reiterated the 90% Representation, stating "DeVry University programs prepare students for careers in high-demand fields with competitive starting salaries and lifetime earnings potential. In fact, for DeVry graduates system-wide between October '07 and June '08, 92% of those in the active job market were employed in their chosen field within 6 months of graduation at an average entry-level salary of $45,000. In many cases, that's more than the typical DeVry student borrows to pay for college." Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates

who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

10.     Plaintiff Elisabeth Nguyen was at all relevant times a resident of Austin, Texas. Plaintiff enrolled at DeVry in October 2009, paid tuition and associated costs of attending DeVry, and graduated in May 2012 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the DeVry Austin campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately August 2009 on the DeVry website while researching schools. Plaintiff recalls the message from the website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation that she saw on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student, and then met with Cindee Sharp, an Admissions Advisor for DeVry. Cindee Sharp reiterated the 90% Representation, stating "Ninety percent of DeVry graduates find jobs in their field within six months of graduation. I am the perfect example of this; I graduated from DeVry and obtained this position as admissions advisor within six months of graduating." Cindee Sharp also told Plaintiff that the job placement rate for DeVry graduates is higher than for other schools. Cindee Sharp made this statement of the 90% Representation in September 2009, a few days before the Labor Day weekend, at the DeVry Austin campus. Cindee Sharp did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Cindee Sharp, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on the DeVry website, in television commercials, and in the Career Development

class. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

    **11.**    Plaintiff Jose Sanchez was at all relevant times a resident of Carrollton, Texas. Plaintiff enrolled at DeVry in July 2011, paid tuition and associated costs of attending DeVry, and graduated in March 2015 with a Bachelor of Science degree in Biomedical Engineering Technology. Plaintiff attended classes at the Irving, Texas campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2011 from a DeVry recruiter who came to Lake Havasu City High School in Lake Havasu City, Arizona. Plaintiff recalls the message from the DeVry recruiter that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation from the DeVry recruiter. Plaintiff then contacted DeVry about potentially becoming a student. John Lowndes, an Admissions Services Representative for DeVry, came to Plaintiff's family home in Lake Havasu City, Arizona. John Lowndes reiterated the 90% Representation, stating "Ninety percent of our graduates get a job in their field within three to six months of graduation, and have higher earnings than their peers in the same field. For example, you will make $45,000 per year and your peer from another university will make $40,000." John

Lowndes made this statement of the 90% Representation in approximately January 2011 at Plaintiff's family home. John Lowndes did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered from the DeVry recruiter as confirmed by John Lowndes, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on television monitors throughout campus. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry on television monitors throughout campus and in brochures available in the Admissions Office. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

    **12.**    Plaintiff Christal Turner was at all relevant times a resident of Dallas, Texas. Plaintiff enrolled at DeVry in August 2009, paid tuition and associated costs of attending DeVry, and graduated in June 2011 with a Bachelor's degree in Technical Management, and in April 2014 with a Master's degree in Business Administration. Plaintiff attended classes at the Richardson, Texas campus. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately July 2009 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of

DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into potentially becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff contacted DeVry, and then met with Christopher Miller, an Admissions Services Representative for DeVry, at the DeVry Richardson, Texas campus. Christopher Miller reiterated the 90% Representation, stating "Ninety percent of our students will get a job in their field in six months of graduation. You will be making base pay of $100K up to $300K if you do the undergraduate and graduate degrees with DeVry and Keller." Christopher Miller made this statement of the 90% Representation in approximately July 2009 at the DeVry Richardson, Texas campus during a campus visit. Christopher Miller did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Christopher Miller, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in DeVry television advertisements, from DeVry representatives during New Student Orientation for both her undergraduate and graduate degrees, from Chrystal Smith a Career Services Advisor for DeVry at the Richardson campus, and from Lacey Zuhoski, a Student Support Advisor for DeVry at the Richardson campus. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that

could be reasonably considered "in their field" is significantly smaller than 90%.

13. Plaintiff Melissa Wilson was at all relevant times a resident of Austin, Texas. Plaintiff enrolled at DeVry in October 2009, paid tuition and associated costs of attending DeVry, and graduated in March 2013 with a Bachelor's degree in Technical Management. Plaintiff attended classes at the Austin, Texas campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately the summer of 2009 in a DeVry television advertisement. Plaintiff then checked the DeVry website online and encountered the 90% Representation there. Plaintiff recalls the message from the DeVry television advertisement and website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on seeing the 90% Representation in DeVry television advertisements and on the website. Plaintiff called to make an appointment at the DeVry Austin campus. Plaintiff spoke on the phone and later met with Patty Williams, an Admissions Services Representative for DeVry. Patty Williams reiterated the 90% Representation during the phone conversation and during the subsequent on campus meeting, stating, "A high percentage of DeVry graduates secured jobs versus graduates of other universities. Ninety percent within six months of graduation. DeVry graduates have exclusive access to the school's proprietary database through which you will find good-paying jobs quickly." Patty Williams made this statement of the 90% Representation in the summer of 2009 during the phone conversation to schedule a campus visit and during Plaintiff's visit to the DeVry Austin campus. Patty Williams did not in any way limit or qualify the statement. Also during the Austin campus visit, Patty Williams gave Plaintiff a brochure which included the 90% Representation. In reliance on the 90% Representation encountered in DeVry television commercials, on the DeVry website and in the brochure as confirmed by Patty Williams, Plaintiff chose to enroll at DeVry. While a

student at DeVry, Plaintiff continued to encounter the 90% Representation from Career Services Advisor Ann Derrick, Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

14. Plaintiff Martin Oloyede was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in January 2010, paid tuition and associated costs of attending DeVry, and graduated in March 2014 with a Bachelor of Schience degree in Computer Information Systems. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately November 2009 on the DeVry website, and in a DeVry television commercial. Plaintiff recalls the message from the DeVry website and in the DeVry television commercial that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website and in the DeVry television commercial. When Plaintiff contacted DeVry by phone about potentially becoming a student, he spoke with Charles Bridges III, an Online Admissions Advisor for DeVry. Charles Bridges III reiterated the 90% Representation, stating, "That is correct, ninety percent of DeVry graduates do get a job in their

field within six months after graduation. You could get a job in your field within three to six months easily as a DeVry graduate." Charles Bridges III made this statement of the 90% Representation during a phone call in approximately November 2009. Charles Bridges III did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website and DeVry television commercial as confirmed by Charles Bridges III, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on television, radio, YouTube, and in emails from DeVry. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

    **15.**    Plaintiff Nathalie Yeka was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in June 2008, paid tuition and associated costs of attending DeVry, and graduated in January 2012 with an Associate degree in Health Information Technology. Plaintiff attended classes at the DeVry Houston campus. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately May 2008 in brochures that were sent to her then boyfriend. Plaintiff also encountered the Standard 90% Ad on the DeVry website. Plaintiff recalls the message from the DeVry brochures and website that 90% of DeVry graduates were employed in their field

of study within six months of graduation. Plaintiff chose to look into possibly becoming a student at DeVry herself based on the 90% Representation in the brochure and on the DeVry website. Plaintiff next accompanied her then boyfriend to an on campus meeting with Natalie Lee, an Admissions Services Representative for DeVry. Natalie Lee reiterated the 90% Representation, stating, "Ninety percent of DeVry graduates have a job in their field of study within six months of graduation. My husband Peter did the same program at DeVry. He graduated a lot quicker and had employers waiting to hire him. Now he has a great paying job." Natalie Lee also explained that if Plaintiff transferred from Houston Community College to DeVry, she would finish her degree more quickly, and not only have a job within six months of graduating, but also would be making a higher income than if she finished at Houston Community College. Natalie Lee made this statement of the 90% Representation in approximately May 2008, at the DeVry Houston campus on Clay Road. Natalie Lee did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry brochures and website as confirmed by Natalie Lee, Plaintiff chose to enroll at DeVry. Plaintiff then met with Paul Rodriguez, a Financial Aid Advisor for DeVry. Paul Rodriguez told Plaintiff, "Don't worry about student loans because you will have a great job after graduation, with a higher income, and will be able to quickly pay off your loans." While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in posters and on monitors around the campus, in television commercials, and statements made by Professor Batt. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who

continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

16.     Plaintiff Tristen Wilson was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in June 2009, paid tuition and associated costs of attending DeVry, and graduated in June 2012, with a Bachelor's degree in Computer Information Systems. Plaintiff attended classes at the DeVry Houston, Texas campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately November 2008 when a DeVry recruiter visited Hallettsville High School in Hallettsville, Texas. Plaintiff recalls the DeVry recruiter stating that 90% of DeVry graduates were employed in their field within six months of graduation. The DeVry recruiter also gave Plaintiff a brochure that included the 90% Representation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation from the DeVry recruiter and in the brochure. Plaintiff then contacted DeVry about potentially becoming a student and, along with his mother, met with Raechel Robinson, an Admissions Services Representative for DeVry. Raechel Robinson reiterated the 90% Representation, stating: "Ninety percent of students who graduate from DeVry get job within six months after graduation, and have a higher income than graduates of other schools." Raechel Robinson made this statement of the 90% Representation in approximately May 2009, at the Houston Equity Drive campus Admissions Building, during a scheduled campus visit. Raechel Robinson did not in any way limit or qualify the statement. Raechel Robinson also presented a slideshow that included the 90% representation, and gave Plaintiff and his mother more brochures

that included the 90% representation. In reliance on the 90% Representation from the DeVry recruiter and brochures as confirmed by Raechel Robinson, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on television screens, brochures and posters throughout the campus, as well as during his career development class. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

17. Plaintiff Terrell White was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled at DeVry's Keller Graduate School in September 2010, paid tuition and associated costs of attending DeVry, and graduated in July 2015 with a Master of Business Administration degree. Plaintiff attended classes at the San Antonio campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately August 2010 in television commercials. Plaintiff recalls the message from the television commercials that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff next called DeVry about potentially becoming a student and the 90%

representation reiterated over the phone. Plaintiff then met with Carrie Choe Fanola, a Graduation and Alumni Relation Advisor for DeVry. Carrie Choe Fanola reiterated the 90% Representation, stating, "In addition to the curriculum and receiving a degree, we have relationships with businesses in the area. You won't have any problem getting a job after completing the program. The programs are based on what the businesses in the area are looking for. Ninety percent of our graduates have a job in their field within six months of graduating." Carrie Choe Fanola made this statement of the 90% Representation in approximately September 2010, in her office at the DeVry San Antonio campus, during a campus visit. Carrie Choe Fanola did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in television commercials as confirmed by Carrie Choe Fanola, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on banners around campus, in television commercials, from professors, from Karyn McCarty Career Services Representative for DeVry, and from DeeAnn McFarlina, Career Services Representative for DeVry. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

     **18.**     Plaintiff David Jessop was at all relevant times a resident of Houston, Texas.

Plaintiff enrolled at DeVry in February 2008, paid tuition and associated costs of attending DeVry, and graduated in July 2014 with a Bachelor's degree in Computer Technology and Engineering. Plaintiff attended classes in Houston. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2008 in a television commercial. Plaintiff also went to the DeVry website and saw the 90% Representation there. Plaintiff recalls the message from the television commercial and DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation in television commercial and on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student, and then met with Ruth Culverson, an Enrollment Counselor for DeVry. Ruth Culverson reiterated the 90% Representation, stating, "Ninety percent of our students have a job within six months of graduating. The quicker you enroll at DeVry, the quicker you will graduate and get a job, and also have a higher income in comparison to attending other schools." Ruth Culverson made this statement of the 90% Representation in approximately January 2008, at the Admissions Center in the North Houston campus, during a scheduled campus visit. Ruth Culverson did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in a DeVry television commercial and on the DeVry website as confirmed by Ruth Culverson, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in DeVry brochures, posters, and on television monitors throughout the hallways on campus, as well as in online advertisements, in television commercials, and in his Career Development class. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry in brochures, posters, and on television monitors throughout

the hallways on campus, as well as in online advertisements, in television ads, and in his Career Development class. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

19.     Plaintiff Denairius Robinson II was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in June 2009, paid tuition and associated costs of attending DeVry, and graduated in December 2015 with a Bachelor of Science degree in Multimedia Design and Development. Plaintiff attended classes at the Houston campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in the Spring of 2009 in a brochure given to him by a recruiter visiting Chester Nimitz High School in Houston, Texas. Plaintiff recalls the message from the brochure that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff next looked at DeVry's website and also encountered the 90% Representation there. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation in the brochure and on the DeVry website. Plaintiff next contacted DeVry about potentially becoming a student, and then met with Raechel Robinson, an Admissions Services Representative for DeVry. Raechel Robinson reiterated the 90% Representation, stating, "Ninety percent of our students get a job in their field within six months

of graduation." Raechel Robinson made this statement of the 90% Representation in approximately May 2009, in her office at the DeVry Houston campus on Equity Drive, during a campus visit. Raechel Robinson did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry brochure and DeVry website as confirmed by Raechel Robinson, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in posters around the Houston campus on Equity Drive, in television commercials and on billboards around the Houston campus on Equity Drive. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

20.     Plaintiff Emran Alhyasat was at all relevant times a resident of Webster, Texas. Plaintiff enrolled at DeVry's Keller Graduate School of Management in July 2012, paid tuition and associated costs of attending DeVry, and graduated in March 2014 with a Master's degree in Accounting and Finance Management. Plaintiff attended classes at the Houston Galleria campus and online. Plaintiff initially encountered defendants' Standard 90% Ad in approximately March 2012 in a television commercial. Plaintiff recalls the message from the television commercial that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff

chose to look into becoming a student at DeVry based on seeing the 90% in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student, and then met with Lollita Carter, an Admissions Services Representative for DeVry. Lollita Carter reiterated the 90% Representation, stating: "In fact, DeVry students are guaranteed that 90% of students get a job in their field within six months after graduation, and not only that but they have a higher income than other graduate schools." Lollita Carter made this statement of the 90% Representation in approximately March 2012, at the DeVry Keller Graduate School of Management in the Houston Galleria, during a scheduled meeting. Lollita Carter did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed by Lollita Carter, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation during his through emails from DeVry. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

21.    Plaintiff Teresa Anaya was at all relevant times a resident of Humble, Texas. Plaintiff enrolled at DeVry in October 2009, paid tuition and associated costs of attending DeVry, and graduated in June 2011 with a Bachelor of Science degree in Technical Management. Plaintiff

attended classes at the Houston campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately September 2009 in a brochure that a recruiter handed to her during a career fair at the National Guard base at 15150 Westheimer Parkway in Houston. Plaintiff recalls the message from the brochure that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff next checked the DeVry website, and also encountered the 90% representation there. Based on the 90% Representation in the brochure and on the DeVry website, Plaintiff chose to contact DeVry about potentially becoming a student. Plaintiff then met with Katie, an advisor for DeVry. Katie had Plaintiff watch a PowerPoint presentation that included the 90% Representation, and reiterated the 90% Representation, stating: "You will have a better opportunity for employment by attending DeVry because of the ninety percent hiring rate of our graduates within six months of graduation." Katie added that DeVry has a team to assist with the hiring process with large firms and companies. Katie made this statement of the 90% Representation in approximately September 2009, in her office at the DeVry Houston campus on Equity Drive, during a campus visit. Katie the advisor for DeVry did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the brochure and on the DeVry website as confirmed by Katie an advisor for DeVry, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in posters around the Houston campus on Equity Drive, during career fairs at DeVry, from Esmeralda Garcia a Dean at the Houston campus on Equity Drive, and in the Career Development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she

had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

22.     Plaintiff Tiffany Brown was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in the summer of 2011, paid tuition and associated costs of attending DeVry, and graduated in December 2013 with a Bachelor in Technical Management degree. Plaintiff attended classes at the Houston Beltway campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately late 2010 in a DeVry radio advertisement. Plaintiff recalls the message from the DeVry radio advertisement that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff heard the 90% Representation in DeVry radio advertisements a few times, then saw an advertisement for an open house event at the Houston Beltway campus and decided to attend. Plaintiff chose to attend the open house event and look into becoming a student at DeVry based on hearing the 90% Representation in DeVry radio advertisements. At the open house event, Plaintiff spoke with Jim Gideon, an Admissions Services Representative for DeVry, who gave Plaintiff a tour of the campus. Jim Gideon reiterated the 90% Representation, stating, "I guarantee you a job right after you graduate from DeVry. Ninety percent of our students have a job within six months of graduating." Jim Gideon made this statement of the 90% Representation in late 2010, at the DeVry Houston Beltway campus, during an open house event, while giving Plaintiff a tour of the campus. Jim Gideon did not in any way limit or qualify the statement. In reliance on the 90% Representation

encountered in DeVry radio advertisements as confirmed by Jim Gideon, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in DeVry radio advertisements and on flyers around the Houston Beltway campus. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry on posters around the Houston Beltway campus and from Larry Davis, a Student Success Coach for DeVry, during her sessions with him prior to graduating. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

23.     Plaintiff Med Cullins was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry's Keller Graduate School of Management in February 2012, paid tuition and associated costs of attending DeVry, and graduated in October 2014 with a Master in Business Administration degree. Plaintiff attended classes at the Houston campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2011, in television commercials and solicitation emails. Plaintiff recalls the message in the television commercials and solicitation emails that 90% of DeVry graduates were employed in their field

within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials and solicitation emails. Plaintiff contacted DeVry about potentially becoming a student, and then met with Janell Hodges, an Admissions Services Representative for DeVry. Janell Hodges reiterated the 90% Representation, stating that if Plaintiff attended DeVry "you will have a job after graduation in less than six months." Janell Hodges also said that Plaintiff "will be making a higher income than students from other schools." Janell Hodges made this statement of the 90% Representation in approximately February 2012, at the DeVry Houston campus on Equity Drive, during a scheduled campus visit. Janell Hodges did not in any way limit or qualify the statement. On another date later in February 2012, Plaintiff met with Christopher Moore, a DeVry Student Success Coach. Christopher Moore also reiterated the 90% Representation, stating, "Ninety percent of our students have a job in their field within six months of graduation, and make a higher income than graduates from other schools." Christopher Moore made this statement of the 90% Representation in February 2012 at the DeVry Houston campus on Equity Drive, during a scheduled meeting to discuss classes and financial aid. Christopher Moore did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in television commercials and solicitation emails as confirmed by Janell Hodges and Christopher Moore, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from Charisa Sutton a career service advisor, from Kelly Blackstone Director of Admissions, and in brochures and posters throughout the career center. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had

known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

24.     Plaintiff Kevin Earls was at all relevant times a resident of Angleton, Texas. Plaintiff enrolled at DeVry in January 2010, paid tuition and associated costs of attending DeVry, and graduated in June 2011 with a Bachelor of Science degree in Technical Management, and in April 2013 with a Master of Business Administration degree. Plaintiff attended classes at the Houston campus at the Galleria, the Sugar Land campus, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately December 2010 in television commercials. Plaintiff recalls the message from the television commercials that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student, and then met with Candace Moran, an Admissions Services Representative for DeVry. Candace Moran reiterated the 90% Representation, stating, "DeVry is a very good school. Career services can help you with jobs and we can guarantee a six-month employment rate. Ninety percent of our graduates get a job in their field of study within six months of graduation, and have a higher income than graduates of other universities." Candace Moran made this statement of the 90% Representation in approximately January 2010 in her office at the DeVry Houston campus at the Galleria, during a campus visit. Candace Moran did not in any way limit or qualify the statement. In reliance on the 90%

Representation encountered in DeVry television commercials as confirmed by Candace Moran, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in television commercials, on posters near the Career Services Center at the Houston campus at the Galleria, from C.C. Sutton DeVry Career Services Advisor, from Bridgette Sellers the Center Dean at the Galleria campus of DeVry, from Stephanie Ross the Center Dean at the Sugar Land campus of DeVry, and in his Career Development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

25.     Plaintiff Tyhessia Ellis was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in August 2009, paid tuition and associated costs of attending DeVry, and graduated in October 2012 with a Bachelor of Science degree in Human Resource Management, and in August 2014 with a Master's degree in Human Resource Management from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the DeVry Houston Campus on Clay Road and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately July 2009 in television and Facebook advertisements. Plaintiff also looked at the DeVry website. Plaintiff recalls the message from the television and Facebook advertisements,

and the DeVry website, that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff provided her contact information in response to one of the DeVry Facebook advertisements that she saw. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in the television and Facebook advertisements, and on the DeVry website. Plaintiff was contacted by Ronnie Blaine, an Admissions Services Representative for DeVry, about potentially becoming a student. Ronnie Blaine told Plaintiff over the telephone that DeVry offers a quicker path to graduation, and higher paying jobs, than other schools. Plaintiff scheduled an appointment to meet with Ronnie Blaine at the DeVry Houston Campus on Clay Road. Ronnie Blaine reiterated the 90% Representation in person, stating, "Ninety percent of DeVry students have a job in their field of study within six months of graduation." Ronnie Blaine made this statement of the 90% Representation in approximately July 2009, at the DeVry Houston Campus on Clay Road, during a campus visit. Ronnie Blaine did not in any way limit or qualify the statement. In reliance on the 90% Representation as encountered in television and Facebook advertisements, and the DeVry website, as confirmed by Ronnie Blaine, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in television advertisements, in radio advertisements, on posters and monitors throughout the DeVry campus halls, in DeVry brochures in counseling and financial aid offices, from DeVry counselors William and Linda, and from Esmeralda Garcia a Student Success Coach for DeVry. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs

they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

26. Plaintiff Crystal Hayden was at all relevant times a resident of Porter, Texas. Plaintiff enrolled at DeVry in July 2014, paid tuition and associated costs of attending DeVry, and graduated in February 2016 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2014 in DeVry television commercials. Plaintiff recalls the message from the television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student, and then met with Darlene Humphrey, an Admissions Services Representative for DeVry. Darlene Humphrey reiterated the 90% Representation, stating, "Ninety percent of DeVry graduates are employed in their field within six months of graduation," and then showed Plaintiff a 2012 Graduate Employment Statistics sheet. Darlene Humphrey also mentioned that DeVry graduates have a higher rate of pay than graduates of other universities. Darlene Humphrey made this statement of the 90% Representation on or about June 3, 2014, in her office at the DeVry Houston campus on Equity Drive, during a campus visit. Darlene Humphrey did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed by Darlene Humphrey, Plaintiff chose to enroll at DeVry. Plaintiff continued to rely on the 90% Representation in choosing to remain a student at

DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

     **27.**     Plaintiff Rhonda James was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in June 2009, paid tuition and associated costs of attending DeVry, and graduated in June 2013 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the DeVry Houston campuses on Equity Drive and at the Galleria, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately March 2009 on the DeVry website. Plaintiff recalls the message from the website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student, and then met with Candace Moran, an Admissions Services Representative for DeVry. Candace Moran reiterated the 90% Representation, stating, "DeVry has a very good success rate and a guaranteed success with employers. Students are hired both before and after graduation. Ninety percent are hired in their field by six months after graduation." Candace Moran made this statement of the 90% Representation approximately May 2009, in her office at the DeVry Houston Galleria campus, during a campus visit. Candace Moran did not in any way limit or qualify the statement. In reliance

on the 90% Representation encountered on the DeVry website as confirmed by Candace Moran, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in flyers at student fairs and in discussions with Candace Moran regarding the student referral program. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

28. Plaintiff Emmanuel Makari was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in spring 2009, paid tuition and associated costs of attending DeVry, and graduated in October 2011 with an Associate degree in Network Systems Administration. Plaintiff attended classes at the Houston, Texas campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately June or July of 2009 on the DeVry website. Plaintiff was searching online and DeVry advertisements caught his attention. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation on the DeVry website. After Plaintiff called DeVry for more information, he began receiving emails from DeVry that also contained the 90%

Representation. Plaintiff next met with Rose Stephens, an Admissions Services Representative for DeVry about possibly becoming a student. Rose Stephens gave Plaintiff a tour of the campus and Plaintiff saw posters around the campus and a brochure with the 90% Representation. Rose Stephens reiterated the 90% Representation, stating, "You should attend DeVry because of the ninety percent employment rate. Ninety percent of our students are employed in their field within six months of graduation." Rose Stephens made this statement of the 90% Representation in approximately June or July of 2009, at the DeVry Houston campus on Equity Drive, during a campus visit. Rose Stephens did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website, in the emails from DeVry, and on posters around the Houston campus on Equity Drive, during a tour provided by Rose Stephens, as confirmed by Rose Stephens, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on posters around the Houston campus on Equity Drive, from academic and career services advisors, and on social media. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

    **29.**    Plaintiff Christopher Martin was at all relevant times a resident of Houston, Texas.

Plaintiff enrolled at DeVry in January 2009, paid tuition and associated costs of attending DeVry, and graduated in January 2012 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the Houston Equity Drive and Galleria campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2009 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student, and then met with Janell Hodges, an Academic Services Representative for DeVry. Janell Hodges reiterated the 90% Representation, stating, "DeVry is a good choice for school; graduates go on to get jobs quickly. Ninety percent of our graduates get a job in their field within six months. It will pay off in the end; you will see a higher income than graduates from other schools." Janell Hodges made this statement of the 90% Representation in approximately January 2009, in her office at the DeVry Houston, Texas campus at the Galleria, during a campus visit. Janell Hodges did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Janell Hodges, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in brochures and from an academic advisor. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants

excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

      **30.**    Plaintiff Catherine McCarty was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in January 2014, paid tuition and associated costs of attending DeVry, and graduated in July 2015 with a Bachelor's degree in Technical Management, and in June 2016 with a Master's degree in Accounting and Finance Management. Plaintiff attended classes at the DeVry Houston Main Campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately September 2013 from a DeVry recruiter at an event put on by United Airlines in Houston. The DeVry recruiter gave a PowerPoint presentation that included the Standard 90% Ad. Plaintiff recalls the message from the recruiter and the PowerPoint presentation that 90% of DeVry graduates were employed in their field of study within six months of graduation. In addition, at the same event, Plaintiff was approached by Ruth Culverson, Enrollment Counselor for DeVry. Ruth Culverson also reiterated the 90% Representation and added that if Plaintiff earned a degree at DeVry, she would make more money. After the event, Plaintiff began to see the Standard 90% Ad in television commercials, decided to contact DeVry about potentially becoming a student, and scheduled an appointment at the Houston Main campus on Equity Drive. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in the Power Point presentation by the DeVry recruiter, from Ruth Culverson at the same event, and the DeVry television commercials seen after the event. Plaintiff again met with Ruth Culverson, Enrollment Counselor for DeVry. Ruth Culverson reiterated the 90% Representation, stating, "Ninety percent of our graduates have jobs in their field within six months of graduation. We have a whole department that does nothing but help you get a job within

six months of graduating. You do the work in the classes, and we will get you the job." Ruth Culverson made this statement of the 90% Representation approximately one week before Plaintiff enrolled at DeVry in January 2014 at the Houston campus on Equity Drive. During the same meeting, Ms. Culverson brought her supervisor Marilyn D. Ishier, Dean at DeVry Houston, to speak to Plaintiff. Maralyn D. Ishier also reiterated the 90% representation, stressing that "ninety percent of our students find a job in their field within six months of graduation." Ruth Culverson and Maralyn D. Ishier did not in any way limit or qualify the statements they made to Plaintiff. In reliance on the 90% Representation encountered in the Power Point presentation by the DeVry recruiter and from Ruth Culverson at the United Airlines event, and in DeVry television commercials as confirmed by Ruth Culverson and Maralyn D. Ishier, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on posters and in flyers around the Houston campus on Equity Drive, in emails from DeVry, in television commercials, from the professor in the Career Development class, from the Accounting class professors, from Sean O'Neal a Student Success Coach for DeVry, from Afsga Baheef Finance Consultant, from Peter Suh Enrollment Counselor, and from Kelly Blackstone Director of Admissions for DeVry. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry

graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

    **31.**    Plaintiff Victor Sekgantso was at all relevant times a resident of Houston, TX. Plaintiff enrolled at DeVry in the fall of 2009, paid tuition and associated costs of attending DeVry, and graduated in October 2011 with a Bachelor's degree in Technical Management. Plaintiff attended classes at the Houston, Texas campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately July 2009 from a DeVry brochure that he received in the mail. Plaintiff recalls the message from the brochure that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in the brochure. Plaintiff contacted DeVry about potentially becoming a student, and then met with Spring Davis, an Admissions Services Representative for DeVry. Spring Davis reiterated the 90% Representation, stating, "You will make more money if you have a degree from DeVry. Recruiters come and hire people from DeVry. You will make more money than graduates from any other college. Ninety percent of DeVry graduates have a job within six months, and you can get a job before you even graduate. During your last semester, you could get a job from one of the recruiters." Spring Davis made this statement of the 90% Representation in approximately July or August 2009, at the DeVry Houston campus on Equity Drive, during a campus visit. Spring Davis did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry brochure as confirmed by Spring Davis, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on DeVry television advertisements, in brochures around the Houston Equity Drive campus, on the DeVry website, on social media, from professors in the Career Development class, during meetings with DeVry Success Coach

Esmeralda Garcia, from Rhonda Jordan professor for the Project Management class, from Claude Tolanda a DeVry advisor, and from Katie Kassab a DeVry advisor. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**32.** Plaintiff Mark Davis was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in November 2009, paid tuition and associated costs of attending DeVry, and graduated in March 2013 with a Bachelor's degree in Technical Management. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately fall 2009 in a television advertisement. Plaintiff recalls the message from the television advertisement that 90% of DeVry graduates were employed in their field within six months of graduation. After seeing the television advertisement, Plaintiff looked at the DeVry website and also encountered the 90% Representation there. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation in the DeVry television advertisement and on the DeVry website. Plaintiff called the 1-800 number provided in the advertisement. When Plaintiff contacted DeVry about potentially becoming a student, he spoke with Carl Leilelt, an Admissions Services Representative for DeVry. Carl Leilelt reiterated the 90% Representation, stating, "We have a

ninety percent success rate in six months for placing our students that graduate from DeVry. Our graduates are finding good, high paying jobs." Carl Leilelt made this statement of the 90% Representation in approximately fall 2009, during a telephone conversation. Carl Leilelt did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry television advertisement and on the DeVry website as confirmed by Carl Leilelt, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in DeVry television advertisements and on the DeVry website. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

        **33.**    Plaintiff Candace Smith was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in October 2009, paid tuition and associated costs of attending DeVry, and graduated in July 2012 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the DeVry Houston campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately July 2009 in television commercials. Plaintiff recalls the message from the television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into

becoming a student at DeVry based on the 90% Representation in the DeVry television commercials. When Plaintiff contacted DeVry about potentially becoming a student, she spoke with Jim Conway, an Admissions Advisor for DeVry. Jim Conway reiterated the 90% Representation, stating, "Ninety percent of our graduates are guaranteed to get a job in their field within six months. We are affiliated with several different major companies, and we help place the students upon graduation." Jim Conway made this statement of the 90% Representation in approximately August 2009, over the telephone, during a scheduled appointment. Jim Conway did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in television commercials as confirmed by Jim Conway, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in television commercials, in Facebook ads, on posters around campus, in DeVry brochures, and during her Career Development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**34.** Plaintiff Latasha Solomon was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in August 2011, paid tuition and associated costs of attending DeVry,

and graduated in December 2014 with a Bachelor of Science degree in Business Administration, and in December 2016 with a Master of Human Resource Management degree. Plaintiff attended classes at the Houston campuses located on Equity Drive and at the Galleria, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately August 2011 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff next contacted DeVry about potentially becoming a student, and then met with Candace Moran, an Admissions Services Representative for DeVry. Candace Moran reiterated the 90% Representation, stating, "Ninety percent of our graduates get a job in their field within six months; you will be able to get a job with no problem." Candace Moran made this statement of the 90% Representation in approximately August 2011, in her office at the Houston campus located at the Galleria, during a campus visit. Candace Moran did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Candace Moran, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in television commercials; in telephone and email communications with Tanya M. Sell, a Student Success Coach for DeVry; in telephone and email communications with Nikki Yancy a Financial Advisor for DeVry; and in her Career Development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending

DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

35.     Plaintiff Alan Ta was at all relevant times a resident of Houston, TX. Plaintiff enrolled at DeVry in the summer of 2011, paid tuition and associated costs of attending DeVry, and graduated in March 2012 with a Bachelor's degree in Computer Information Systems, and in October 2016 with a Master's degree in Information Systems Management. Plaintiff attended classes at the DeVry Houston Equity Drive and Sugar Land campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately April 2011 on the DeVry Website – an advertisement popped up on his computer. Plaintiff then also saw DeVry television commercials. Plaintiff recalls the message from the DeVry Website and television commercials that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry Website and in television commercials. Plaintiff called the number on the DeVry website about potentially becoming a student and scheduled an appointment to visit the DeVry Houston campus on Equity Drive. Plaintiff then met with Thomas Brewer, an Admissions Service Representative for DeVry. Thomas Brewer reiterated the 90% Representation, stating, "Ninety percent of our students get a job within six months after graduating." Thomas Brewer made this statement of the 90% Representation in approximately April 2011, at the DeVry Houston campus on Equity Drive, during a scheduled campus visit for Plaintiff to obtain more information about attending DeVry. Thomas Brewer did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry Website and in television commercials as

confirmed by Thomas Brewer, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on monitors around the Houston campus, on the DeVry website, and from Professor Thomas Des Lauriers. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

36. Plaintiff George Van-Lare was at all relevant times a resident of Katy, Texas. Plaintiff enrolled at DeVry's Keller Graduate School of Management in October or November 2010, paid tuition and associated costs of attending DeVry, and graduated in May 2013 with a Master of Business Administration degree. Plaintiff attended classes at the DeVry Houston campuses on Equity Drive and at the Galleria, and online. Plaintiff initially learned of Defendants' Standard 90% Ad from a friend in approximately September 2010. Plaintiff recalls his friend telling him that he had enrolled at DeVry because 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on this conversation with his friend relating the 90% Representation. Plaintiff contacted DeVry about potentially becoming a student, and met with Margo E. Watson, an Admissions Services Representative for DeVry. Margo E. Watson reiterated the 90%

Representation, stating, "Ninety percent of students get a job in their field of study within six months of graduation." Margo E. Watson made this statement of the 90% Representation in approximately September or October of 2010 at the DeVry Houston campus on Equity Drive, in her office, during a campus visit. Margo Emory also told Plaintiff that the companies on the posters in the office take all DeVry graduates for employment. Margo E. Watson did not in any way limit or qualify the statement. In reliance on the 90% Representation as confirmed by Margo E. Watson, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in television commercials. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

      **37.** Plaintiff Saul Vega was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in the summer of 2008, paid tuition and associated costs of attending DeVry, and graduated in October 2011 with a Bachelor's degree in Business Administration, in June 2014 with a Master's degree in Business Administration, and in August 2014 with a Master's degree in Public Administration. Plaintiff attended classes at the Sugar Land, Houston Galleria and Houston Beltway campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in

approximately April 2008 from Dorthy, a DeVry recruiter, during his U.S. History class at Cypress Springs High School. DeVry recruiter Dorthy made a presentation on DeVry. DeVry recruiter Dorthy also handed out flyers, as well as pencils and a notepad with the DeVry logo, and certificates for free food at local restaurants. Plaintiff recalls the message from DeVry recruiter Dorthy and the flyers that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff used the contact information provided by recruiter Dorthy and called DeVry about a week later to discuss potentially becoming a student. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in the presentation by the recruiter Dorthy and in the DeVry flyer. When Plaintiff contacted DeVry about potentially becoming a student, he spoke with Adriana, a counselor for DeVry. Adriana reiterated the 90% representation, stating, "You will not be disappointed at DeVry University. Ninety percent of our graduates have a job in their field of study within six months of graduation. When you graduate, you will have a good paying job in less than six months." Adriana the DeVry counselor made this statement of the 90% Representation in approximately April 2008 over the telephone. Adriana did not in any way limit or qualify the statement. Adriana scheduled Plaintiff to visit the DeVry Houston Beltway campus during an open house event. In reliance on the 90% Representation as encountered from Dorthy a DeVry recruiter and the flyer, as confirmed by Adriana the DeVry counselor, Plaintiff chose to enroll at DeVry during the open house event. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation from Adriana as his advisor and Success Coach at DeVry, from Dorthy the DeVry recruiter, from Maria Espinoza a Financial Aid Advisor for DeVry, from Paul Rodriguez a DeVry advisor, from Marggiana Sanchez an Admissions Services Representative for DeVry, from Larry Bell a Tutor and Academic Services Representative for DeVry, in DeVry television advertisements, on the DeVry website, on posters

around campus, and from Professors during Career Development class. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**38.** Plaintiff Rosalinda Vela Escobar was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in the summer of 2012, paid tuition and associated costs of attending DeVry, and graduated in October 2016 with a Bachelor in Healthcare Administration degree. Plaintiff attended classes at the Houston, Texas Equity Drive and Galleria campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in the summer of 2012 in a DeVry television advertisement. Plaintiff recalls the message from the DeVry television advertisement that 90% of DeVry graduates were employed in their field within six months of graduation. After seeing the television advertisement, Plaintiff decided to check out DeVry by going to the DeVry website. Plaintiff also encountered the 90% Representation on the DeVry website. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation in DeVry television advertisements and on the DeVry website. Plaintiff next called DeVry and made an appointment at the Houston Galleria campus. At the scheduled appointment in the summer of 2012, Plaintiff met with Elizabeth De Los Rios, an Admissions Services

Representative for DeVry. Elizabeth De Los Rios reiterated the 90% Representation, stating, "DeVry will help you find employment after you get your degree. Ninety percent of our students get a job in their field within six months after graduating from DeVry." Elizabeth De Los Rios made this statement of the 90% Representation in the summer of 2012, at the Houston Galleria campus, during a scheduled campus visit. Elizabeth De Los Rios did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television advertisements and on the DeVry website as confirmed by Elizabeth De Los Rios, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in DeVry television advertisements, on the DeVry website, from the professor during the Career Development class, from DeVry representatives including a dean who spoke at New Student Orientation, and from a DeVry Career Service Advisor named Jennifer. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry from the professor during the Career Development class, in DeVry advertisements, and from a DeVry Career Service Advisor named Jennifer. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**39.**     Plaintiff Justin Wiggins was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in the summer of 2010, paid tuition and associated costs of attending DeVry, and graduated in July 2013 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the Houston campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately October 2009 in a presentation made by a DeVry recruiter at Cypress-Fairbanks Independent School District, Telge Center, in Cypress, Texas, where Plaintiff worked at the time. Plaintiff recalls the message from the presentation that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% representation in the presentation by a DeVry recruiter. Plaintiff contacted DeVry about potentially becoming a student, and then met with Ruth Culverson, a DeVry Advisor. Ruth Culverson reiterated the 90% Representation, stating, "Ninety percent of our students get jobs within six months of graduating; many get jobs before they graduate. We have great rapport with many companies that hire our students." Ruth Culverson made this statement of the 90% Representation in approximately February 2010, in her office at the DeVry Houston campus on Equity Drive, during a campus visit. Ruth Culverson did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the presentation by a DeVry recruiter as confirmed by Ruth Culverson, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on television monitors around campus. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who

49

continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

40.     Plaintiff Patrick Acheampong was at all relevant times a resident of Arlington, Texas. Plaintiff enrolled at DeVry in the summer of 2013, paid tuition and associated costs of attending DeVry, and graduated in August 2016 with a Bachelor's degree in Technical Management. Plaintiff attended classes at the DeVry Irving, Texas campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately April or May 2013 in a DeVry television advertisement. Plaintiff recalls the message from the DeVry television advertisement that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television advertisements. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment at the DeVry Irving, Texas campus. Plaintiff then met with Dianne Atkins, an Admissions Service Representative for DeVry. Dianne Atkins reiterated the 90% Representation, stating, "If you graduate, you will get a job in your field within six months." Plaintiff next met with Barbara Cooper, a DeVry Financial Advisor. When Plaintiff asked Barbara Cooper why the cost of DeVry was so high, she reiterated the 90% Representation, stating, "Because DeVry has a ninety percent employment rate within six months after graduation." Dianne Atkins and Barbara Cooper made these statements of the 90% Representation in approximately April or May of 2013 at the DeVry Irving, Texas campus during a campus visit. Dianne Atkins and Barbara Cooper did not in any way limit or qualify the

statements. In reliance on the 90% Representation encountered in DeVry television advertisements as confirmed by Dianne Atkins and Barbara Cooper, Plaintiff chose to enroll at DeVry. Plaintiff then attended a new student orientation where DeVry representatives, including Siby John, also reiterated the 90% Representation. Siby John assured Plaintiff that he would get a job in his field within six months of graduation. Plaintiff was also shown DeVry brochures and a slideshow with the 90% Representation. DeVry Dean Dr. Timothy also reiterated the 90% Representation, and added that Plaintiff would earn more with a DeVry degree than graduates of other schools. DeVry Dean Dr. Timothy emphasized that past students earned higher income in their entry-level job after graduation. Plaintiff continued to frequently encounter the 90% Representation as described above, and on monitors around the Irving campus, in DeVry brochures, in DeVry television advertisements, on social media, on the DeVry website, and from Letroy Gloiver a DeVry Advisor. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry on monitors around the Irving campus, in DeVry brochures, in DeVry television advertisements, on social media, and on the DeVry website. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly

smaller than 90%.

41.     Plaintiff Kinney Barcuch was at all relevant times a resident of Cleburne, Vanalstyne, and Carrolton, Texas. Plaintiff enrolled at DeVry in February 2012, paid tuition and associated costs of attending DeVry, and graduated in December 2014, with an Associate degree in Network Administration, and in June 2016 with a Bachelor's degree in Network and Communications Management. Plaintiff attended classes at the Fort Worth and Irving, Texas campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2012 in DeVry television advertisements. Plaintiff recalls the message from the DeVry television advertisements that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff saw the DeVry television advertisements for a period of approximately two months before contacting DeVry about potentially becoming a student. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in the DeVry television advertisements. Plaintiff contacted DeVry about potentially becoming a student and scheduled an appointment to visit the Fort Worth campus. During the campus visit, Plaintiff met with Angel Beasley, an Admissions Services Representative for DeVry. Angel Beasley reiterated the 90% representation, stating: "Ninety percent of our graduates are employed in their field within six months after graduation and have a higher income than graduates of other schools." Angel Beasley made this statement of the 90% Representation approximately January 2012, at the DeVry Fort Worth campus, during a campus visit and tour. Angel Beasley did not in any way limit or qualify the statement. During the Fort Worth campus tour with Angel Beasley, Plaintiff also encountered the 90% Representation on posters around the campus. In reliance on the 90% Representation encountered in DeVry television advertisements and on posters around the Fort Worth campus as confirmed by Angel Beasley, Plaintiff chose to enroll at DeVry. While

a student at DeVry, Plaintiff continued to encounter the 90% Representation in DeVry television advertisements, on posters and flyers at the Fort Worth and Irving campuses, on the DeVry website, and in meetings with Sonja Garabet a DeVry Academic Counselor. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry in television advertisements, on posters and flyers at the Fort Worth and Irving campuses, on the DeVry website, and during meetings with Sonja Garabet a DeVry Academic Counselor. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

42.	Plaintiff Nina Burns was at all relevant times a resident of Quitman and Alba, Texas. Plaintiff enrolled at DeVry in 2008, paid tuition and associated costs of attending DeVry, and graduated in 2011 with a Bachelor's degree in Business Administration. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2008 on the DeVry website. Plaintiff contacted DeVry and a DeVry recruiter came to Plaintiff's home. The DeVry recruiter reiterated the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. The recruiter also informed

Plaintiff that DeVry graduates have a higher income than graduates of other schools. Plaintiff's fiancé was present when the DeVry recruiter made these statements. Plaintiff then attended a meeting held at a hotel in Longview, Texas. A DeVry representative at the meeting reiterated the message from the DeVry website and recruiter that 90% of DeVry graduates were employed in their field of study within six months of graduation. The DeVry recruiter in Plaintiff's home and the DeVry representative at the meeting at a hotel in Longview, Texas did not in any way limit or qualify the statements. In reliance on the 90% Representation encountered on the DeVry website as confirmed by the DeVry recruiter in Plaintiff's home and the DeVry representative at the meeting at a hotel in Longview, Texas, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation. During Plaintiff's Orientation/Intake in a classroom at the DeVry Irving, Texas campus, a DeVry advisor reiterated the 90% Representation. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

43. Plaintiff Christian Burrow was at all relevant times a resident of Fort Worth, Texas. Plaintiff enrolled at DeVry in September 2012, paid tuition and associated costs of attending

DeVry, and graduated in February 2016 with an Associate degree in Network Systems Administration. Plaintiff attended classes at the Fort Worth and Irving, Texas campuses, and Online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately August 2012 in a DeVry radio commercial while driving home from work. Plaintiff recalls the message from the DeVry radio commercial that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff heard the 90% Representation in DeVry radio commercials several times before contacting DeVry about potentially becoming a student. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry radio commercials. Plaintiff contacted DeVry about potentially becoming a student, and then met with Patrick Ramos, an Admissions Services Representative for DeVry. Patrick Ramos reiterated the 90% Representation, stating, "Ninety percent of DeVry graduates are employed within six months of graduation." Patrick Ramos also stated, "Out the bat you will be earning 40-60K a year with your associate's degree." During this conversation, Patrick Ramos also showed Plaintiff a brochure with the 90% Representation. Patrick Ramos made this statement of the 90% Representation in approximately August 2012, at the Fort Worth, Texas campus, during a campus visit. Patrick Ramos did not in any way limit or qualify the statement. Plaintiff did not immediately enroll, but went home and discussed the meeting with Patrick Ramos with his wife. Plaintiff returned with his wife to the Fort Worth, Texas campus and spoke with Patrick Ramos again. At that time, Patrick Ramos introduced them to DeVry Dean Douglas Cure, who confirmed what Patrick Ramos had said, including the statement: "DeVry has a ninety percent employment rate within six months post-graduation." In reliance on the 90% Representation encountered in DeVry radio commercials as confirmed by Patrick Ramos Douglas Cure, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in meetings with Patrick

Ramos, from DeVry Dean Douglas Cure, and from Student Services Representative Sonia (Garabet) Pierce. While a student at DeVry, Plaintiff also continued to encounter the 90% Representation on the DeVry website, in DeVry radio commercials, on social media, and in posters in the halls of the Fort Worth and Irving campuses. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry on posters in the halls of the Fort Worth campus and the Irving campus, on social media, in emails from DeVry, in meetings with Patrick Ramos, and in meetings with Sonia (Garabet) Pierce. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

44.     Plaintiff Mike Dean was at all relevant times a resident of Garland, Texas. Plaintiff enrolled at DeVry in July 2010, paid tuition and associated costs of attending DeVry, and graduated in March 2013 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in April 2010 from Christopher Miller, an Admissions Services Representative for DeVry. When Plaintiff contacted DeVry about potentially becoming a student, he spoke with Christopher Miller.

Christopher Miller stated, "We have a high percentage of job placement. Ninety percent of our students get a job in their field of study within six months after graduation. You can come back for help with job placement for your lifetime." Christopher Miller added that DeVry graduates have a higher pay rate than graduates of other schools. Christopher Miller made this statement of the 90% Representation in April 2010, during a telephone conversation. Christopher Miller did not in any way limit or qualify the statement. In reliance on the 90% Representation as stated in the conversation with Christopher Miller, Plaintiff chose to enroll at DeVry. Plaintiff relied on the 90% Representation by Christopher Miller before enrolling in DeVry in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

45.    Plaintiff Frankie Early Jr. was at all relevant times a resident of Irving, Texas. Plaintiff enrolled at DeVry in August 2010, paid tuition and associated costs of attending DeVry, and graduated in April 2016 with a Bachelor's degree in Network Communications Management. Plaintiff attended classes at the Irving, Texas campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately June 2010 while accompanying his brother to an on-campus orientation meeting. During this campus visit, Jermaine Smith, a DeVry recruiter, stated, "Ninety percent of DeVry graduates are employed in their field of study within six months

of graduation." Jermaine Smith did not in any way limit or qualify the statement. Jermaine Smith also showed Plaintiff a chart that indicated DeVry graduates have a higher income than graduates of other universities. In addition to the statement by Jermaine Smith, Plaintiff saw the 90% Representation on posters and brochures around the Irving, Texas campus. Plaintiff chose to look into becoming a student at DeVry himself based on hearing the 90% Representation from Jermaine Smith, and seeing it on DeVry posters and in brochures. Plaintiff contacted DeVry about potentially becoming a student himself, and then met with Sonia Garabet (Roberts), a Student Success Coach for DeVry. Sonia Garabet (Roberts) reiterated the 90% Representation, stating, "If you follow the program as planned, you will finish in two years and graduate. At that point, we will have recruiters from hiring companies come meet with you to offer you a job. Ninety percent of our students have a job within six months of graduation." Sonia Garabet (Roberts) made this statement of the 90% Representation in approximately July 2010, at the Irving, Texas Campus, during a scheduled meeting. In addition, during that same Irving, Texas Campus visit in July 2010, Plaintiff again met with Jermaine Smith who reiterated the 90% Representation, telling Plaintiff: "You should enroll at DeVry because many companies come on campus to hire our students and ninety percent of DeVry graduates find jobs in their field within six months of graduation." Sonia Garabet (Roberts) and Jermaine Smith did not in any way limit or qualify their statements. In reliance on the 90% Representation as encountered in the initial discussion with Jermaine Smith, and on posters and in brochures at the DeVry Irving campus, as confirmed by Sonia Garabet (Roberts) and Jermaine Smith, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in posters, in television and online advertisements, and on monitors throughout the campus. In addition, Professor Robert Meadows informed students in his class that with everything they were learning at DeVry, they

would be getting a job right after graduation and making a higher income. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

46. Plaintiff Sharonda Ford was at all relevant times a resident of Longview, Texas. Plaintiff enrolled at DeVry in October 2008, paid tuition and associated costs of attending DeVry, and graduated in June 2011 with an Associate degree in Health Information Technology. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately August 2008 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation in the DeVry website. When Plaintiff contacted DeVry about potentially becoming a student, she spoke male with a representative for DeVry. The DeVry representative reiterated the 90% Representation, stating, "Ninety percent of our students find a job in their field of study within six months of graduation." The DeVry representative made this statement of the 90% Representation in approximately August 2008, over the telephone during a scheduled appointment. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90%

Representation encountered on the DeVry website as confirmed by the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in television commercials, in telephone communications, in her Career Development course, and in an in-person meeting with Veronica Carter a Career Services Advisor for DeVry. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

47.     Plaintiff Jayson Fox was at all relevant times a resident of Edinburg and Austin, Texas. Plaintiff enrolled at DeVry in July 2009, paid tuition and associated costs of attending DeVry, and graduated in October 2012 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately May 2009 in radio advertisements. After hearing radio advertisements, Plaintiff also looked at the DeVry website. Plaintiff recalls the message from the DeVry radio advertisements and DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff heard the 90% Representation in radio advertisements several times and looked at the website before deciding to contact DeVry about

potentially becoming a student. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in the radio advertisements and website. When Plaintiff contacted DeVry about potentially becoming a student, he spoke with Paul A. DeBerto, an Admissions Services Representative for DeVry. Paul A. DeBerto reiterated the 90% Representation, stating, "Ninety percent of graduates get a job in their field of study within six months of graduation. Our graduates make more money as compared to graduates in similar fields from other schools. For your lifetime after graduation, we will be there to help you with career services." Paul A. DeBerto made this statement of the 90% Representation in approximately May 2009, in a telephone conversation. Paul A. DeBerto did not in any way limit or qualify the statement. In reliance on the 90% Representation heard in radio advertisements as confirmed by Paul A. DeBerto, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in television commercials and radio advertisements. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**48.** Plaintiff Courtney Frazier was at all relevant times a resident of Irving, Texas. Plaintiff enrolled at DeVry in June 2009, paid tuition and associated costs of attending DeVry, and

graduated in June 2013 with a Bachelor of Science degree in Network and Communications Management. Plaintiff attended classes at the Irving, Texas campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately April 2009 on the DeVry website. Plaintiff recalls the message on the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student, and then met with Robert Stewart, an Admissions Services Representative for DeVry. Robert Stewart reiterated the Standard 90% Ad, stating, "Ninety percent of our graduates obtain a job in their field within six months." Robert Stewart made this statement of the 90% Representation in approximately May 2009, at the Irving, Texas campus, in his office during a campus visit. Robert Stewart did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Robert Stewart, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in flyers, from financial advisors, from Robert Stewart periodically during follow-ups, from Allison Havard a Student Success Coach for DeVry whom Plaintiff met with each semester, and from Professor Kenneth Chipps who taught her NETW310 course. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs

after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

     **49.**     Plaintiff Jennifer Gailley was at all relevant times a resident of Garrison, Texas. Plaintiff enrolled at DeVry in the summer of 2009, paid tuition and associated costs of attending DeVry, and graduated in December 2012 with an Associate degree in Health Information Technology. Plaintiff attended classes online. Plaintiff initially encountered the Standard 90% Ad in approximately January 2009 in television commercials. Plaintiff also encountered the 90% Representation on the DeVry website. Plaintiff recalls the message from the DeVry television commercials and website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials and on the website. When Plaintiff contacted DeVry about potentially becoming a student, she spoke with Derek Fout, an Admissions Services Representative for DeVry. Derek Fout reiterated the 90% Representation, stating: "Ninety percent of students that graduate from DeVry have employment within six months and make a higher income in their field of study than graduates from other accredited schools. We will make sure to help find you a job after graduating." Derek Fout made this statement of the 90% Representation in approximately June 2009 over the phone during a scheduled appointment. Derek Fout did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in television commercials and on the DeVry website as confirmed by Derek Fout, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in television commercials and on the DeVry website. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in

choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

50.     Plaintiff Ryan Grizzle was at all relevant times a resident of Arlington and Amarillo, Texas. Plaintiff enrolled at DeVry in the summer of 2008, paid tuition and associated costs of attending DeVry, and graduated in March 2013 with a Bachelor's degree in Electronics Engineering Technology. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately the summer of 2008 on the DeVry website while researching colleges online. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff provided his contact information to DeVry and was called by Robert Long, an Admissions Services Representative for DeVry, who spoke to Plaintiff about potentially becoming a student. Robert Long reiterated the 90% Representation, stating, "DeVry has a ninety percent employment rate within six months of graduation." Robert Long made this statement of the 90% Representation in approximately the summer of 2008, during several phone conversations. Robert Long did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Robert Long, Plaintiff

chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in on the DeVry website, in DeVry television commercials, on the DeVry YouTube channel, and from Ursala Garbrecht his Student Success Coach. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

51.     Plaintiff Jeremy Hengy was at all relevant times a resident of Lewisville, Texas. Plaintiff enrolled at DeVry in August 2010, paid tuition and associated costs of attending DeVry, and graduated in October 2015 with a Bachelor's degree in Multimedia Design and Development. Plaintiff attended classes at the Irving, Texas campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately February or March 2010 when a female DeVry recruiter came to his high school, Lake Dallas High School, and made the 90% Representation verbally while presenting information to Plaintiff on an I-Pad. The DeVry recruiter also gave Plaintiff a brochure that included the 90% Representation. In addition, the DeVry recruiter told Plaintiff: "You will get a better job if you go to DeVry than if you go to another college." Plaintiff next encountered the 90% Representation in approximately March or April 2010 in a DeVry television advertisement. Plaintiff saw DeVry television advertisements with the 90%

Representation over a period of approximately a month before contacting DeVry. Also before contacting DeVry, Plaintiff checked out the DeVry website and encountered the 90% Representation there. Plaintiff recalls the message from the female DeVry recruiter, on the recruiter's I-Pad, in the DeVry brochure, in the DeVry television advertisements, and on the DeVry website, that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the statements made by the DeVry recruiter in conjunction with seeing the 90% Representation on the recruiter's I-Pad, as well as in the DeVry brochure, in the DeVry television advertisements, and on the DeVry website. Plaintiff then called DeVry and was informed that DeVry had a "camp" for potential students and invited Plaintiff to attend. The "camp" was an open enrollment event at the Irving, Texas campus. Plaintiff attended that event in June or July 2010 with his father. During the open house event, while speaking with DeVry advisors and representatives, the 90% Representation was verbally reiterated and shown to Plaintiff and his father on various papers. The DeVry advisors and representatives also represented to Plaintiff and his father that DeVry graduates received better pay than graduates of other universities. Plaintiff then met with Fredrick Miller, an Admissions Services Representative for DeVry. Fredrick Miller reiterated the Standard 90% Ad, stating, "Get the Multimedia Design and Development degree because the 90% employment rate applies to that degree as well." Fredrick Miller made this statement of the 90% Representation in approximately June or July 2010, at the Irving, Texas campus, during the open enrollment event. Fredrick Miller did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered from the DeVry recruiter, on the recruiter's I-Pad, in the DeVry brochure, in DeVry television advertisements, on the DeVry website, from DeVry advisors and representatives during the open enrollment event, as confirmed by Fredrick Miller, Plaintiff

chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in DeVry television advertisements, from counselors, on monitors at the Irving campus, in DeVry brochures, from his success coach, and on the DeVry website. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry from professors in the Career Development class and from his success coach. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

52.     Plaintiff Lisa Howard was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry's Keller Graduate School in the summer of 2010, paid tuition and associated costs of attending DeVry, and graduated in March 2013 with a Master of Business Administration degree. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately March 2010 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. When Plaintiff contacted DeVry

about potentially becoming a student, she spoke with a female DeVry advisor. The DeVry advisor reiterated the 90% Representation, stating, "Ninety percent of our students get a job in their field within six months of graduating." The DeVry advisor made this statement of the 90% Representation in approximately April 2010, in a telephone call during a scheduled appointment. The DeVry advisor did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by the DeVry advisor in a scheduled telephone call, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

53.    Plaintiff Nathaniel Jones was at all relevant times a resident of Irving, Texas. Plaintiff enrolled at DeVry in May 2010, paid tuition and associated costs of attending DeVry, and graduated in October 2013 with an Associate in Network Systems Administration degree. Plaintiff attended classes at the DeVry Irving, Texas campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2009 in television commercials. Plaintiff next encountered Defendants' Standard 90% Ad from a DeVry recruiter who came to Nissan of Irving,

where Plaintiff worked at the time. Plaintiff recalls the message from the television commercials and the DeVry recruiter that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials and from the DeVry recruiter. Plaintiff contacted DeVry about potentially becoming a student, and then met with Latasha Hinton, an Admissions Services Representative for DeVry. Latasha Hinton reiterated the 90% Representation, stating, "We assist with job placement. After graduation, ninety percent of our students get a job within six months. You will be working in your field with better pay." Latasha Hinton made this statement of the 90% Representation in approximately May 2010, in her office at the DeVry Irving, Texas campus, during a campus visit. Latasha Hinton did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in television commercials and from the DeVry recruiter as confirmed by Latasha Hinton, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in meetings with Latasha Hinton, from DeVry advisors Sonja Garabreath, Amanda Williams, Mrs. Lopez, Sherry Glover Moore, and Tagela Thompson, from instructors, in the Student Center on posters, in television commercials in the Student Center and in career day correspondence. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after

graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**54.** Plaintiff Derrick Keith was at all relevant times a resident of Prosper, Texas. Plaintiff enrolled at DeVry in January 2010, paid tuition and associated costs of attending DeVry, and graduated in April 2017 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the Irving, Texas campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately November 2009 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff next contacted DeVry about potentially becoming a student, and then met with Juan Gonzalez, an Admissions Services Representative for DeVry. Juan Gonzalez reiterated the 90% Representation, stating, "Ninety percent of our students are employed in their field within six months after graduation." Juan Gonzalez also stated, "The salaries of DeVry graduates are higher compared to other local traditional universities." Juan Gonzalez made this statement of the 90% Representation in approximately January 2010, in his office at the Irving, Texas campus, during a campus visit. Juan Gonzalez did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Juan Gonzalez, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in posters around the Irving campus, on the DeVry website, and in his Career Development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad

on the DeVry website while a student at DeVry. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

55.     Plaintiff Prosper Kiswaga was at all relevant times a resident of Dallas and Houston, Texas. Plaintiff enrolled at DeVry in January 2009, paid tuition and associated costs of attending DeVry, and graduated in April 2013 with an Associate's degree in Network Systems Administration, and in October 2014 with a Bachelor's degree in Technical Management. Plaintiff attended classes at the Irving, Richardson, Houston (Equity Drive) and Houston (Galleria) campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2009 at a meeting at the DeVry Irving, Texas campus, after Plaintiff's friend, Mponjoli Malakasuka, suggested Plaintiff consider the school. Plaintiff decided to visit the DeVry Irving campus in person and met with Abdus Sattar, an Academic Services Representative for DeVry. During their meeting, Abdus Sattar gave Plaintiff a brochure that contained the 90% Representation. Abdus Sattar highlighted the 90% Representation, stating, "Ninety percent of DeVry graduates are employed in their field of study within six months of graduation." Abdus Sattar made this statement of the 90% Representation in approximately January 2009, in his office at the DeVry Irving, Texas campus, during a campus visit. Abdus Sattar did not in any way limit

or qualify the statement. In reliance on the 90% Representation as encountered in the DeVry brochure as confirmed by Abdus Sattar, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on television monitors around the Irving campus and from an advisor. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

56.     Plaintiff Norma Martinez-Cantu was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled at DeVry in June 2008, paid tuition and associated costs of attending DeVry, and graduated in June 2012 with an Associate in Health Information Technology degree. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately May 2008 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff contacted DeVry by phone about potentially becoming a student. Plaintiff spoke with a male DeVry Admissions Services Representative over the phone, who reiterated the 90% Representation, stating, "Ninety percent of our graduates are employed in their

72

field of study within six months. We have several companies that will help you with your externship hours." The DeVry Admissions Services Representative made this statement of the 90% Representation in approximately May 2008, over the phone, during a scheduled appointment. The DeVry Admissions Services Representative reinforced the statement by adding that the Health Information Technology degree that Plaintiff was considering was in high demand. The DeVry Admissions Services Representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by the male DeVry Admissions Services Representative over the phone, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation through her online student portal. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

57.     Plaintiff Godfrey Momanyi was at all relevant times a resident of McKinney, Texas. Plaintiff enrolled at DeVry in January 2008, paid tuition and associated costs of attending DeVry, and graduated in June 2010 with an Associate degree in Network Systems Administration, in June 2013 with a Bachelor of Science degree in Network Systems Administration, and in June

2015 with a Master's degree in Information Systems Management. Plaintiff attended classes at the Richardson and Irving, Texas campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2008 in television commercials. Plaintiff recalls the message from the television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% representation in the DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student, and then met with Chris Miller, an Admissions Services Representative for DeVry. Chris Miller reiterated the 90% representation, stating, "Ninety percent of DeVry graduates have job in six months after graduation. In the first six months after graduation, you will have a job in your field of study. My nephew was less than six months into his education and received a job for $50,000 per year." Chris Miller made this statement of the 90% Representation in approximately January 2008, in his office at the Richardson, Texas campus, during a campus visit. Chris Miller did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in television commercials as confirmed by Chris Miller, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in posters and flyers around both the Richardson and Irving campuses, in television commercials, during conversations with his Admissions Services Representative Chris Miller, from Leslie Blodgett an Admissions Services Representative with DeVry, from advisor Urine Lopez, and in his Career Development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants

counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

58. Plaintiff Michelle Orr was at all relevant times a resident of Little Elm, Texas. Plaintiff enrolled at DeVry in August 2011, paid tuition and associated costs of attending DeVry, and graduated in May 2014 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the Irving and Richardson, Texas campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately May 2011 in radio advertisements. Plaintiff recalls the message from the radio advertisements that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff heard the 90% Representation in radio advertisements several times before contacting DeVry about potentially becoming a student. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in the radio advertisements. Plaintiff contacted DeVry about potentially becoming a student, and then met with Robert Stewart, an Admissions Services Representative for DeVry. Robert Stewart reiterated the 90% Representation, stating, "Here is our proven track record. A lot of people have gone through the program and been successful. Ninety percent of DeVry graduates are employed within six months of graduation," followed by handing Plaintiff a brochure with the 90% Representation. Robert Stewart also mentioned that DeVry graduates have a higher rate of pay than graduates of other universities. Robert Stewart made this statement of the 90% Representation in approximately July 2011, in his office at the Irving, Texas campus, during a campus visit. Robert Stewart did not in any way limit or qualify the statement. In reliance on the 90% Representation

encountered in radio advertisements as confirmed by Robert Stewart, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in television advertisements, in radio advertisements, in brochures in the Student Success Center, and in video testimonials by former students running on campus monitors. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

59.     Plaintiff Lawrence Owonikoko was at all relevant times a resident of Dallas, Texas. Plaintiff enrolled at DeVry's Keller Graduate School of Management in January 2009, paid tuition and associated costs of attending DeVry, and graduated in April 2011 with a Master of Information Systems Management degree. Plaintiff attended classes at the Irving, Texas campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately December 2008 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student, and then met with Spencer Cole, an Admissions Services Representative for DeVry. Spencer Cole reiterated the 90%

Representation, stating, "Ninety percent of our students are employed in their field within six months of graduation." Spencer Cole also mentioned that DeVry graduates have a higher pay rate than graduates of other schools. Spencer Cole made this statement of the 90% Representation approximately January 2009, in his office at the Irving, Texas campus, during a campus visit. Spencer Cole did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Spencer Cole, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in verbal communications with professors and in his Career Development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

60.    Plaintiff Andres Salazar was at all relevant times a resident of Irving, Texas. Plaintiff enrolled at DeVry in April 2009, paid tuition and associated costs of attending DeVry, and graduated in April 2015 with a Bachelor of Science degree in Electronic Engineering. Plaintiff attended classes at the Fort Worth and Irving, Texas campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately December 2008 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were

employed in their field within six months of graduation. Plaintiff also saw the 90% Representation on YouTube. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website and YouTube. Plaintiff next contacted DeVry about potentially becoming a student, and met with Letroy Glover, an Admissions Services Representative for DeVry. Letroy Glover reiterated the 90% Representation, stating, "If you get a Bachelor's degree from DeVry, you will make more money and you will get it in less time than any conventional schools. With a degree from DeVry you will have more chances to secure employment within your field than graduates of other schools. Ninety percent of DeVry graduates are employed in their field within six months of graduation." Letroy Glover made this statement of the 90% Representation in approximately March 2009, in his office at the DeVry Irving, Texas campus, during a campus visit. Letroy Glover did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Letroy Glover, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in television commercials, on posters around both the Fort Worth and Irving campuses, from Professor Rohani, multiple times from Letroy Glover, and in his Career Development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry in posters around both the Fort Worth and Irving campuses, and during multiple discussions with Letroy Glover. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with

the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

61.    Plaintiff Kimberly Searcy was at all relevant times a resident of Winnsboro, Texas. Plaintiff enrolled at DeVry in July 2008, paid tuition and associated costs of attending DeVry, and graduated in July 2012 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately July 2008 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff next contacted DeVry by phone about potentially becoming a student, and spoke with a Lauren Siwicki, an Academic Services Representative for DeVry. Lauren Siwicki reiterated the 90% Representation, stating, "Ninety-three percent of our graduates obtain a job in their field within six months." Lauren Siwicki made this statement of the 90% Representation in approximately July 2008, over the phone. Lauren Siwicki did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Lauren Siwicki, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on the DeVry website. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry.

Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

62.     Plaintiff LaChanna Sneed was at all relevant times a resident of Fort Worth, Texas. Plaintiff enrolled at DeVry's Keller Graduate School in September 2009, paid tuition and associated costs of attending DeVry, and graduated in June 2012 with a Master of Business Administration degree. Plaintiff attended classes at the DeVry Fort Worth campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately May 2008 in DeVry website links within email communications with Joanne Swaner, an Admissions Services Representative for DeVry. Plaintiff recalls the message from the website links that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the Standard 90% Ad in the website links. Plaintiff then met with Joanne Swaner about potentially becoming a student. Joanne Swaner reiterated the 90% Representation, stating: "Ninety percent of our graduates leave Keller in higher paying positions in six months of graduation, making $100,000 or more per year. Most graduates get jobs at Burlington Northern Santa Fe, AT&T, General Motors, Lockheed Martin, and the City of Fort Worth." Joanne Swaner made this statement of the 90% Representation on August 19, 2008 at a 3:30 PM meeting in her office at the Fort Worth campus, during a campus visit. Joanne Swaner also showed Plaintiff pamphlets indicating a 90% employment rate within six months of graduation and a higher income for DeVry graduates. Joanne Swaner did not in any way limit or

qualify the statement. In reliance on the 90% Representation encountered in the DeVry website links as confirmed by Joanne Swaner, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in brochures, on posters in the front office at the DeVry Fort Worth campus, in communications with Professors Clark and Swayfford, and in meetings with Joanne Swaner. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**63.** Plaintiff Scott Sullivan was at all relevant times a resident of Wiley, Texas. Plaintiff enrolled at DeVry in August 2008, paid tuition and associated costs of attending DeVry, and graduated in May 2012 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the Richardson, Texas campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately July 2008 in a television commercial. Plaintiff looked on the DeVry website and also saw the 90% Representation there. Plaintiff recalls the message from the DeVry television commercial and website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry commercial and

website. Plaintiff contacted DeVry about potentially becoming a student, and then met with Jesse C. McRae III, an Admissions Services Representative for DeVry. Jesse C. McRae III reiterated the 90% Representation, stating, "Within six months of graduation, ninety percent or more have found employment in their degree field. Employers in the area have a special relationship with DeVry and offer preferential hiring of DeVry graduates due to that relationship." Jesse C. McRae III made this statement of the 90% Representation on or about July 29, 2008 in his office at the Richardson, Texas campus during a campus visit. Jesse C. McRae III did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry television commercial and on the DeVry website as confirmed by Jesse C. McRae III, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

64.    Plaintiff Miranda Van Colen (Jordan) was at all relevant times a resident of Sour Lake, Texas. Plaintiff enrolled at DeVry in March 2008, paid tuition and associated costs of attending DeVry, and graduated in June 2010 with an Associate degree in Web Graphic Design.

Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2008 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. When Plaintiff contacted DeVry about potentially becoming a student, she spoke with Mark McKanna, an Admissions Advisor for DeVry. Plaintiff spoke with Mark McKanna on January 9, 2008 by telephone during a scheduled appointment. Mark McKanna reiterated the 90% Representation, stating: "DeVry students have a ninety percent employment rate within six months of graduation, and a higher income than graduates of other schools." In reliance on the 90% Representation encountered on the DeVry website as confirmed in the telephone conversation with Mark McKanna, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in emails from Career Services. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

65. Plaintiff Edward Watts was at all relevant times a resident of Commerce, Texas. Plaintiff enrolled at DeVry in May 2012, paid tuition and associated costs of attending DeVry, and

graduated in April 2015 with an Associate degree in Electronics and Computer Technology. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately April 2012 in a television commercial. Plaintiff recalls the message from the television commercial that 90% of DeVry graduates were employed in their field within six months of graduation. After seeing the television commercial, Plaintiff looked at DeVry's website and also saw the 90% Representation there, as well as in internet pop-up advertisements. Plaintiff chose to look further into becoming a student at DeVry based on the Standard 90% Ad in the television commercial, on the DeVry website, and in internet pop-up advertisements. When Plaintiff contacted DeVry about potentially becoming a student, he spoke with Brandon Freeman, an Admissions Services Representative for DeVry. Brandon Freeman reiterated the 90% Representation, stating, "Ninety percent of our students get a job in their field soon after graduation. Almost everyone graduates and gets a job in their chosen field within six months. You will also make more money than graduates from other schools." Brandon Freeman made this statement of the 90% Representation in approximately May 2012, over the phone during a scheduled appointment. Brandon Freeman did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the television commercial, on the DeVry website, and in internet pop-up advertisements as confirmed by Brandon Freeman, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in television commercials and on the DeVry website. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry on the DeVry website. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain

a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**66.** Plaintiff Carl Williams was at all relevant times a resident of Irving and Fort Worth, Texas. Plaintiff enrolled at DeVry in October 2012, paid tuition and associated costs of attending DeVry, and graduated in October 2015 with a Bachelor of Science degree in Network Communications Management. Plaintiff attended classes at the DeVry Fort Worth and Irving campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately March 2009 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff next contacted DeVry about potentially becoming a student, and he met with Sonia Garabet, a Student Success Coach for DeVry. Sonia Garabet reiterated the 90% Representation, stating, "We have a ninety percent job placement rate within six months after graduation." Sonia Garabet made this statement of the 90% Representation in approximately October 2012, at the DeVry Fort Worth, Texas campus, in her office, during a campus visit. Sonia Garabet did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Sonia Garabet, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90%

Representation in television commercials, Facebook advertisements, posters on both the Fort Worth and Irving campuses, from Professor Chipps, from Professor Morgan, from DeVry Dean John Stuart, in meetings with Sabrina Russ Student Success Coach for DeVry, from an advisor Lavern, from Jhen Baggett, and in his Career Development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry in posters in the lobby of both the Fort Worth and Irving campuses, from Professor Chipps numerous times, from Professor Morgan numerous times, and during his Career Development course. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**67.** Plaintiff Sean Williams was at all relevant times a resident of Irving and Dallas, Texas. Plaintiff enrolled at DeVry in September 2009, paid tuition and associated costs of attending DeVry, and graduated in February 2012 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the Irving and Richardson, Texas campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in July 2009 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed

in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff next contacted DeVry about potentially becoming a student, and then met with a male DeVry Advisor. The DeVry Advisor reiterated the 90% Representation, stating, "Ninety percent of our graduates get a job in their field of study within six months of graduating." The DeVry Advisor made this statement of the 90% Representation in approximately July 2009, in his office at the DeVry Irving, Texas campus. The DeVry Advisor did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by the DeVry advisor, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on the DeVry website, during meetings at the end of each term with Kathy Chabez a Student Services Representative for DeVry, in communications with Sharetta McKenzie a DeVry representative, in communications with Latrice Campbell a Student Success Coach for DeVry, and in his Career Development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

    **68.** Plaintiff Willie Garrett was at all relevant times a resident of Mesquite, Texas.

Plaintiff enrolled at DeVry in February 2011, paid tuition and associated costs of attending DeVry, and graduated in June 2014 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the Mesquite, Texas campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2011 in television commercials. Plaintiff also heard DeVry advertisements over the radio. Plaintiff recalls the message from the television commercials and radio advertisements that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in the television commercials and radio advertisements. Plaintiff contacted DeVry about potentially becoming a student, and then met with either Camellia Thompson or Leslie Blodgett. Plaintiff is certain that he met with one of these two Admissions Services Representatives for DeVry, but cannot at this time recall which one. Either Camellia Thompson or Leslie Blodgett reiterated the 90% Representation, stating, "Ninety percent of DeVry graduates have a job in their field of study within six months of graduating." Either Camellia Thompson or Leslie Blodgett also stated that DeVry graduates have a higher income than graduates from other universities. Either Camellia Thompson or Leslie Blodgett made this statement of the 90% Representation in approximately January 2011, at the DeVry, Texas Mesquite campus, in her office during a campus visit. When either Camellia Thompson or Leslie Blodgett made this statement of the 90% Representation, she did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in television commercials and radio advertisements as confirmed by either Camellia Thompson or Leslie Blodgett, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in television commercials, radio advertisements, and in brochures at the campus. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told

before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

69.    Plaintiff Richard Shaw was at all relevant times a resident of Plano and Dallas, Texas. Plaintiff enrolled at DeVry in March 2009, paid tuition and associated costs of attending DeVry, and graduated in June 2011 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the Irving, Texas and Oklahoma City campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2009 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff also encountered the 90% Representation in a pamphlet he obtained from the education and career services office on Tinker Air Force base. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website and in the DeVry pamphlet. Plaintiff contacted DeVry about potentially becoming a student, and met with Lacey Pennington, an Admissions Services Representative for DeVry. Lacey Pennington reiterated the 90% Representation using a flipbook, stating, "Ninety percent of DeVry graduates land a job in their field of study within six months of graduating." Lacey Pennington made this statement of the 90% Representation in approximately February 2009, at the Oklahoma City campus, in her office during a campus visit. Lacey

Pennington did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website and pamphlet as confirmed by Lacey Pennington, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in television commercials. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**70.** Plaintiff Trevor Reed was at all relevant times a resident of College Station, Texas. Plaintiff enrolled at DeVry in the summer of 2011, paid tuition and associated costs of attending DeVry, and graduated in October 2013 with a Bachelor's degree in Technical Management. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately the summer of 2011 in DeVry television commercials. Plaintiff looked at the DeVry website and also saw the 90% Representation there. Plaintiff recalls the message from the DeVry television commercials and website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation in DeVry television commercials and on the DeVry website. When Plaintiff contacted DeVry about potentially becoming a student, he spoke with an

enrollment counselor for DeVry. The DeVry enrollment counselor reiterated the 90% Representation, stating, "You should enroll here because DeVry graduates have a ninety percent employment rate within six months of graduation." The DeVry enrollment counselor made this statement of the 90% Representation in approximately the summer off 2011 over the phone. The DeVry enrollment counselor did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials and the DeVry website as confirmed by the DeVry enrollment counselor, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on social media posts and in DeVry television commercials. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

72. Plaintiff Heather Emmons was at all relevant times a resident of Gunbarrel City, Texas. Plaintiff enrolled at DeVry in 2010, paid tuition and associated costs of attending DeVry, and graduated in 2012 with an Associate degree in Health Information Technology. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2010 in a brochure that was sent to her by email from DeVry. Plaintiff recalls the

message from the brochure that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% representation in the brochure. Plaintiff then spoke over the phone with DeVry Admissions Advisor Heena Syed about potentially becoming a student. Heena Syed reiterated that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff then spoke by phone with a DeVry Enrollment Counselor who also reiterated the 90% Representation. DeVry Admissions Advisor Heena Syed and the DeVry Enrollment Counselor did not in any way limit or qualify the statements. In reliance on the 90% Representation encountered in the brochure that was emailed to her by DeVry as confirmed by DeVry Admissions Advisor Heena Syed and the DeVry Enrollment Counselor in phone conversations, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**72.** Plaintiff Troy Lindberg was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled at DeVry in September 2012, paid tuition and associated costs of attending DeVry, and graduated in August 2015 with a Bachelor of Science degree in Technical

Management, and in October 2016 with a Master of Business Administration degree. Plaintiff attended classes at the San Antonio campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2012 in television commercials. Plaintiff went to the DeVry website and also saw the 90% Representation there. Plaintiff recalls the message from the television commercials and DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in television commercials and on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student, and then met with Melissa Hickok, an Admissions Services Representative for DeVry. Melissa Hickok reiterated the 90% Representation, stating, "We can guarantee you will have a job in your chosen career field. Ninety percent of our students have a job within six months of graduation, and a higher income than graduates of other schools." Melissa Hickok made this statement of the 90% Representation in approximately August 2012 at the DeVry San Antonio campus, in her office, during a campus visit. Melissa Hickok did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in television commercials and on the DeVry website as confirmed by Melissa Hickok, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation from Grover L. McDaniel an Academic Services Representative, from Professor Jamie Castro, and in his Career Development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2)

Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

      **73.**     Plaintiff Ruben Espinoza was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled at DeVry in August 2010, paid tuition and associated costs of attending DeVry, and graduated in May 2013 with an Associate degree in Network Systems Administration. Plaintiff attended classes at the San Antonio campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately July 2010 through a presentation by a DeVry recruiter at a job fair in San Antonio. Plaintiff also heard DeVry advertisements on the radio and looked at the DeVry website. Plaintiff recalls the message from the presentation by the DeVry recruiter, radio advertisements, and on the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in the presentation by the DeVry recruiter, in DeVry radio advertisements, and on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student, and then met with Wilson Jones III, an Admissions Services Representative for DeVry. Wilson Jones III reiterated the 90% Representation, stating, "Ninety percent of our graduates get a job in their field of study within six months of graduation." Wilson Jones III made this statement of the 90% Representation on or about August 7, 2010, at the DeVry San Antonio campus, in his office during a campus visit. Wilson Jones III did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the job fair presentation as confirmed by Wilson Jones III, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation from Sara Parker as DeVry Advisor, from

Rosendo Rodriguez a DeVry Advisor, in flyers on the information wall on the San Antonio campus and on a billboard displayed near the San Antonio campus. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

74.     Plaintiff Luis Lozano was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled at DeVry's Keller Graduate School of Management in January 2013, paid tuition and associated costs of attending DeVry, and graduated in April 2015 with a Master's degree in Information Systems Management. Plaintiff attended classes at the San Antonio campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately December 2012 or January 2013, in a DeVry television advertisement. Plaintiff recalls the message from the DeVry television advertisement that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff also saw the 90% Representation on the DeVry website. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation in the DeVry television advertisement and on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student, and then met with Shelly Adame, an Advisor for DeVry. Shelly Adame reiterated the 90% Representation, stating: "Ninety percent of Keller graduates are finding

a job within six months and getting paid significantly more that graduates of other universities."

Shelly Adame made this statement of the 90% Representation in approximately January 2013, at the DeVry San Antonio campus, during a scheduled campus visit. Shelly Adame did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the DeVry television advertisement and on the DeVry website as confirmed by Shelly Adame, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation from a Financial Advisor for DeVry, from Shelly Adame, from the Dean of Academics for DeVry during presentations in some of his classes, in DeVry television advertisements, and on posters around the San Antonio campus. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

      **75.**    Plaintiff Claudia Acosta was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in October 2010, paid tuition and associated costs of attending DeVry, and graduated in December 2013 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Houston Equity Drive, Galleria, and Sugar Land campuses. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately February 2010 in a

television commercial. Plaintiff saw DeVry television commercials from approximately February 2010 to July 2010 before contacting DeVry about potentially becoming a student. Plaintiff recalls the message from the television commercials that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials. Plaintiff next contacted DeVry about potentially becoming a student, and an appointment was scheduled. Plaintiff then met with Jim Gideon, an Admissions Services Representative for DeVry. Jim Gideon reiterated the 90% Representation, stating: "DeVry students have better chances, ninety percent get a job in their field within six months of graduation." Jim Gideon made this statement of the 90% Representation in approximately July 2010, in his office at the DeVry Houston campus on Equity Drive, during a campus visit. Jim Gideon did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed by Jim Gideon, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in banners in the cafeteria on campus, during open house events for new students, from Professor Vanppevel, and in her Career Development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that

could be reasonably considered "in their field" is significantly smaller than 90%.

76. Plaintiff Barrie Bergans was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in May 2009, paid tuition and associated costs of attending DeVry, and graduated in June 2013 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Houston campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately August 2008 from a DeVry representative at the Center for Advanced Legal Studies in Houston, Texas. Plaintiff was taking classes at the Center for Advanced Legal Studies. The DeVry representative was permitted to make a presentation at the beginning of class. Plaintiff recalls the message from the presentation that 90% of DeVry graduates were employed in their field of study within six months of graduation. DeVry representatives made at least two such presentations, and set up a table in front of the Admissions Office with pamphlets, posters, and sign up information that Plaintiff would encounter on a daily basis on her way to classes at the Center for Advanced Legal Studies. The Pamphlets and posters included the 90% Representation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation from DeVry recruiters, the pamphlets and posters. Plaintiff contacted DeVry about potentially becoming a student and met with Ruth Culverson, and then met with Jim Gideon, Admissions Services Representatives for DeVry. Ruth Culverson reiterated the 90% Representation, stating, "Ninety percent of our students have a job in their field of study within six months of graduation." Ruth Culverson made this statement of the 90% Representation in approximately March 2009, at the DeVry Houston campus on Equity rive, during a campus visit. Jim Gideon then reiterated the 90% Representation, stating, "Ninety percent of our students have a job in their field of study within six months of graduation." Jim Gideon made this statement of the 90% Representation in approximately March 2009, in his office at the DeVry Houston campus

on Equity rive, during a campus visit. Ruth Culverson and Jim Gideon did not in any way limit or qualify the statements. In reliance on the 90% Representation encountered from DeVry representatives, pamphlets and posters as confirmed by Ruth Culverson and Jim Gideon, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on video testimonials playing on monitors around the campus, from Amy Gray a DeVry employee, from Esmerelda Garcia a DeVry Advisor, and from Maurice Breaux a DeVry Career Services Advisor. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**77.** Plaintiff Dwayne Bolden was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in October 2008, paid tuition and associated costs of attending DeVry, and graduated in 2011 with a Bachelor of Science degree in Business Management. Plaintiff attended classes at the Houston Campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately the summer of 2008 from a DeVry recruiter at a career fair at the Houston Independent School District. The recruiter spoke with Plaintiff and handed him a brochure. Plaintiff recalls the message from the DeVry recruiter and the brochure

that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff then contacted DeVry about potentially becoming a student. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation from the DeVry recruiter and the DeVry brochure. Plaintiff contacted DeVry about potentially becoming a student, and met with Sam Anderson, an Admissions Services Representative for DeVry. Sam Anderson reiterated the 90% representation, stating, "When you graduate from DeVry, you will get a better job and make way more money. Ninety percent of our students get a job in their field within six months of graduation." Sam Anderson made this statement of the 90% Representation in approximately August 2008, at the DeVry Houston campus on Equity Drive, during a campus visit. Sam Anderson did not in any way limit or qualify the statement. In reliance on the 90% Representation from the DeVry recruiter and brochure as confirmed by the DeVry Admissions Services Representative Sam Anderson, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation during New Student Orientation, from faculty and staff during Student Mixers, from DeVry emails, on posters around the Houston campus on Equity Drive, and from Esmeralda Garcia a Student Success Coach for DeVry. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated,

found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

78. Plaintiff David Corvin was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in April 2008, paid tuition and associated costs of attending DeVry, and graduated in August 2012 with a Bachelor of Science degree in Business Administration, and graduated in August 2013 with a Master of Business Administration degree. Plaintiff attended classes at the Houston campuses on Equity Drive and at the Galleria, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2008 in radio advertisements. Plaintiff recalls the message from the radio advertisements that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on hearing the 90% Representation in DeVry radio advertisements. Plaintiff contacted DeVry about potentially becoming a student, and then met with a male representative for DeVry with a name that began with the letters, "Ch". The DeVry representative reiterated the 90% Representation, stating, "Our Career Services has a high success rate for placement. Ninety percent of DeVry students are employed in their field of study within six months of graduating." The DeVry representative made this statement of the 90% Representation in approximately March of 2008, in his office at the DeVry Houston campus on Equity Drive, during a campus visit. The DeVry representative did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry radio advertisements as confirmed by the DeVry representative, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on television monitors in the hallways and lunchroom of the Houston campus on Equity Drive. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not

obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

79.     Plaintiff Bobby Garza was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in August 2008, paid tuition and associated costs of attending DeVry, and graduated in October 2013 with a Bachelor of Science degree in Business Information Systems, and in June 2016 with a Master of Business Administration degree from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the Houston Equity Drive and Galleria campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately July 2008 in television commercials. Plaintiff also went to the DeVry website and saw the 90% Representation there. Plaintiff recalls the message from the television commercials and DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in television commercials and on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student, and then met with Ray Springer, an Admissions Services Representative for DeVry. Ray Springer reiterated the 90% Representation, stating, "According to our available programs, our students have a higher rate of being employed than other schools. Ninety percent of our students obtain a job in their field within six months of graduating." Ray Springer also told Plaintiff that DeVry graduates have a higher income than graduates of other

schools. Ray Springer made this statement of the 90% Representation in approximately July 2008, in his office at the DeVry Houston Galleria campus, during a campus visit. Ray Springer did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in television commercials and the DeVry website as confirmed by Ray Springer, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in pamphlets, on television monitors on campus, from advisor Belinda Balsano, and in his Career Development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

80.     Plaintiff David Hardin was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in the summer of 2009, paid tuition and associated costs of attending DeVry, and graduated in June 2011 with an Associate degree in Web Graphic Design. Plaintiff attended classes at the Houston Beltway campus. Plaintiff initially encountered Defendants' Standard 90% Ad in the summer of 2009 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90%

Representation on the DeVry website, and stopped by the Houston Beltway campus for more information. Plaintiff met with Alicia Hernandez, an Admissions Services Representative for DeVry. Alicia Hernandez reiterated the 90% Representation, stating, "DeVry students are guaranteed jobs after they graduate. Ninety percent have a job in their field of study within six months, and make higher wages than graduates of other institutions." Alicia Hernandez made this statement of the 90% Representation in the summer of 2009, at the Houston Beltway campus, during a campus visit. Alicia Hernandez did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in on the DeVry website as confirmed by Alicia Hernandez, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on posters around the Houston Beltway campus, from DeVry advisors, from faculty members including DeVry Professor Barbara Baethe in the Career Development class, in DeVry television advertisements, and on the DeVry website. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

81.     Plaintiff Jose Jovel was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in June 2012, paid tuition and associated costs of attending DeVry, and

graduated in June 2014 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the Houston campuses located on Equity Drive and at The Galleria, at the Sugar Land campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately April 2012 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student, and then met with Linda Villarreal, an Admissions Services Representative for DeVry. Linda Villarreal reiterated the 90% Representation, stating, "Ninety percent of our students get a job in their field within six months of graduation." Linda Villarreal made this statement of the 90% Representation in approximately May 2012, in her office at the DeVry Sugar Land campus, during a campus visit. Linda Villarreal did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Linda Villarreal, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in flyers and posters around both the Houston campus on Equity Drive and the Sugar Land campus, in meetings once per semester with Katie Kassab an Admissions Services Representative for DeVry, in meetings once per month with Nkechi Nwuba an Advisor for DeVry, in an email communication with Kim Nugent an Advisor for DeVry, and during his Career Development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs

they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

82.     Plaintiff Kevin Lewis was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in January 2011, paid tuition and associated costs of attending DeVry, and graduated in June 2012 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the Houston, Texas campus on Equity Drive. Plaintiff initially encountered Defendants' Standard 90% Ad in 2010 in an email from a DeVry representative. Plaintiff recalls the message from the email that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in the email from the DeVry representative. Plaintiff contacted DeVry about potentially becoming a student, and then met with Victoria Young, an Admissions Services Representative for DeVry. Victoria Young reiterated the 90% Representation, stating, "Over ninety percent of our graduates obtain a job in their field of study within six months of graduation." Victoria Young made this statement of the 90% Representation in approximately December 2010, at the Houston, Texas campus on Equity Drive, in her office, during a campus visit. Victoria Young did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the email from the DeVry representative as confirmed by Victoria Young, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on bulletin boards on campus and from his professors, including Dr. Liu and Mr. Ivaninski, and from DeVry Advisor Esmeralda Garcia. Plaintiff also relied on this repetition of the

90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**83.**     Plaintiff Shariq Mohammad was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in January 2009, paid tuition and associated costs of attending DeVry, and graduated in June 2010 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the Houston, Texas campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately December 2008 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff next contacted DeVry about potentially becoming a student, and then met with Janell Hodges, an Advisor for DeVry. Janell Hodges reiterated the 90% Representation, stating, "Upon graduation, there is a 90% chance you will obtain a job in your field within six months. You will get a job right away after graduation." Janell Hodges made this statement of the 90% Representation in approximately December 2008, in her office at the Houston, Texas campus on Equity Drive, during a campus visit. Janell Hodges did not in any way limit or qualify the statement. In reliance on the

90% Representation encountered on the DeVry website as confirmed by Janell Hodges, Plaintiff chose to enroll at DeVry. At the end of each semester, Plaintiff would meet with Esmeralda Garcia, an Academic Services Representative for DeVry, to enroll in next semester's classes and she would reiterate the 90% Representation. DeVry Advisors Jerel Showers and Katie Kassab also reiterated the 90% Representation to Plaintiff. And one of Plaintiff's professors, Jay Siskind, reiterated the 90% Representation. Plaintiff also saw DeVry television advertisements with the 90% Representation while he was a student. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

84. Plaintiff Tarig Owens was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in August 2008, paid tuition and associated costs of attending DeVry, and graduated in June 2012 with a Bachelor of Science degree in Electrical Engineering. Plaintiff attended classes at the Houston, Texas campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately June 2008 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming

a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student and met with Pamela Greer, an Admissions Services Representative for DeVry. Pamela Greer reiterated the 90% Representation, stating, "Upon completion of the program you have a ninety percent chance of getting employment in your field within six months of graduation." Pamela Greer made this statement of the 90% Representation in approximately July 2008, in her office at the DeVry Houston campus on Equity Drive, during a campus visit. Pamela Greer did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Pamela Greer, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials, on the DeVry website, from professors, from Career Services Advisor Mrs. Hernandez, and from Academic Advisor Mrs. Owens. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

85. Plaintiff Omer Qureshi was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in August 2009, paid tuition and associated costs of attending DeVry, and graduated in February 2011 with a Bachelor of Science degree in Accounting. Plaintiff

attended classes at the Houston, Texas campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2009 in television commercials. Plaintiff recalls the message from the television commercials that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in the DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student, and then he met with Esmeralda Garcia, a Student Success Coach for DeVry. Esmeralda Garcia reiterated the 90% Representation, showing Plaintiff a DeVry brochure that contained the 90% Representation and stating, "Our school is accredited; you have a ninety percent chance of landing a job in you field within six months of graduation." Esmeralda Garcia made this statement of the 90% Representation in approximately August 2009, in her office at the Houston campus on Equity Drive, during a campus visit. Esmeralda Garcia did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in television commercials and DeVry brochure, as confirmed by Esmeralda Garcia, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on the DeVry website, in his Career Development course, and in communications with Esmeralda Garcia, with Sean O'Neal a Student Success Coach for DeVry, and with Mary Maddox an Academic Services Representative for DeVry. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of

study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

86.     Plaintiff Diego Sanchez-Dejarmy was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in December 2011, paid tuition and associated costs of attending DeVry, and graduated in September 2015 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the Houston, Texas campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately November 2011 on the DeVry website. Plaintiff also saw DeVry television commercials in this time frame. Plaintiff recalls the message from the DeVry website and commercials that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff next contacted DeVry about potentially becoming a student, and then met with Tamika Mackey, an Admissions Services Representative for DeVry. Tamika Mackey reiterated the 90% Representation, stating, "Ninety percent of graduates obtain a job in their field within six months of graduation. Our students make more money in their field as compared to graduates of other schools. Many of our students go on to work for Fortune 500 companies." Tamika Mackey made this statement of the 90% Representation approximately December 8, 2011, in her office at the DeVry Houston Equity Drive campus during a campus visit. Tamika Mackey did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Tamika Mackey, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in flyers, on television

monitors around campus, and on the DeVry website. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry in flyers, on the DeVry website, and verbally from DeVry professors. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

87. Plaintiff Joshua Thompson was at all relevant times a resident of Katy, Texas. Plaintiff enrolled at DeVry in January 2014, paid tuition and associated costs of attending DeVry, and graduated in December 2015 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the Houston and Sugar Land, Texas campuses. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2013 in television commercials. Plaintiff recalls the message from the television commercials that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff encountered the 90% Representation in television commercials from approximately January 2013 until November 2013 before contacting DeVry about potentially becoming a student. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in the DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student, and then met with

Courtney Payne, an Academic Services Representative for DeVry. Courtney Payne reiterated the 90% Representation, stating, "DeVry graduates have a ninety percent chance of getting a job in their field within six months of graduation. You will be able to pay back the student loans." Courtney Payne made this statement of the 90% Representation in approximately November 2013, at the DeVry Sugar Land, Texas campus, in her office during a campus visit. Courtney Payne did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in television commercials as confirmed by Courtney Payne, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in flyers on campus, during the Career Development course, from Esmerelda Garcia a DeVry Career Services Advisor, from Deven Lawrence an Enrollment Counselor, and from Jasmine Eaden Career Services Advisor. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry in flyers on campus and on television monitors on campus. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**88.** Plaintiff Brad Booth was at all relevant times a resident of Irving, Texas. Plaintiff

enrolled at DeVry's Keller Graduate School of Management in August 2012, paid tuition and associated costs of attending DeVry, and graduated in 2014 with a Master's degree Information Systems Management. Plaintiff attended classes at the DeVry Irving, Texas campus and Online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately April 2012 in DeVry television commercials. Plaintiff recalls the message from the DeVry television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into pursuing his master's degree at DeVry based on the 90% Representation in DeVry television commercials. Plaintiff met with Terrence Knight, an Academic Advisor for DeVry, and with Terrell Shaw, also an Advisor for DeVry. Terrence Knight reiterated the 90% Representation, stating, "I'm glad that are taking an active role in your life, because when you graduate, you will get a job. Ninety percent of our graduates get a job within six months." Terrence Knight made this statement of the 90% Representation in approximately August 2012, at the Irving, Texas campus. Terrence Knight did not in any way limit or qualify the statement. Terrell Shaw also reiterated the 90% Representation, stating, "Ninety percent of graduates get a job within six months." Terrell Shaw made this statement of the 90% Representation in approximately August 2012, at the Irving, Texas campus. Terrell Shaw did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed by DeVry advisors Terrence Knight and Terrell Shaw, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in posters around the Irving, Texas campus, in DeVry television commercials, from Scott Kingsley Plaintiff's IT Networking Class Professor, from Terrell Shaw, from Jarod Fowler an Academic Advisor for DeVry, from Laura Banks an Academic Advisor for DeVry, from Sabrina Russ a Student Success Coach for DeVry, from William McClure an Academic Services Representative for DeVry, and

from Rick D. Chappell an Admissions Services Representative for DeVry. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

89. Plaintiff Yumeka Gibson was at all relevant times a resident of Dallas, Texas. Plaintiff enrolled at DeVry in May 2009, paid tuition and associated costs of attending DeVry, and graduated in December 2010 with an Associate in Health Information Technology degree. Plaintiff attended classes at the Irving, Texas campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately May 2009 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff next contacted DeVry about potentially becoming a student, and then met with LeTroy Glover, an Admissions Services Representative for DeVry. LeTroy Glover reiterated the 90% Representation, stating: "After graduating, ninety percent of DeVry students are hired in their field of study within six months." LeTroy Glover made this statement of the 90% Representation in approximately May 2009, in his office at the DeVry Irving, Texas campus, during a campus visit. LeTroy Glover did not in any way limit or qualify

the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by LeTroy Glover, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in brochures, in television commercials, online, from DeVry Counselor C. Navarrete, and from DeVry Academic Advisor Vanessa Martinez. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**90.** Plaintiff Kevin Guest was at all relevant times a resident of Irving, Texas. Plaintiff enrolled at DeVry's Keller Graduate School of Management in March 2010, paid tuition and associated costs of attending DeVry, and graduated in February 2012 with a Master of Business Administration degree, and in April 2015 with a Master of Accounting degree. Plaintiff attended classes at the Irving, Fort Worth and Richardson, Texas campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately November 2009 in television commercials, and in radio advertisements. Plaintiff recalls the message from the television commercials and radio advertisements that 90% of DeVry graduates were employed in their field of Study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry

based on the 90% Representation in television commercials and radio advertisements. Plaintiff contacted DeVry about potentially becoming a student, and then met with Shannon Barfield, an Admissions Services Representative for DeVry. Shannon Barfield reiterated the 90% Representation, stating, "Ninety percent of our students get jobs in their field within six months after graduation." Shannon Barfield made this statement of the 90% Representation in approximately January 2010, at the DeVry Irving, Texas campus, in her office, during a campus visit. Shannon Barfield did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in television commercials and radio advertisements as confirmed by Shannon Barfield, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation from advisors, on a television monitor at the Irving campus, in television commercials, and in radio advertisements. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

91.    Plaintiff Ebony Ijeh was at all relevant times a resident of Mesquite, Texas. Plaintiff enrolled at DeVry in the fall of 2010, paid tuition and associated costs of attending DeVry, and graduated in October 2016 with a Bachelor's degree in Healthcare Administration. Plaintiff

attended classes at the Irving, Texas campus, Norfolk, Virginia campus, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately August or September 2010 in a DeVry television commercial. Plaintiff recalls the message from the DeVry television commercial that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff saw the 90% Representation in DeVry television commercials a few times before contacting DeVry about potentially becoming a student. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials. When Plaintiff contacted DeVry about potentially becoming a student, she spoke with Sahily Santiago, an Admissions Services Representative for DeVry. Sahily Santiago reiterated the 90% Representation, stating, "Ninety percent of DeVry graduates find jobs in their field within six months of graduating." Sahily Santiago made this statement of the 90% Representation in approximately August or September 2010, over the phone. Sahily Santiago did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed by Sahily Santiago, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in DeVry television commercials and from Joan Long, the Director of Career Services for DeVry. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry in DeVry television commercials and from Joan Long, the Director of Career Services for DeVry. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1)

Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**92.** Plaintiff Brandon Jordan was at all relevant times a resident of Garland, Texas. Plaintiff enrolled at DeVry in January 2010, paid tuition and associated costs of attending DeVry, and graduated in August 2013 with a Bachelor of Science degree in Business Administration. Plaintiff attended classes at the Irving, Texas campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately September 2009 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student, and then met with James R. Torrance, an Admissions Services Representative for DeVry. Plaintiff explained to James R. Torrance that he wanted to attend a school that would allow him to take the most amount of classes, to graduate as soon as possible and that would get him a job with higher pay close by. James R. Torrance reiterated the 90% Representation, stating, "You have come to the right place because DeVry offers all of those things. In comparison to other schools, DeVry students are hired faster. Ninety percent of our graduates have a job in their field within six months. We have alumni that can come back and testify to the fact that they graduated and got a job in their field within six months and are making more than others in their field because of their DeVry degree." James R. Torrance made this statement of the 90% Representation in approximately December 2009 in his office at the Irving,

Texas campus, during a campus visit. James R. Torrance did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on DeVry's website as confirmed by James R. Torrance, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on posters and in brochures around campus, and in radio advertisements. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**93.** Plaintiff Lafayette Jeffery was at all relevant times a resident of Longview and Frisco, Texas. Plaintiff enrolled at DeVry's Keller Graduate School of Management in March 2010, paid tuition and associated costs of attending DeVry, and graduated in May 2012 with a Master of Information Systems Management. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2010 in television advertisements. Plaintiff recalls the message from the television advertisements that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff saw DeVry television advertisements several times before contacting DeVry about potentially becoming a student. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in

television advertisements. When Plaintiff contacted DeVry about potentially becoming a student, he spoke with Maurice Codgdell, an Advisor for DeVry, and Tamika Bonner, an Admissions Services Representative for DeVry. Both Maurice Cogdell and Tamika Bonner reiterated the 90% Representation, stating, "Ninety percent of our graduates are placed within six months of graduation." Both Maurice Cogdell and Tamika Bonner made this statement of the 90% Representation in approximately February 2010 over the telephone. Neither Maurice Codgdell nor Tamika Bonner in any way limited or qualified their statements. In reliance on the 90% Representation encountered in television advertisements as confirmed by Maurice Cogdell and Tamika Bonner, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to see the 90% Representation in DeVry television advertisements approximately once a week. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

94.     Plaintiff Khang Nguyen was at all relevant times a resident of Garland, Texas. Plaintiff enrolled at DeVry in October 2011, paid tuition and associated costs of attending DeVry, and graduated in June 2015 with a Bachelor of Science in Technical Management degree. Plaintiff attended classes at the Irving and Richardson, Texas campuses, and online. Plaintiff initially

encountered Defendants' Standard 90% Ad in approximately July 2011 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff next contacted DeVry about potentially becoming a student, and met with Christopher Miller, an Admissions Services Representative for DeVry. Christopher Miller reiterated the 90% Representation, stating, "Ninety percent of our graduates get a job in their field within six months." Christopher Miller made this statement of the 90% Representation in approximately August 2011, at the DeVry Richardson, Texas campus, in his office during a campus visit. Christopher Miller did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Christopher Miller, Plaintiff chose to enroll at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

95.     Plaintiff Teneika Tillis was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in November 2011, paid tuition and associated costs of attending DeVry, and graduated in September 2013 with a Bachelor of Science degree in Technical Management, and in August 2014 Master of Business Administration degree. Plaintiff attended

classes at the DeVry Houston campus on Equity Drive, the Pomona campus, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately August 2011 in television commercials. Plaintiff also recalls seeing the 90% Representation in approximately October 2011 on the DeVry website as she was researching colleges. Plaintiff recalls the message from the DeVry television commercials and website that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in the DeVry television commercials and on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student, and then met with Arthur Green, an Admissions Services Representative for DeVry. Arthur Green reiterated the 90% Representation, stating: "Within six months ninety percent of DeVry graduates obtain jobs in their field. In my past experience, once you finish your degree, you'll have no problem making the type of money you want to make." Arthur Green made this statement of the 90% Representation on or about November 1, 2011, in his office at the DeVry Houston, Texas campus on Equity Drive, during a campus visit. Arthur Green did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials and on the DeVry website as confirmed by Arthur Green, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials and radio advertisements. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in

their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

96.     Plaintiff April Wilson was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in March 2012, paid tuition and associated costs of attending DeVry, and graduated in March 2014 with an Associate degree in Health Information Technology, and in October 2016 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the Houston, Texas campus located on Equity Drive, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2012 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff next contacted DeVry about potentially becoming a student, and then met with Ruth Culverson, an Admissions Services Representative for DeVry. Ruth Culverson reiterated the 90% Representation, stating, "Ninety percent of our students get a job in their field of study within six months of graduating." Ruth Culverson made this statement of the 90% Representation approximately January 2012, in her office at the Houston campus located on Equity Drive, during a campus visit. Ruth Culverson did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Ruth Culverson, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials, from advisors Sonja Ross and Steven Rodriguez, from professor Deborah Butts, and in the Career Development class. Plaintiff also relied on this repetition of the 90%

Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

97.     Plaintiff Arkeiska Jefferson was at all relevant times a resident of Texarkana and Dallas, Texas. Plaintiff enrolled at DeVry in October 2008, paid tuition and associated costs of attending DeVry, and graduated in May 2012 with an Associate degree in Health Information Technology. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in 2008 during her telephone appointment with Eli Campbell, an Admissions Services Representative for DeVry. Eli Campbell spoke about the Standard 90% Ad, stating, "We do job placement, you are guaranteed to get a job after graduating. Ninety percent of our students get a job in their field within six months of graduation." Eli Campbell made this statement of the 90% Representation over the telephone in July or August of 2008. Eli Campbell did not in any way limit or qualify the statement. In reliance on the 90% Representation as made by Eli Campbell, Plaintiff chose to enroll at DeVry. Plaintiff also relied on the 90% Representation made by Eli Campbell in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1)

Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

      **98.** Plaintiff Lee Nicholson was at all relevant times a resident of Longview, Texas. Plaintiff enrolled at DeVry in August 2010, paid tuition and associated costs of attending DeVry, and graduated in January 2013 with an Associate degree in Web Design. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately June 2010 on the DeVry website, and shortly after in television commercials. Plaintiff recalls the message from the DeVry website and television commercials that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation on the DeVry website and in television commercials. When Plaintiff contacted DeVry about potentially becoming a student, he spoke with Tamika Bonner, an Admissions Services Representative for DeVry. Tamika Bonner reiterated the 90% Representation, stating, "Ninety percent of our graduates have a job in their field within six months after graduation." Tamika Bonner made this statement of the 90% Representation in approximately July 2010, over the telephone, during a scheduled appointment. Tamika Bonner did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website and in television commercials as confirmed by Tamika Bonner, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on the DeVry website, in television commercials, and on Facebook. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling

at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

99.     Plaintiff Stephanie Yell was at all relevant times a resident of Brady, Slaton and Wilson, Texas. Plaintiff enrolled at DeVry in January 2014, paid tuition and associated costs of attending DeVry, and graduated in December 2017 with a Bachelor of Science degree in Justice Administration. Plaintiff attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately November 2013 from an Education Connection representative (a service that connects potential students with participating schools). Plaintiff also looked at the DeVry website. Plaintiff recalls the message from the Education Connection representative and DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation as relayed from the Education Connection representative and on the DeVry website. When Plaintiff contacted DeVry about potentially becoming a student, she spoke with Maria Borja, an Admissions Services Representative for DeVry. Maria Borja reiterated the 90% Representation, stating, "We have a ninety percent placement rate of our students who graduate. Ninety percent of DeVry graduates receive jobs in their fields of study within six months. We are the only online school with a high graduation rate." Maria Borja also advised Plaintiff that the

income for DeVry graduates was higher than for any other inline college. Maria Borja made this statement of the 90% Representation in approximately December 2013, over the telephone, during a scheduled appointment. Maria Borja did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered from the Education Connection representative and DeVry website as confirmed by Maria Borja, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on the DeVry website, in television commercials, and from the DeVry representative assigned to her for the first six months of her program. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry on the DeVry website. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**100.** Plaintiff Tamar Rockmore was at all relevant times a resident of Brookshire, Dallas and Plano, Texas. Plaintiff enrolled at DeVry in July 2008, paid tuition and associated costs of attending DeVry, and graduated in June 2012 with a Bachelor of Science degree in Business Administration, and in June 2014 with a Master of Business Administration degree. Plaintiff

attended classes at the Houston campus on Equity Drive, the Irving campus, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately March 2008 from two DeVry recruiters who came to Royal High School in Brookshire, Texas. Plaintiff recalls the message from the recruiters' presentation that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on statements of the 90% Representation by the DeVry recruiters' in their presentation at her high school in approximately March 2008. Plaintiff next contacted DeVry about potentially becoming a student, and then met with Keisha Davis, an Admissions Services Representative for DeVry. Keisha Davis reiterated the 90% Representation, stating, "Employers normally hire DeVry graduates and our costs are cheaper than other universities. Ninety percent of our graduates get a job in their field within six months." Keisha Davis made this statement of the 90% Representation in approximately May 2008, in her office at the DeVry Houston campus on Equity Drive, during a campus visit. Keisha Davis did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered from the DeVry recruiters at Royal High School as confirmed by Keisha Davis, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in posters on the Houston campus on Equity Drive, in meetings with Jasmine Eaden a Student Services Representative for DeVry, and in a meeting with Robert Stewart an Advisor for DeVry, and from a professor. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted

graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

101.     Plaintiff Whitney Burton was at all relevant times a resident of Irving and Grand Prairie, Texas and San Diego, California and Plaintiff enrolled at DeVry in May 2013, paid tuition and associated costs of attending DeVry, and graduated in May 2015 with a Bachelor of Science degree in Technical Management, and in August 2016 with a Master's degree in Human Resource Management. Plaintiff attended classes at the Irving, Texas and San Diego, California campuses and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately March or April 2013 in a conversation with a DeVry recruiter at a job fair in Mission Valley, California. Plaintiff recalls the message from the DeVry recruiter that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the Standard 90% Ad in her conversation with the DeVry recruiter. Plaintiff contacted DeVry about potentially becoming a student, and then met with a female DeVry representative. The female DeVry Representative reiterated the 90% representation, stating, "Ninety percent of our graduates are employed in their field within six months after graduation." The female DeVry representative made this statement of the 90% Representation in approximately April 2013, in her office at the DeVry San Diego, California campus, during a campus visit. In reliance on the 90% Representation encountered in the conversation with a DeVry recruiter at a job fair as confirmed by the female DeVry representative that she met with, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in Facebook advertisements, verbally from professors, in television commercials

and during her Career Development course. Plaintiff also relied on this repetition of the 90%
Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a
student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field
within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she
had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who
continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who
were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully
attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry
graduates who, at or near the time they graduated, found jobs that could be reasonably considered
"in their field" is significantly smaller than 90%.

     **102.** Plaintiff Michelle Donahue was at all relevant times a resident of Redondo Beach,
California and Pasadena, Houston and Highlands, Texas. Plaintiff enrolled at DeVry in June 2009,
paid tuition and associated costs of attending DeVry, and graduated in June 2012 with a Bachelor
of Science degree in Health Services Management, and in October 2015 with a Master of Business
Administration degree. Plaintiff attended classes online. Plaintiff initially encountered
Defendants' Standard 90% Ad in approximately December 2008 in television commercials and on
the DeVry website. Plaintiff recalls the message from the television commercials and website that
90% of DeVry graduates were employed in their field of study within six months of graduation.
Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in
television commercials and on the DeVry website. Plaintiff contacted DeVry about potentially
becoming a student, and then met with Ruzanna Mikayelyan, an Advisor for DeVry. Ruzanna
Mikayelyan reiterated the 90% Representation, stating, "DeVry has the benefits of many campuses
and the online format. We have a Career Services department with an online portal to access job

banks and see which companies partner with us and recruit DeVry graduates. Ninety percent of our graduates get a job in their field within six months of graduation." Ruzanna Mikayelyan made this statement of the 90% Representation on or about May 13, 2009, in her office at the Sherman Oaks, California campus, in in a 2:00 PM meeting during a campus visit. Ruzanna Mikayelyan did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in television commercials and on the DeVry website as confirmed by Ruzanna Mikayelyan, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation on the Career Services website, from Riddhima Bhasin an Academic Services Representative for DeVry, and from Elizabeth Saryan a DeVry representative. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**103.** Plaintiff Billy Morris was at all relevant times a resident of San Antonio, Texas. Plaintiff enrolled at DeVry in July 2014, paid tuition and associated costs of attending DeVry, and graduated in April 2017 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry San Antonio campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately May or June 2014 in television advertisements.

Plaintiff recalls the message from the television advertisements that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television advertisements. When Plaintiff contacted DeVry about potentially becoming a student, he spoke with John Zendejas, an Advisor for DeVry. John Zendejas reiterated the 90% Representation on that telephone call, stating: "DeVry students graduate quicker, ninety percent get a job in their field of study within six months of graduation, and also have a higher income than graduates of other schools." Next Plaintiff met with John Zendejas and he again reiterated the 90% Representation. John Zendejas made this statement of the 90% Representation twice in approximately May or June 2014, first during the telephone conversation and then in the on-campus meeting. John Zendejas did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in television advertisements as confirmed by John Zendejas, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in television advertisements, on posters around campus, and in the Career Development class. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry in conversations with John Zendejas that took place at the San Antonio campus. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3)

Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

104. Plaintiff Brianda Aguilar was at all relevant times a resident of Austin, Texas. Plaintiff enrolled at DeVry in August 2014, paid tuition and associated costs of attending DeVry, and graduated in May 2016 with a Bachelor of Science degree in Business Management. Plaintiff attended classes at the Austin campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately July 2014 in television commercials. Plaintiff recalls the message from the television commercials that 90% of DeVry graduates were employed in their field of study within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student, and then met with George Castro, an Admissions Services Representative for DeVry. George Castro reiterated the 90% representation, stating, "We will help you have a job after graduation. DeVry graduates have a ninety percent employment rate in their field of study within six month of graduation." George Castro made this statement of the 90% Representation approximately August 2014, in his office at the DeVry Austin campus, during a campus visit. George Castro did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed by George Castro, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in television commercials, on the DeVry website, from DeVry advisors and counselors, and in the Career Development class. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income

Ad while a student at DeVry in television commercials and on the DeVry website. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

105.    Plaintiff Michelle Garrett was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in October 2009, paid tuition and associated costs of attending DeVry, and graduated in June 2014 with a Bachelor of Science degree in Technical Management, and in February 2018 with a Master of Business Administration degree. Plaintiff attended classes at the Houston campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately 2009 in television commercials. Plaintiff recalls the message from the television commercials that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff recalls encountering the 90% Representation in television commercials on a consistent basis. In July 2009, Plaintiff attended the Jesse H. Jones Festival in Houston, Texas where a female DeVry recruiter was running an information booth. The recruiter handed Plaintiff a brochure about DeVry, which contained the message that 90% of DeVry graduates find a job in their field within six months of graduation. The recruiter also took down Plaintiff's contact information. Evelyn Walega, a DeVry Admissions Services Representative, began to contact Plaintiff on the phone, and invited her to the campus to discuss the possibility of

attending DeVry. Plaintiff chose to accept Ms. Walega's invitation to come to campus to discuss becoming a student at DeVry based on the 90% Representation in television commercials and the brochure she was given by a recruiter at the Jesse H. Jones Festival. Plaintiff met with Evelyn Walega, who reiterated the 90% Representation, stating, "DeVry has a strong alumni program, DeVry is a good school and graduates have many advantages. Ninety percent have a job in six months. We'll help you get a job." Evelyn Walega made this statement of the 90% Representation approximately October 10, 2009 in her office at the Houston campus on equity Drive, during the campus visit. Evelyn Walega did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials and brochure as confirmed by Evelyn Walega, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in television commercials and from in-person communications with Evelyn Walega. Plaintiff relied on this repetition of the 90% Representation in television commercials and from Evelyn Walega in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**106.** Plaintiff Mitchell Garrett was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in October 2010, paid tuition and associated costs of attending DeVry,

and graduated in April 2014 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the Houston campus on Equity Drive and online. Plaintiff was encouraged by his wife, Michelle Garrett, to look into enrolling at DeVry after she was recruited to become a student at DeVry based on the 90% Representation. When Plaintiff contacted DeVry about potentially becoming a student, he spoke with Evelyn Walega, an Admissions Services Representative for DeVry, who invited Plaintiff to the campus to discuss the possibility of enrolling at DeVry. During their meeting, Ms. Walega gave Plaintiff a presentation about DeVry and told Plaintiff that, "Ninety percent of our students get a job in their field within six months of graduation." Ms. Walega made this statement of the 90% Representation on September 18, 2010, at the Houston campus on Equity Drive, in her office, during a campus visit. Evelyn Walega did not in any way limit or qualify the statement. In reliance on the 90% Representation as made by Evelyn Walega, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on television monitors on the first floor common area at the Houston campus on Equity Drive. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**107.** Plaintiff Kendric Murray was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in August 2012, paid tuition and associated costs of attending DeVry, and graduated in July 2015 with an Associate degree in Network Systems Administration. Plaintiff attended classes at the Houston campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately June 2012 in a television commercial. Plaintiff recalls the message from the television commercial that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry television commercials. Plaintiff contacted DeVry about potentially becoming a student and spoke with a recruiter. The DeVry recruiter reiterated the 90% Representation. Plaintiff next met with Crystal Norman, an Admissions Services Representative for DeVry. Crystal Norman also reiterated the 90% Representation, stating, "DeVry graduates have a ninety percent employment rate in their field of study within six months of graduation." Crystal Norman made this statement of the 90% Representation in approximately July 2012, at the DeVry Houston campus on Equity Drive, in her office, during a campus visit. Crystal Norman did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in DeVry television commercials as confirmed by Crystal Norman, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in posters around the Houston campus on Equity Drive, in television commercials, and in his Career Development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry in television commercials and in his Career Development course. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry.

Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

108.    Plaintiff Nereida Pita was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in May 2008, paid tuition and associated costs of attending DeVry, and graduated in February 2012 with a Bachelor's degree in Business Administration. Plaintiff attended classes at the Main Houston campus, the Houston Galleria campus, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately April or March 2008 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff called DeVry that day and spoke with an advisor who reiterated the 90% Representation, and set up an appointment to visit the Main Houston campus. Plaintiff then met with Margo Emery, an Advisor for DeVry. Margo Emery reiterated the 90% Representation, stating, "DeVry students are more prone to get hired. DeVry graduates have a ninety percent employment rate in their field of study within six months of graduation." Margo Emory also told Plaintiff that DeVry graduates earn higher incomes than graduates from other schools. Margo Emery made this statement of the 90% Representation in approximately March or April 2008, at the Main Houston campus, during

a campus visit. Margo Emery did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Margo Emery, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on posters around the Main Houston campus, in brochures around the Main Houston campus, in DeVry television advertisements, from Margo Emery, from Ruth Culverson a Financial Counselor for DeVry, and from professors in the Career Development class. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

109.     Plaintiff Eddie Silas was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in June 2010, paid tuition and associated costs of attending DeVry, and graduated in June 2014 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the DeVry Houston campuses on Equity Drive and at the Galleria, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately December 2009 in a brochure given to him by a DeVry recruiter that came to Humble High School, in Humble Texas. Plaintiff recalls the message from the brochure that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at

DeVry based on the 90% Representation in the brochure. Plaintiff contacted DeVry about potentially becoming a student and met with Annie Wade, an Advisor for DeVry. Annie Wade reiterated the 90% Representation, stating, "Ninety percent of DeVry graduates get a job in their field within six months of graduation. Upon graduation, you will be offered a service called career services. We have an entire network that will help you find a job." Annie Wade made this statement of the 90% Representation in approximately December 2009, in her office at the Houston campus on Equity Drive, during a campus visit. Annie Wade did not in any way limit or qualify the statement. In reliance on the 90% Representation in the DeVry brochure as confirmed by Annie Wade, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in classrooms, bulletin boards, television monitors on the campuses, on screensavers and desktop backgrounds on computers, in posters on the walls around the Houston campuses, in meetings with Kelley Mauk a Student Success Coach for DeVry, and from Adriana Meade a Student Success Coach for DeVry who taught Plaintiff's Career Development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff also encountered Defendants' Higher Income Ad while a student at DeVry in classrooms, on bulletin boards, on television monitors on the campuses, on screensavers and desktop backgrounds on computers, in posters on the walls around the Houston campuses, in meetings with Kelley Mauk a Student Success Coach for DeVry, and from Adriana Meade a Student Success Coach for DeVry who taught Plaintiff's Career Development course. Plaintiff also relied on the Higher Income Ad in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants

counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

110. Plaintiff Tuwandra Harris was at all relevant times a resident of Tomball, Texas. Plaintiff enrolled at DeVry in January 2008, paid tuition and associated costs of attending DeVry, and graduated in October 2011 with an Associate degree in Health Information Technology. Plaintiff attended classes at the DeVry Houston campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately October 2008 through a DeVry recruiter that was visiting Cypress-Fairbanks Independent School District, her workplace at the time. Plaintiff recalls the DeVry recruiter stating, "Ninety percent of DeVry graduates are employed in their field within six months of graduation." Plaintiff chose to look into becoming a student at DeVry based on hearing this statement of the 90% Representation from the DeVry recruiter. Plaintiff contacted DeVry about potentially becoming a student, and then met with Rose Stephens, an Advisor for DeVry. Rose Stephens reiterated the 90% Representation, stating, "Ninety percent of our graduates get a job in their field of study within six months of graduation." Rose Stephens made this statement of the 90% Representation in approximately January 2008, at the DeVry Houston campus on Equity Drive, in her office, during a campus visit. Rose Stephens did not in any way limit or qualify the statement. In reliance on the 90% Representation heard from the DeVry recruiter as confirmed by Rose Stephens, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in flyers and posters around campus, and from Rose Stephens and Professor Debora Butts. Plaintiff also relied on this

repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

111. Plaintiff Linda Hair was at all relevant times a resident of Houston, Texas. Plaintiff enrolled at DeVry in the spring of 2010, paid tuition and associated costs of attending DeVry, and graduated in February 2012 with an Associate degree in Health Information Technology, in October 2013 with a Bachelor's degree in Technical Management, and in February 2016 with a Master's degree in Education from DeVry's Keller Graduate School of Management. Plaintiff attended classes at the Main Houston campus on Equity Drive and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately January 2010 through a DeVry recruiter. The DeVry recruiter was at a career fair held Cypress Fairbanks Independent School District, where Plaintiff worked at the time. The recruiter also gave Plaintiff a brochure, and took her contact information. Plaintiff also saw DeVry television commercials with the 90% Representation around this time. Plaintiff recalls the message from the DeVry recruiter, the brochure, and the television commercials, that 90% of DeVry graduates were employed in their field of study within six months of graduation. An appointment was scheduled for Plaintiff at the Houston Main Campus on Equity Drive, and she met with Rose Stephens, an Advisor for DeVry.

Rose Stephens reiterated the 90% Representation, stating: "DeVry has a Career Services Department who sign you up for jobs when you graduate, as well as Career Fairs that ensure you get a job within six months. DeVry graduates have a ninety percent employment rate in their field within in six months of graduation." Rose Stephens made this statement of the 90% Representation in approximately January 2010, at the Houston Main campus on Equity Drive during a campus visit. Rose Stephens did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered from the DeVry recruiter, in the DeVry brochure and in DeVry television commercials, as confirmed by Rose Stephens, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation on posters around campus, from faculty members in the Career Development class, in DeVry television commercials, from Rose Stephens, from Darlene Humphrey an Advisor for DeVry, and from a DeVry Dean who talked about the 90% Representation at the Dean's list celebration at the Houston Main campus on Equity Drive. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

112. Plaintiff Corey Carroll was at all relevant times a resident of Houston, Texas.

Plaintiff enrolled at DeVry in September 2009, paid tuition and associated costs of attending DeVry, and graduated in August 2010 with a Bachelor of Science degree in Technical Management, in December 2011 with a Master of Business Administration degree, and in June 2012 with a Master of Project Management degree. Plaintiff attended classes at the Houston Equity Drive, Galleria, and Sugar Land, Texas campuses, and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately May 2009 in a LinkedIn advertisement. Plaintiff recalls the message from the LinkedIn advertisement that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look into becoming a student at DeVry based on seeing the 90% Representation in DeVry advertisements on LinkedIn. Plaintiff contacted DeVry about potentially becoming a student, and then met with Rose Stephens, an Admission Services Representative for DeVry. Rose Stephens reiterated the 90% Representation, stating, "Career services has contacts with companies that we will match you up with. Based on our curriculum and hands-on nature of classes, it will make you more valuable to companies. Ninety percent of our graduates get a job in their field within six months." Rose Stephens made this statement of the 90% Representation in approximately June 2009, in her office at the Houston, Texas campus on Equity Drive, during a campus visit. Rose Stephens did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered in the LinkedIn advertisement as confirmed by Rose Stephens, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to encounter the 90% Representation in LinkedIn advertisements, as well as in television commercials. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order

to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

113. Plaintiff Joshua Palczcynsky was at all relevant times a resident of Garland, Texas. Plaintiff enrolled at DeVry in the spring of 2008, paid tuition and associated costs of attending DeVry, and graduated in June 2011 with an Associate degree in Electronic and Computer Technology. Plaintiff attended classes at the Irving, Texas campus and online. Plaintiff became interested in DeVry in approximately January 2008 when a friend who was already attending DeVry told him that ninety percent of DeVry graduates get a job within six months of graduation. Plaintiff initially encountered the Standard 90% Ad in approximately January 2008 when he checked out the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student, and met with Tamara Bush, an Admissions Services Representative for DeVry. Tamara Bush reiterated the 90% Representation, stating, "DeVry graduates have a ninety percent employment rate in their field of study within six months of graduation." Tamara Bush made this statement of the 90% Representation in approximately January of 2008, at the Irving campus, during a campus visit. Tamara Bush also mentioned that Plaintiff would be making "way more money" after he graduated from DeVry. Tamara Bush did not in any way limit or qualify the statement. Plaintiff also met

with P. Bivins, an Advisor for DeVry, who reiterated the 90% Representation. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Tamara Bush, as well as P. Bivins, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation from Advisor Bivins, in DeVry television advertisements, on the DeVry website, and from faculty members in the Career Development class. Plaintiff also relied on this repetition of the 90% Representation, confirming what he was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, his field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if he had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

**114.** Plaintiff Marquita Holloman-Herod was at all relevant times a resident of Irving, Texas. Plaintiff enrolled at DeVry in July 2011, paid tuition and associated costs of attending DeVry, and graduated in October 2012 with a Bachelor of Science degree in Technical Management. Plaintiff attended classes at the Irving, Texas campus and online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately June 2011 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. Plaintiff contacted DeVry about potentially becoming a student, and then met with Jermaine Smith, an Advisor for

DeVry. Jermaine Smith reiterated the 90% Representation, stating, "Once you graduate, you can find a job in the field that you are in. DeVry graduates have a ninety percent employment rate in their field of study within six months of graduation." Jermaine Smith made this statement of the 90% Representation approximately June 2011, in his office at the Irving, Texas campus, during a campus visit. Jermaine Smith did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Jermaine Smith, Plaintiff chose to enroll at DeVry. While a student at DeVry, Plaintiff continued to frequently encounter the 90% Representation in posters around the Irving campus, on the DeVry website, through email communications from Allison Havard a Student Success Coach for DeVry, through David Dedrick a DeVry Academic Advisor, and through the professor and posters in the classroom during her career development course. Plaintiff also relied on this repetition of the 90% Representation, confirming what she was told before enrolling at DeVry, in choosing to remain a student at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

    **115.**    Plaintiff Rebecca Miller was at all relevant times a resident of Freeport, Texas. Plaintiff enrolled at DeVry in April 2008, paid tuition and associated costs of attending DeVry, and graduated in October 2010 with an Associate degree in Medical Billing and Coding. Plaintiff

attended classes online. Plaintiff initially encountered Defendants' Standard 90% Ad in approximately March 2008 on the DeVry website. Plaintiff recalls the message from the DeVry website that 90% of DeVry graduates were employed in their field within six months of graduation. Plaintiff chose to look further into becoming a student at DeVry based on the 90% Representation on the DeVry website. When Plaintiff contacted DeVry about potentially becoming a student, she spoke with Kristy Osborne, an Admissions Services Representative for DeVry. Kristy Osborne reiterated the 90% Representation, stating, "You are on a fast track. You can do it online, which is perfect for having kids. DeVry graduates have a ninety percent employment rate in their field of study within six months of graduation; there is nothing to worry about." Kristy Osborne made this statement of the 90% Representation in approximately March 2008, over the telephone during a scheduled appointment. Kristy Osborne did not in any way limit or qualify the statement. In reliance on the 90% Representation encountered on the DeVry website as confirmed by Kristy Osborne, Plaintiff chose to enroll at DeVry. Plaintiff actively sought employment in, and did not obtain a job in, her field within six months of graduation from DeVry. Plaintiff would not have enrolled at DeVry if she had known that in order to create the Standard 90% Ad: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry; (2) Defendants counted graduates who were not employed in their fields of study; (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation; and (4) as a result, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could be reasonably considered "in their field" is significantly smaller than 90%.

116.    Defendant Adtalem Education Group, Inc. ("Adtalem") is a publicly traded Delaware corporation with its principle place of business at 3005 Highland Parkway, Downers Grove, Illinois 60515.  Adtalem was formerly known as DeVry Education Group, Inc., which was

formerly known as DeVry, Inc. Adtalem transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, with respect to the acts and practices of DeVry University, Inc. identified below, Adtalem dominated or controlled those acts and practices, knew of or approved those acts and practices, and/or benefitted from those acts and practices. Adtalem disseminated and/or controlled dissemination of the challenged advertisements.

117. Defendant DeVry University, Inc., including its Keller Graduate School of Management ("DeVry"), is a Delaware corporation that is a subsidiary of Adtalem, with its principle place of business at 3005 Highland Parkway, Downers Grove, Illinois 60515. DeVry transacts or has transacted business in this district and throughout the United States. At all times material to this Complaint, acting alone or in concert with others, DeVry has advertised, marketed, distributed, or sold educational products and services to consumers, throughout the United States, including to Plaintiffs in the state of Texas. Adtalem and DeVry are collectively referred to as "Defendants" in this Complaint.

## FACTS COMMON TO CAUSES OF ACTION

118. To induce prospective students to purchase DeVry educational products and services, Defendants have disseminated, or caused to be disseminated, advertisements for their educational products and services in various formats, including but not limited to, television advertisements, websites, YouTube videos, brochures, radio advertisements, social media platforms, print advertisements and through in-person representations made by DeVry employees, agents and/or representatives.

119. Since at least 2008, Defendants' advertisements have been widely disseminated

throughout the United States including within the state of Texas and this federal district.[2]

120.    Defendants have widely disseminated advertisements and claims containing the same or substantially similar statements and depictions pertaining to the "Standard 90% Ad" and the "Higher Income Ad" to induce prospective students to purchase DeVry educational products and services.

121.    Plaintiffs were persuaded to purchase DeVry's educational products and services, took classes at Defendants' locations in Texas, and some attended DeVry locations within the jurisdiction of the United States District Court for the Western District of Texas, San Antonio Division and online.

122.    Adtalem has at all relevant times operated DeVry, including its Keller Graduate School of Management, a private, for-profit postsecondary educational institution with campuses throughout the United States, and at times has had as many as 96 campuses. DeVry also offered online classes and degree programs.

123.    Annual new-student enrollment between 2008 and 2014 ranged from approximately 29,000 to 49,000. More than 870,000 students have reportedly enrolled at DeVry since 1975.

124.    Adtalem's total gross revenues between 2008 and mid-2015 reportedly exceeded $14.5 billion. DeVry's gross revenues between 2008 and mid-2015 exceeded $8.6 billion.

125.    In each fiscal year between and including 2011 and 2014, DeVry spent over $135 million on advertising, marketing, or other promotion of its educational products and services.

---

[2] Upon information and belief, based on the Department of Education's Notice of Intent to Limit, sent to DeVry University on January 27, 2016 after an extensive investigation, "The specific representation that forms the basis of this action was highlighted in DeVry's *We Major in Careers* campaign . . . which reflected more than a year's worth of in-depth consumer, marketplace, and brand research by DeVry, represented a conscious decision by DeVry to make certain representations to students and prospective students for marketing and recruitment purposes." The Department further noted that the campaign was "developed by Chicago-based global brand powerhouse The Marketing Store."

**126.** On July 30, 2012 the U.S. Senate issued a report following its investigation of for-profit colleges and universities, titled "For Profit Higher Education: The Failure to Safeguard the Federal Investment and Ensure Student Success"[3] (the "2012 Senate Report").

**127.** According to the 2012 Senate Report, in 2009 DeVry allocated 19.7% of its total revenue, or $288 million, to marketing. The report noted that, "DeVry spent $2,989 per student on instruction in 2009, compared to $4,054 per student on marketing."

**128.** The 2012 Senate Report also found that, "[w]hile for-profit education companies employ large numbers of recruiters to enroll new students, the same companies frequently employ far less staff to provide tutoring, remedial services or career counseling and placement. In 2010, with 128,676 students, DeVry employed 2,350 recruiters, 231 career services employees and 1,438 student services employees. That means that each career counselor was responsible for 557 students and each student staffer was responsible for 89 students, but the company employed one recruiter for every 52 students."

**129.** According to the 2012 Senate Report, "Although titled 'enrollment advisors' or 'enrollment counselors,' an internal document makes the job function of these DeVry employees clear: 'This is a sales position'" finding that "At DeVry recruiters are encouraged to consider 'how else do you think you can create urgency with a student?' Recruiting materials counsel recruiters to use tactics like 'the Tie Down.' The purpose of such a technique is 'to get the prospect to say yes as many times as you possibly can throughout the call so that when you ask for the final yes it almost seems ridiculous that they would say no.'" The report further noted that "One pervasive sales technique [at DeVry] is to manipulate a prospective student's emotions as a strategy to sell an enrollment contract."

---

[3] The full congressional report can be accessed at https://www.help.senate.gov/imo/media/for_profit_report/PartI.pdf

**130.** The 2012 Senate Report also found that in 2007 (the year before DeVry launched its aggressive and deceptive marketing campaign highlighting its Standard 90% Ad), DeVry generated profits of $102.3 million; by 2010 (two years into its aggressive and deceptive marketing campaign) profits had quadrupled to $410.9 million.

**131.** Defendants misrepresented the benefits of obtaining a degree from DeVry in advertising, marketing, or other promotion of educational products and services. The advertising, marketing, or other promotion included statements such as "90% of all graduates in the active job market had careers in their fields within six months" and "90% of our **grads** actively seeking employment **had careers** in 6 months." Defendants also targeted Spanish language markets with similar statements, such as "el 90% de nuestros **graduados** que buscaron empleo de forma activa **ejercían su carrera** en 6 meses."

**132.** Although Defendants slightly varied the wording of the 90% Representation in the varying iterations of the ad over the course of its 8-year run, the delivered message was consistent—that a very high percentage (90%) of DeVry graduates obtained a job in their field of study within six months of graduation. These representations included slight variations such as:

    a. "As a result of obtaining a DeVry degree, 90% of the people who have graduated from DeVry since 1975 and were actively seeking employment started a job in their field of study within 6 months of graduation."[4]

    b. "As a result of obtaining a DeVry degree, the vast majority of the 265, 869 undergraduate students who have graduated from DeVry since 1975 started a job in their field of study within 6 months of graduation."[5]

    c. "As a result of obtaining a DeVry degree, 90% of the people who graduated from DeVry in 2012 and were actively seeking employment

---

[4] Source: Federal Trade Commission Civil Investigative Demand to DeVry University, issued May 6, 2016.
[5] *Id.*

started a job in their field of study within 6 months of graduation."
(Television commercial entitled "Graduation Present"; Television
commercial titled "This is the Guy Graduating")[6]

   d. "In 2012, 90% of DeVry grads actively seeking employment had careers
      in their field of study within six months of graduation."[7]

   e. "More than 90% of DeVry University graduates who actively pursue
      employment hold positions in their chosen field within 6 months of
      graduation. This means that students earn more than a degree at DeVry
      University."[8]

   f. "90% of our grads actively seeking employment had careers in 6
      months."[9]

   g. "More than 90% of DeVry graduates system-wide in the active job market
      are employed in their field of study within 6 months of graduation."[10]

**133.** While the wording of DeVry's false and deceptive 90% Ads may have varied slightly throughout the course of the 8-year *We Major in Careers* marketing campaign, prospective students received a consistent message—one which touted DeVry's job placement success rate (90%) to induce prospective students to enroll.

**134.** The 90% Representations were made through various means such as television commercials, Internet webpages, YouTube, brochures, print advertisements, emails, radio ads, social media platforms and in person by Defendants' employees, agents and/or representatives.

**135.** Upon information and belief, based on Adtalem's 10K filings with the SEC, as part of the application process at DeVry, a pre-enrollment meeting was required, initiated "through phone calls, mailings, and invitations to site-based workshops or other events to improve the rate at which such applicants begin their program of study." Prospective students would meet with an

---

[6] *Id.*
[7] *Id.*
[8] *Id.*
[9] *Id*.
[10] *Id.*

admissions advisor or representative, who touted the 90% Representation as a sales tactic, in an effort to induce prospective students to enroll at DeVry. *See* Defendant Adtalem's Form 10K filing with the SEC, dated June 30, 2012, at 18, available at: https://seekingalpha.com/filing/902334.

136.    Consistent with the sales formula described above, every Plaintiff has alleged some encounter with Defendants' Standard 90% Ad followed by a meeting either in person or by telephone with a DeVry employee, agent or representative, typically understood to be an enrollment advisor, counselor, or admissions services representative, who reiterated a variation of the message of the Standard 90% Ad that 90% of DeVry University graduates actively obtained careers in their field within six months of graduation. Although the overwhelming majority of Plaintiffs have identified the specific employee, agent or representative by name, for the purpose of satisfying the pleading requirements of *Bell Atlantic Corp. v. Twombly*, the "who" alleged by Plaintiffs is the Defendants acting through the employees, agents, and/or representatives of DeVry. *See generally Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

137.    Defendants also represented that DeVry graduates would earn more money, as compared to the graduates of other colleges and universities, with statements such as "An education that pays" and "One year after graduation, DeVry University grads report earning 15% more than median earnings reported by all other bachelor's degree graduates."

## A. Defendant Adtalem Controlled, Approved, Ratified and Benefitted From DeVry's False and Deceptive Marketing Campaign

*i. The Role of Adtalem Executives*

138.    At all relevant times, Defendant Adtalem dominated or controlled the acts and practices of its subsidiary, DeVry University, including the implementation of the *We Major In Careers* marketing campaign, highlighting its false and deceptive 90% Representation and Higher Earnings Representation; knew of or approved those acts and practices; and/or benefitted from those acts and practices. As shown below, there is evidence that Defendant Adtalem disseminated and/or controlled the dissemination of the challenged advertisements and had knowledge of their falsity.

**139.** Upon information and belief, based on information[11] uncovered by Plaintiffs' counsel in *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al.*,Third Amended Complaint [Doc. 84] Case No. 16-cv-05198 (N.D.Ill Jan. 29, 2018), high-level corporate officers and executives of Defendant Adtalem Global Education, Inc.[12] knew the 90% Representation was false and/or made with reckless disregard for the truth and nonetheless continued to exploit DeVry's false and deceptive *We Major in Careers* marketing campaign, highlighting its false 90% Representation, as a deliberate strategy to boost student enrollment and maximize profits for Adtalem's shareholders.[13]

**140.** It is important to note that *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al*. was reported as settled on May 28, 2019, after Defendants' 12(b)(6) motion to dismiss was denied—where the court held that Plaintiffs adequately pleaded claims pertaining to the falsity of DeVry's 90% Ad in the context of securities fraud allegations governed by a heighted pleading standard that requires a showing of scienter, a standard more onerous than the plausibility standard applicable to this Complaint. The evidentiary support presented by Plaintiffs in that case, which the court held was "rendered in sufficient detail to afford them a high degree of reliability" and adequately "alleged widespread and pervasive inflation of job placement rates . . . and numerous serious government investigations into that problem" are particularly

---

[11] The information uncovered by Plaintiffs' counsel in *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al*. was obtained after an extensive investigation and review of relevant FTC and DOE documents and statements from 20 confidential witnesses—former DeVry employees who provided confidential statements describing how, during their tenure, the Company gamed the misleading DeVry University graduate job placement and salary statistics in order to boost student enrollment and maximize profits. After assessing this information, the court denied Defendants' 12(b)(6) motion to dismiss, holding that Plaintiffs adequately pleaded claims pertaining to the falsity of DeVry's 90% Ad, noting this evidence was "rendered in sufficient detail to afford them a high degree of reliability" and adequately "alleged widespread and pervasive inflation of job placement rates.

[12] Only four months after DeVry Education Group, Inc. settled with the FTC and DOE, the company announced it would change its name to Adtalem Global Education, Inc. in May 2017. Although the Company's stated purpose for the name change was to highlight its broadened, "education offerings and geographic reach," media outlets connected the name change to the Company's alleged manipulation of its job statistics given the proximity in time to DeVry's settlement with the FTC regarding allegations that the Company misled tens of thousands of students about their post-graduation job and income prospects. *See, e.g.*, http://www.chicagotribune.com/business/ct-devry-name-change-adtalem-20170524-story.html;https://www.bizjournals.com/chicago/news/2017/05/24/devry-university-parent companychanging-its-name.html

[13] At all relevant times, DeVry's common stock traded on the New York Stock Exchange under the ticker symbol "DV".

enlightening in our context. *See Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al*., Order on Motion to Dismiss [Doc. 113], Case No. 16-cv-05198 (N.D.Ill Dec. 29, 2018).

**141.** Daniel Hamburger ("Hamburger") served at all relevant times as President and Chief Executive Officer of Adtalem Global Education, Inc. (formerly DeVry Education Group, Inc.), ultimately leaving those roles on May 24, 2016.

**142.** Daniel J.Wiggins ("Wiggins") served as Adtalem Global Education, Inc. (formerly DeVry Education Group, Inc.) Senior Vice President and Chief Financial Officer from January 3, 2012 to May 31, 2016. Wiggins also served as Treasurer from January 3, 2012 until early 2015.

**143.** Patrick J. Unzicker ("Unzicker") served as Adtalem Global Education, Inc. (formerly DeVry Education Group, Inc.) Vice President, Finance and Chief Accounting Officer from March 1, 2012 to May 31, 2016. In March 2015, Unzicker assumed the role of Treasurer and since May 31, 2016 has also served as the Company's Senior Vice President, Chief Financial Officer and Treasurer.

**144.** Richard M. Gunst ("Gunst") served as Adtalem Global Education, Inc. (formerly DeVry Education Group, Inc.) Chief Financial Officer from 2006 until January 2, 2012.

**145.** Numerous facts demonstrate that Defendant Adtalem executives Hamburger, Wiggins, Unzicker, and Gunst knew, or were at least severely reckless in not knowing, that DeVry's statements with respect to the graduate employment statistics were false and misleading when made. Hamburger, Wiggins, Unzicker, and Gunst, because of their high-ranking positions and direct involvement in the everyday business of Defendant Adtalem, directly participated in the management of Adtalem's operations, including its public reporting functions, had the ability to, and did control, Adtalem's conduct, and were privy to confidential information concerning DeVry and its business, operations and financial statements.

**146.** Upon information and belief, based on information[14] uncovered by Plaintiffs'

---

[14] The information uncovered by Plaintiffs' counsel in *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al*. was obtained after an extensive investigation and review of relevant FTC and DOE

counsel in *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al*., these Adtalem executives were directly involved in controlling the content of, and in drafting, reviewing, publishing and/or disseminating the false and misleading statements and information alleged herein, in an effort to boost student enrollment and maximize profits, where the false and deceptive 90% Representation and Higher Earnings Representation were used not only in advertisements to attract students, but also highlighted by these executives in SEC filings and other investor-oriented Company publications[15], for the benefit of Defendant Adtalem.[16]

147.  Moreover, upon information and belief, based on based on information[17] uncovered by Plaintiffs' counsel in *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al*., these Adtalem executives were aware of, or recklessly disregarded, the false and misleading statements and omissions, and approved or ratified these misstatements and omissions.

148.  In a joint Rule 26(f) report filed by the parties in the FTC's enforcement action on June 7, 2016, DeVry included both Adtalem CFO Gunst and David Pauldine, who was Executive Vice President of Marketing and the President of DeVry University and who reported directly to Adtalem President and CEO Hamburger, in a list of percipient witnesses likely to have

documents and statements from 20 confidential witnesses—former DeVry employees who provided confidential statements describing how, during their tenure, the Company gamed the misleading DeVry University graduate job placement and salary statistics in order to boost student enrollment and maximize profits. After assessing this information, the court denied Defendants' 12(b)(6) motion to dismiss, holding that Plaintiffs adequately pleaded claims pertaining to the falsity of DeVry's 90% Ad, noting this evidence was "rendered in sufficient detail to afford them a high degree of reliability" and adequately "alleged widespread and pervasive inflation of job placement rates.
[15] Such filings and publications by Adtalem executives, containing DeVry's false and deceptive 90% Representation and Higher Earnings Representation include Forms 10-Q filed with the SEC between 2011 to 2015, Forms 10K filed with the SEC between 2011 to 2015, Adtalem Annual Reports issued between at least 2012 to 2015, press releases and communications with securities analysts.
[16] For instance, one securities analyst wrote, "'Due to DV undergrad's long history of >$40K starting salaries, 90% placement rates, and relatively low regulatory issues- we think it[']s significantly undervalued within DV overall.' (Deutsche Bank Markets Research, June 6, 2012)." *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al*., Third Amended Complaint at 42 [Doc. 84], Case No. 16-cv-05198 (N.D.Ill Dec. 29, 2018).
[17] The information uncovered by Plaintiffs' counsel in *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al*. was obtained after an extensive investigation and review of relevant FTC and DOE documents and statements from 20 confidential witnesses—former DeVry employees who provided confidential statements describing how, during their tenure, the Company gamed the misleading DeVry University graduate job placement and salary statistics in order to boost student enrollment and maximize profits. After assessing this information, the court denied Defendants' 12(b)(6) motion to dismiss, holding that Plaintiffs adequately pleaded claims pertaining to the falsity of DeVry's 90% Ad, noting this evidence was "rendered in sufficient detail to afford them a high degree of reliability" and adequately "alleged widespread and pervasive inflation of job placement rates.

discoverable information. The inclusion of Gunst and Pauldine in the list of percipient witnesses in that litigation indicates that these individuals were knowledgeable regarding how the Company generated the DeVry University graduate employment and salary statistics.

*ii. Internal Documents Produced by the Government Show Defendant Adtalem Had Knowledge the Statistics Were False*

**149**. Internal documents produced by the FTC to Plaintiffs' counsel in the present action, in response to a FOIA request, show that the government's investigation specifically sought to uncover what Adtalem's corporate executives knew about DeVry's 90% and salary misrepresentations. These internal documents included charts reflecting the scope of discovery that DeVry's attorneys agreed to produce to the FTC. Critically, the charts show that the "executive officers" of DeVry—defined to include Adtalem's "Chief Executive Officer," "Chairman," and "Chief Financial Officer," among others— were designated as custodians who agreed to produce documents on a range of topics including: "emails… which relate to completion rates, job placement rates, [and] students' pre-graduation or post-graduation income amounts"; documents concerning "minimum placement rates" reported to government agencies; and "issues raised by consumer complaints." These internal records coupled with the FTC's allegations and conclusions create an inference that documentary evidence exists showing that Adtalem executives played a role in the creation and dissemination of the 90% Ad and Higher Earnings Ad.

**150.** Internal documents produced to Plaintiffs' counsel in the present action by the FTC in response to a FOIA request also provide an inference that DeVry's practices were pervasive across the organization. These documents show that the FTC's investigation of DeVry's manipulation was wide-ranging and encompassed all of DeVry's campuses and schools. A table produced by the FTC listing negotiated modifications to discovery requests is 52 pages long, lists 64 separate discovery requests and modifications, encompasses requests touching upon all of

DeVry's colleges, and even allows for certain requests to be fulfilled through document "sample[s] of campus presidents" at specific locations.

**151.** Upon information and belief, based on internal documents[18] produced by the Department of Education through a FOIA request to Plaintiffs' counsel in *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc., et al.*, Third Amended Complaint [Doc. 84] Case No. 16-cv-05198 (N.D.Ill Jan. 29, 2018), there is evidence that shows that Adtalem executives Hamburger, Wiggins, Unzicker, and Gunst either had knowledge of the falsity of the 90% Ad or were reckless:

> The documents specifically show that DeVry [now Adtalem] and its executives acted in bad faith and were in fact put on notice that DeVry University's job placement statistics were inaccurate. For example, an internal brief submitted by the DoE to the Office of Hearings and Appeals describes high-level evidence showing that DeVry's [Adtalem's] executives were either put on notice or were reckless with respect to the job placement statistics they were touting. As explained in an internal brief filed by the DoE:
>
> - "[T]he violation at issue was neither unplanned nor isolated. Rather the Representation was developed as part of a multi-year, national advertising campaign that reached millions of prospective students … and that commenced only after extensive consumer and brand research. Relying on this research, DeVry [now Adtalem] made an initial decision to use, and repeated decisions to keep using, the Representation even after it certified to the Department its knowledge of, and compliance with, the substantiation requirement**.** Indeed, **"this was not an isolated instance, but part of a pattern whereby DeVry [now Adtalem] either intentionally or through wanton negligence" avoided clear statutory and regulatory requirements."** (emphasis added, internal citations omitted).
>
> - *"DeVry continued to make the Representation in advertisements even after* DeVry staff and others raised questions about DeVry's ability to substantiate the claim. For example, an internal presentation in 2008 on the

---

[18] The information uncovered by Plaintiffs' counsel in *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc., et al.* was obtained after an extensive investigation and review of relevant FTC and DOE documents and statements from 20 confidential witnesses—former DeVry employees who provided confidential statements describing how, during their tenure, the Company gamed the misleading DeVry University graduate job placement and salary statistics in order to boost student enrollment and maximize profits. After assessing this information, the court denied Defendants' 12(b)(6) motion to dismiss, holding that Plaintiffs adequately pleaded claims pertaining to the falsity of DeVry's 90% Ad, noting this evidence was "rendered in sufficient detail to afford them a high degree of reliability" and adequately "alleged widespread and pervasive inflation of job placement rates.

efficacy of the *Careers* campaign posed questions about the sources of the Representation in seeking to establish the 'truth behind' the claim and whether it could 'substantiate' the 90 percent figure. Moreover, in February 2009, DeVry President David Pauldine posited, in an email sent on his behalf, whether DeVry should 'be looking at *alternative* messaging such that it brings the ultimate *credibility* to our employment claims.'"

- **"And in November 2009, staff at an advertisement agency used by DeVry, Leo Burnett USA, questioned certain details of the Representation. In response, DeVry's 'Senior Consumer Insights Specialist' dismissed the concerns by affirming a response that DeVry had 'dug into these numbers 8 ways to Sunday, and there is no other clear, compelling, and compliant story.' Nevertheless, aware of both legal requirements and expressed questions and concerns about the Representation, DeVry continued to use the Representation in advertisements until after the Department asked DeVry for substantiation." (internal citations omitted).

- "DeVry made statements in response to the Substantiation Request that lacked credibility. Specifically, although DeVry claimed to have ceased making the Representation no later than January 2014, this was not true. DeVry's failure to act with candor during the investigation violated its fiduciary duty to the Department." (internal citations omitted).

- "DeVry produced to the Department a November 3, 2009 email from Drew Swinger, the "Senior Consumer Insights Specialist" for DeVry, Inc. [now Adtalem] . . . In that email chain, Lauren Rector, at [advertising agency] Leo Burnett USA inquires of Mr. Swinger about wanting to "**dig a little deeper into the 90% employment rate claims**," specifically about the "since 1975" claims. Later in the chain, Mr. Swinger confirms Jay Pauer's statement that DeVry has "dug into these numbers 8 ways to Sunday, and there is no other clear, compelling, compliant story." **Mr. Swinger also states that the 90% is not the "percent of graduates" who were employed, but rather the "percent of graduates who were in the active job market 6 months after graduation**." (emphasis added).

*Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, *et al.*,Third Amended Complaint [Doc. 84] at 166–167, Case No. 16-cv-05198 (N.D.Ill Jan. 29, 2018) (quoting documentary evidence received from the Department of Education through a FOIA request).

**152.** The fact that the DOE described specific evidence it possessed showing that DeVry acted in bad faith with respect to the misrepresentations at issue raises the inference that Adtalem's senior executives either knew or recklessly disregarded the truthfulness of the 90% representation.

As the DoE explained, (1) DeVry engaged in a pattern of making misrepresentations; (2) Adtalem's senior executives were making presentations and sending emails about the 90% representation at a high level about the issue as early as 2008; and (3) continued making misrepresentations after they were put on notice by both a consultant and the DOE about the falsity of the 90% representation. These internal documents, and others described below, contribute substantially to the inference that Adtalem at least ratified and more likely played a role in the creation and dissemination of DeVry's false and misleading 90% Ad and Higher Earnings Ad.

**153.** Further, Adtalem President and CEO Hamburger specifically ratified and approved of the methodology underpinning DeVry's 90% Representation. For example, after the FTC filed its enforcement action against DeVry, Adtalem CEO Hamburger provided detailed thoughts to investors in response to the FTC's allegations, evidencing his knowledge and approval of how DeVry calculated it statistics, stating:

> [T]here's not now nor has there ever been a national standard for calculating employment statistics. We've advocated for there to be one for all of higher education. In the absence of regulation, DeVry University designed a methodology for calculating the employment outcomes of its graduates over 40 years ago. 40 years ago. **We believe it's a very sound way of doing it.** (emphasis added).

*Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc., et al.*,Third Amended Complaint [Doc. 84] at 175, Case No. 16-cv-05198 (N.D.Ill Jan. 29, 2018).

*iii. Information Provided by Confidential Witnesses Confirms That Adtalem Played a Role in the Creation and Dissemination of the 90% Ad and Higher Earnings Ad*

**154.** Confidential Witnesses, presented in *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc., et al*.,Third Amended Complaint [Doc. 84] Case No. 16-cv-05198 (N.D.Ill Jan. 29, 2018) have provided additional information regarding the role that Defendant Adtalem played in approving, controlling and directing DeVry's false and deceptive marketing campaign, in an effort to boost student enrollment and maximize profits for its shareholders.

**155.** In assessing the merits and reliability of these confidential witnesses, the Court in *Pension Trust Fund For Operating Engineers* found that their statements "tend to show with a degree of particularity that there is evidence that the problems with DeVry's use of the 90% Statement, as described by the FTC in the Central District of California action, were broad in scope and magnitude, not limited to a relatively few cases of misclassification in California" and "strengthen the inference that evidence of the risk of falsity of the 90% Statement penetrated to defendants, at the top of the [Adtalem] corporate hierarchy" where the confidential witness accounts "are rendered in sufficient detail to afford them a high degree of reliability." *Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc., et al.*, Order on Motion to Dismiss [Doc. 113] Case No. 16-cv-05198 (N.D.Ill Dec. 20, 2018).

*A. Adtalem Executives Were Actively Involved In Recruiting Efforts Using DeVry's False and Deceptive Marketing Scheme*

**156.** For instance, Confidential Witness 8 (CW 8), a Senior Director of Academic Effectiveness for Adtalem from September 2013 to March 2014, reported, "the numbers DeVry [now Adtalem] was producing and generating for the SEC reports were just not accurate." According to CW8, the actual numbers were different from what Defendant Adtalem reported to investors. CW8 reported that he discovered that DeVry did not have the data to back up the claim that 90% of its graduates got jobs in their field of study within six months of graduation and, in approximately April 2014, reported this to an in-house attorney who worked in Adtalem's corporate compliance department. He said that he specifically told the in-house attorney that there was no data to substantiate DeVry's job placement rates and the 90% representation. He told the attorney "you don't have the data to calculate this." When asked if Adtalem President and CEO Daniel Hamburger knew about his findings, CW8 responded that he definitely did. He knew this because Groenwald, his boss, told him in a meeting that she discussed CW8's findings with

163

Hamburger. CW8 added that Groenwald and Hamburger met all the time. CW8 was fired a month after meeting with Adtalem's in-house attorney and said that his meeting with the compliance department and the attorney led to his termination.

157. CW8 also stated that Adtalem President and CEO Hamburger wanted to speak with him after CW8 authored a report about factors critical to the success of a for-profit college. CW8 understood that Hamburger had seen his report and wanted to meet with him about it. CW8 was later fired after he warned Adtalem [DeVry Inc.] that the Company was generating numbers for SEC reports that were not accurate.

158. CW18 said he attended a meeting with Adtalem CEO Daniel Hamburger during which the 90% enrollment rate was discussed.

159. Confidential Witness 15 (CW15) was employed by Adtalem and Carrington College from February 2009 to January 2017, as DeVry's Metro President in the Phoenix market from 2009 to 2014, then as Senior Director of Operations for Carrington College from 2014 to 2017, and had direct contact with Adtalem President and CEO Daniel Hamburger. **CW15 stated that Daniel Hamburger likely approved that 90% advertising because he was very provocative.**

160. CW15 also described Adtalem CEO Hamburger's hands-on management style, recounting how he would get emails from "Daniel [Hamburger] where he would say that **he was reviewing 'your statistics' or 'Hey, I was listening to an enrollment call.'" Hamburger would tell CW15 what he thought of a particular statistic or how to instruct his employees to handle enrollment calls in the future. CW15 recalled that Hamburger came to his campus at least five times during his tenure as Metro President in Phoenix.**

161. Confidential Witness 19 (CW19) was employed by Adtalem as Vice President of Business Services/Operations from August 2009 to July 2016. He worked out of both the Oak

Brook and Downers Grove (corporate headquarters) locations in Illinois. CW19 reported directly to Adtalem Chief Information Officer Chris Nash, who reported to Adtalem CEO Daniel Hamburger. CW 19 participated in many meetings involving senior leadership. According to CW19, **DeVry student graduate employment metrics was a topic of discussion in meetings he attended. These meetings included Quarterly Leadership Meetings, in which graduate employment metrics were discussed. CW19 said that Adtalem CEO Hamburger, Adtalem CFO Daniel Wiggins, Adtalem CFO Richard Gunst (Wiggins's predecessor), and Adtalem CAO Patrick Unzicker all participated regularly in Quarterly Leadership Meetings.** CW19 also recalled that Madeleine Slutsky, the Vice President of Career and Student Services attended the Quarterly Leadership Meetings. Notably, Slutsky was repeatedly listed as a document custodian concerning topics related to job placement rates in internal discovery documents Plaintiffs received from the FTC through a FOIA request.

162.    In addition, Confidential Witness 20 (CW20) was the former Vice President of Academic Affairs and Chief Academic Officer for Adtalem's Chamberlain College from July 2011 to June 2017, was primarily based in Downers Grove, Illinois at Adtalem's headquarters and reported to Chamberlain College President Susan Groenwald, who reported to Adtalem CEO Daniel Hamburger. CW20 participated in meetings with CEO Hamburger during which issues related to job placement and accreditation at DeVry were discussed. **CW20 recalled that DeVry had an ongoing issue related to job placement and accreditation. CW20 also specifically recalled that DeVry University was not aggregating data on institutional effectiveness across its different programs, and this lack of data was an issue discussed during meetings led by Hamburger in 2012, 2013, and 2014.**

**B. Numerous Government Investigations, Enforcement Actions and Sanctions Underscore the Magnitude of DeVry's Fraudulent Marketing Scheme**

**163.** Defendants' actions led to a lawsuit filed by the Federal Trade Commission to enjoin the deceptive trade practices. *See Federal Trade Commission v. DeVry Education Group, Inc., et al.,* Case No. 2:16-cv-579, C.D. Cal., filed January 27, 2016 (the "FTC case").

**164.** The FTC case was reported as settled in December 2016.

**165.** Upon information and belief, based on the May 2, 2016 hearing transcript in the FTC case, the FTC spent two years investigating the case before filing suit against Defendants.

**166.** Upon information and belief, based on the August 30, 2016 hearing transcript in the FTC case, Defendants produced more than 2 million pages of documents to the FTC.

**167.** Upon information and belief, the Standard 90% Ads and the Higher Earnings Ads were false and misleading.[19] The FTC case was reported as settled in December 2016. The settlement included a permanent injunction against "[m]aking any representation, expressly or by implication, about the benefit of any educational product or service, or the success or likely success of any student or graduate, unless the representation is non-misleading, and, at the time such representation is made, DeVry possesses and relies upon Competent and Reliable Evidence that is sufficient to substantiate that the representation is true."

**168.** Upon information and belief, based on the allegations contained in the complaint filed in the FTC case after a 2-year investigation and review of over 2 million documents produced by Defendants, in order to manufacture support for the 90% Representation, Defendants counted a substantial number of DeVry graduates who should not be counted and excluded a substantial number of graduates who should not be excluded.

**169.** Upon information and belief, based on the allegations contained in the complaint

---

[19] The information and belief supporting Plaintiffs' claims that the Standard 90% Ads and Higher Income Ads were false and misleading is based on the allegations contained in the complaint filed in the FTC case, the fact that the allegations were made after a two-year investigation by the FTC involving a document production by Defendants of over 2 million pages, the fact that counsel for the FTC were required to have a good faith basis for the allegations, the statements by counsel and the court in the May 2, 2016 and August 30, 2016 hearing transcripts from the FTC case, the fact that Defendants decided to settle the FTC case rather than move for summary judgment, and the terms of the settlement agreement.

filed in the FTC case after a 2-year investigation and review of over 2 million documents produced by Defendants, in order to manufacture support for the 90% Representation, Defendants included a substantial percentage of graduates who did not obtain a job as a result of earning a degree from DeVry.

170. Upon information and belief, based on the allegations contained in the complaint filed in the FTC case after a 2-year investigation and review of over 2 million documents produced by Defendants, in order to manufacture support for the 90% Representation, a significant percentage of the jobs that Defendants counted as being in the graduate's field of study include jobs that would not reasonably be considered in the graduate's field of study.

171. Upon information and belief, based on the allegations contained in the complaint filed in the FTC case after a 2-year investigation and review of over 2 million documents produced by Defendants, in order to manufacture support for the 90% Representation, Defendants also excluded certain students from the calculation who in fact were actively seeking employment.

172. Upon information and belief, based on the allegations contained in the complaint filed in the FTC case after a 2-year investigation and review of over 2 million documents produced by Defendants, the actual percentage of DeVry graduates who, at or near the time they graduated, found jobs that could reasonably be considered "in their field" is significantly smaller than 90%.

173. Notably, in denying Defendants' Motion to Dismiss FTC's enforcement action, the court found that, "the Court disagrees with Defendants that Rule 9(b) requires the FTC to provide additional factual support for its allegations. [As in this Complaint] [t]he FTC does not merely allege that the 90 percent figure is false or lacks substantiation. Rather it provides three reasons that explain precisely why the statistic is problematic: (1) Defendants counted graduates who continued with the jobs they had prior to attending DeVry University; (2) Defendants counted graduates who were not employed in their field of study; and (3) Defendants excluded graduates who unsuccessfully attempted to find jobs after graduation." The Court went on to note that, "[t]hese allegations show that the FTC's claims have factual basis and provide Defendants with adequate notice as to the FTC's reasons for believing that the employment statistic is

unsubstantiated and materially false." *See* Order Denying Defendants' Motion to Dismiss Complaint [Doc. 38], *FTC v. DeVry Education Group, Inc., et al.*, Case No. CV-16-00579-MFW.

174.    In its reasoning, the court concluded that, "[b]y alleging why the actual employment rate is 'significantly smaller than 90%' the FTC has done all that Rule 9(b) requires: it enabled Defendants to defend this action. Defendants can now go back to their records and recalculate the employment rate . . . If the calculation produces a number that is only marginally smaller than 90 percent, then Defendants could promptly move for summary judgment" and offered the parties an expedited summary judgment and trial schedule." *Id*. Instead, Defendants entered into a settlement agreement with the FTC.

174.    Upon information and belief, based on an announcement from the Attorney General of Massachusetts, the investigation leading to that lawsuit against and settlement with DeVry found that certain DeVry programs had job placement rates as low as 52%.

175.    Upon information and belief, based on the May 2, 2016 and August 30, 2016 hearing transcripts from the FTC case, the FTC had more factual information from its investigation than was included in the complaint.

176.    Upon information and belief, based on the May 2, 2016 hearing transcript, only some "examples" of the Standard 90% Ad were included in the complaint filed in the FTC case. Counsel for the FTC, Christina V. Tusan, argued at the hearing: "We're not going to include every example. We're not required to."

177.    Upon information and belief, based on the allegations contained in the complaint filed in the FTC case after a 2-year investigation and review of over 2 million documents produced by Defendants, Defendants' did not have a reasonable basis for making the Higher Earnings Representations.

178.    Upon information and belief, based on the allegations contained in the complaint filed in the FTC case after a 2-year investigation and review of over 2 million documents produced by Defendants, the Higher Earnings Representations were based upon a third-party "income report." The sampling methods and methodology behind the income report gave or should have

given Defendants reason to question the reliability of the conclusions and information contained in the report. Among other problems, the comparison of incomes of DeVry graduates with graduates from other schools did not adjust for significant salary drivers such as age, experience, and degree field.

179.    Upon information and belief, based on the allegations contained in the complaint filed in the FTC case after a 2-year investigation and review of over 2 million documents produced by Defendants, the statistics collected by DeVry from thousands of its graduates about their incomes differed significantly from the third-party's statistics, which consisted of information from only several hundred individuals per graduation year.

180.    Upon information and belief, based on the allegations contained in the complaint filed in the FTC case after a 2-year investigation and review of over 2 million documents produced by Defendants, comparing the information in Defendants' own files with publicly available income data will show that DeVry graduates, one year after graduating, do not in fact earn significantly more than graduates from all other schools combined.

181.    Notably, in denying Defendants' Motion to Dismiss the FTC's enforcement action, the court found that, "these allegations are neither implausible nor insufficiently specific. [As in this Complaint] the FTC alleges, in essence, that the third-party study on which Defendants relied in making their representations compared apples to oranges. It takes no special knowledge of statistics to realize that comparing, for example the incomes of a thirty-five year old DeVry graduate with  ten years of experience and an average twenty-one-year-old college graduate with no experience could lead to misleading results . . . According to the FTC, the third-party study made precisely these types of errors in its calculations . . . these allegations are plausible and particular enough to put Defendants on notice of the FTC's basis for its claims. Neither Rule 8 nor Rule 9(b) require more at this stage of the proceedings" *Id*. The court went on to note that, "Defendants have access to the third-party study and can determine its accuracy. There is simply no need for the FTC to provide a full-blown regression analysis in the pleadings to prove that the 15 percent representations are unsubstantiated. Defendants may, of course, file a prompt motion

for summary judgment." *Id*. Instead, Defendants entered into a settlement agreement with the FTC.

182.     Upon information and belief, based on the August 30, 2016 hearing transcript from the FTC case, documents in DeVry's possession and produced to the FTC will provide additional support for the allegations that the Standard 90% Ads and the Higher Earnings Representations were false and misleading. As noted by the Honorable Suzanne H. Segal during the hearing, the FTC's disclosures "gave quite a bit of detail to the FTC's allegations against the Defendants and included some very specific allegations and references to documents."

183.     In the words of the FTC's counsel, Ms. Tusan, "[t]he detailed provision we gave in our initial disclosures, which went above and beyond what was required, was in response to Defendants' raising of those issues with the Court and saying they were unclear of our theory of the case, they felt like they needed more detail." However, the FTC initial disclosures were placed under seal in that case and that additional level of detail is not available to counsel for Plaintiffs at this time.

184.     Upon information and belief, based on the August 30, 2016 hearing transcript from the FTC case, the FTC as part of its investigation obtained "third-party documents" through subpoenas that support the allegations in the complaint filed in the FTC case. However, these third party documents were placed under seal in that case and that additional level of detail is not available to counsel for Plaintiffs at this time.

185.     In the "Discovery Plan" section of the Joint Rule 26(f) Report with Errata, the FTC revealed the "evidence on which [it] relies on to support its allegations that [DeVry's] 90% claim was false and unsubstantiated consists of student files, summaries of graduate placement information, and other documents that [DeVry] produced during [the FTC's] investigation in response to a request for documents on which Defendants relied to support their claims, as well as other documents [DeVry] produced, such as internal emails and presentations." *See* Joint Rule 26(f) Report with Errata [Doc. 50], *FTC v. DeVry Educ. Group, Inc., et al.,* Case No. 16-CV- 579- MFW-SS (C.D. Cal. June 7, 2016).

**186.** According to documents obtained by Plaintiffs' counsel in this case[20], directly from the FTC through a Freedom of Information Act request, the FTC's basis for the its allegation that the 90% claim was false and unsubstantiated consists of an analysis of the following documents, produced by Defendants through a Civil Investigative Demand, that the FTC's own personnel reviewed in preparation for possible litigation, including:

1. Defendants' advertisements, including television and radio commercials, websites, brochures, recruitment and enrollment presentations, social media, and brochures promoting DVU, as well as dissemination information;
2. DVU student and graduate records used to substantiate Defendants' claims, including but not limited to Graduate Registration Forms or eforms, graduate observation logs, and summary spreadsheets;
3. Training manuals, and policies and procedures, used by DVU's career services department and DVU's admissions department;
4. Audit reports, internal communications about student or graduate employment or about DVU's classification or proposed classification of student or graduate employment, and records concerning contact between students and graduates with DVU's Career Services Department;
5. Complaints, and documents generated by Defendants in response to complaints, concerning employment issues and representations alleged in the Complaint, as well as consumer injury and materiality;
6. Defendants' internal documents discussing recruitment, advertising and marketing, employment statistics (including but not limited to who was or should be counted and who was not or should not be counted), other policies of DVU's career services department, graduate incomes, and the claims at issue in the Complaint, including such documents as emails, memos, spreadsheets, and PowerPoint presentations;
7. Documents from third parties such as PayScale that Defendants relied on as the bases for their higher income claim;
8. Documents from third parties such as the National Association of Colleges and Employers relating to average or median incomes of college graduates;
9. Internal communications and communications with third parties such as CompliancePoint or Deloitte & Touche discussing the results of efforts to

---

[20] It is important to note that, although Plaintiffs' counsel submitted a FOIA request to the FTC, seeking access to the documents enumerated in paragraph 142 and relied on by the FTC in its enforcement action, FTC Lead Attorney for the Office of General Counsel, Kamay Lafalaise, denied Plaintiffs' request for said documents, citing various FOIA confidentiality exemptions, and instead granting access only to a redacted version of the FTC's Civil Investigative Demand issued to DeVry. As such, Plaintiffs have not had the benefit of reviewing the millions of documents known to exist and which corroborate the claims set forth herein.

> audit or verify DVU's employment statistics or to obtain information from
> graduates concerning their employment and income;
>
> 10. Communications with third parties such as advertising agencies
>     discussing or relating to messages conveyed by, or intended to be
>     conveyed by, advertisements that referred to DVU's employment
>     statistics or income earned by DVU graduates;
>
> 11. Defendants' financial information, including revenue figures;
>     Defendants' internal copy tests, alumni surveys, and other data related to
>     the 90% and higher-income claims; and
>
> 12. Third-party copy tests, marketing surveys or reviews and internal
>     communications concerning these copy tests and marketing surveys or
>     reviews.

*See also Pension Trust Fund For Operating Engineers v. DeVry Education Group, Inc.*, Third

Amended Complaint [Doc. 84] Case No. 16-cv-05198 (N.D.Ill Jan. 29, 2018).

**187.** In addition, the lead plaintiffs' attorney in *Pension Trust Fund for Operational*

*Engineers* obtained documents, via a FOIA request, from the U.S. Department of Education,

relating to the Department's investigation into DeVry's deceptive marketing scheme. On January

27, 2016, the DoE similarly issued DeVry a Notice of Intent, informing DeVry University of the

DoE's intention to impose certain limitations on the participation of DeVry University in programs

authorized pursuant to Title IV.[21] The proposed limitations specifically related to DeVry's

representations in advertising and marketing that "[s]ince 1975, 90.1% of DeVry graduates

system-wide in the active job market held positions in their fields of study within 6 months of

graduation" (the "Since 1975 Representation"). With regard to those representations, the DoE's

Notice of Intent stated that "starting in at least 2008 and continuing until at least August 2015,

DeVry made representations to students and prospective students regarding the post-graduation

employment outcomes of students who graduated from DeVry over a cumulative period stretching

more than 30 years. . . . Yet with respect to certain representations that were made by DeVry as

---

[21] Plaintiffs in the present action have submitted a similar FOIA request to the Department of Education, seeking
production of the documentary evidence supporting the DOE's enforcement action in connection with DeVry's
deceptive marketing campaign; to date the DOE has not fulfilled Plaintiffs' request.

part of that campaign and which continued to be made until at least August 2015, ***DeVry is unable to substantiate the truthfulness of those representations***, as is required by federal law" (emphasis added). *Id*.; s*ee also* Opening Brief of Federal Student Aid, *In re DeVry University*, Federal Student Aid Proceeding Docket No. 16-07-O.

188.    After receiving thousands of documents from DeVry, the DoE concluded that: ***"this was not an isolated instance, but part of a pattern whereby DeVry either intentionally or through wanton negligence avoided clear statutory and regulatory requirements."*** (internal citations omitted). *Id.; see also* Opening Brief of Federal Student Aid, *In re DeVry University*, Federal Student Aid Proceeding Docket No. 16-07-O.

189.    As a result the DOE's findings of wrongdoing, the Department imposed sanctions, limiting DeVry's access to Title IV federal student financial aid funds, contingent upon complying with very specific requirements to address their false and deceptive marketing scheme, including:

- Cease publishing marketing claims that include the "Since 1975 Representation [Standard 90% Representation];"
- Cease making any representations about post-graduation employment rates without possessing and maintaining (1) graduate-specific data to substantiate those representations; and (2) documentation of the methodology used to calculate any claims. DeVry must also certify, and provide an independent certification to the Department, of its compliance with these documentation requirements;
- Post an irrevocable, five-year letter of credit of no less than $68.4 million;
- Prominently disclose, for a period of two years, a notice on its online home page regarding its failure to substantiate the "Since 1975 Representation" [Standard 90% Representation] and include the same language in new enrollment agreements for a period of five years; and
- Take steps to rid the internet of the "Since 1975 Representation" [Standard 90% Representation] (both on its own website and on websites not under its direct control).

*See* DOE Settlement Agreement with DeVry University, *In re DeVry University*, Federal Student Aid Proceeding Docket No. 16-07-O.

190.    Other governmental entities have also conducted their own investigations into DeVry's false and deceptive marketing scheme, which highlighted the 90% Representation, with each finding that DeVry engaged in deceptive practices, including:

- In January 2017, The New York Attorney General reached a $2.25 million settlement after its investigation into DeVry Education Group, Inc. and its subsidiaries DeVry University, Inc. and DeVry/New York, Inc. revealed that DeVry lured students with ads that exaggerated graduates' success in finding employment and contained inadequately substantiated claims about graduates' salary success (Standard 90% Ad and Higher Earnings Ad). The investigation found that DeVry's employment outcome statistics inaccurately classified a significant number of graduates as employed in their field of study, when in reality the graduates were not working in their field.

- On July 5, 2017, DeVry University reached a settlement deal with the Massachusetts Attorney General and agreed to pay $455,000 in refunds to resolve allegations that it used deceptive job placement rates in marketing certain online programs to Massachusetts students. According to the Attorney General's investigation, DeVry made false claims concerning the employment outcomes of graduates, including on its website, in social media, print advertisements, through television commercials, telephone and in-person presentations to prospective students, that 90 percent of graduates who sought employment landed jobs in their field of study within six months of graduating.

- In May 2017, the Higher Learning Commission designated DeVry "under governmental investigation" after the Massachusetts Attorney General investigation revealed "fraudulent or deceptive practices". In September 2017, the HLC removed this designation after DeVry negotiated a settlement in Massachusetts and agreed to cease its deceptive marketing practices.

- In March 2016, the Veterans Administration reprimanded DeVry over the FTC and DOE's findings of deceptive marketing practices and suspended DeVry from its "Principles of Excellence" status under the G.I. Bill, a program designed to provide GI Bill users information, support, and protection while using GI Bill benefits. The VA began "cautioning GI Bill users about DeVry" and placed a warning to veterans on its website. A letter sent to DeVry by the VA's undersecretary of Economic Opportunity noted that, "The FTC findings, [Education Department] conclusions, and GI Feedback System complaints indicate that DeVry University has not acted in accordance with ... Principles of Excellence guidelines".

174

**191.**    Defendants intended that plaintiffs rely on the 90% Representations and the Higher Earnings Representations when deciding to purchase DeVry's educational products and services, and/or to continue their studies with DeVry through graduation.

**192.**    Plaintiffs reasonably relied on Defendants' representations in making their decision to purchase DeVry's educational products and services, and/or to continue their studies through graduation.

**193.**    As a result of the reasonable reliance by each named Plaintiff herein, Plaintiffs incurred financial harm, and other damages.

**194.**    Plaintiffs' claims presented herein rise to the level of plausibility set forth in *Bell Atlantic Corp. v. Twombly* by asserting the who, what, when, where and how of the misconduct which caused Plaintiffs' damages: The "who" (Defendants, their employees, agents, and/or representatives); the "what" (misrepresentations regarding post-graduation employment rates and income); the "when" (between 2008 and 2016); the "where" (TV, YouTube, brochures, websites, emails, radio, social media, in person); and the "how" (by miscounting three categories of graduates for the Standard 90% Representation and unreliable sampling and methodology for the Higher Earnings Representation). *See Fed. Trade Comm'n v. DeVry Educ. Grp., Inc.*, No. CV-16-00579-MWF-SSX, 2016 WL 6821112, at *3 (C.D. Cal. May 9, 2016). *See generally Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

## FIRST CAUSE OF ACTION

### DECEPTIVE TRADE PRACTICES ACT

**195.**    Plaintiffs incorporate paragraphs 1 through 194 of this Complaint as though fully alleged herein.

**196.**    Defendants misrepresented the benefits of obtaining a degree from DeVry in

advertising, marketing, or other promotion of its educational products and services. The 90% Representations—that 90% of Defendants' graduates were employed in their field within six months of graduation— were made through various means such as television, internet webpages, YouTube, brochures, radio, print advertisements, and in person by Defendants' employees. The 90% Representations were false, misleading, and deceptive. Defendants' Higher Earnings Representations were also false, misleading, and deceptive. Plaintiffs reasonably relied on Defendants' representations in deciding to enroll in and/or to continue their studies at DeVry through graduation. Plaintiffs did not obtain employment or a career in their field of study within six months of graduation, despite diligent efforts to secure post-graduation employment within their field of study.

197.    Plaintiffs are consumers as defined in the DTPA in that Plaintiffs sought or acquired educational products and services by purchase from DeVry and the purchase of these educational products and services are the basis of Plaintiffs' claims.

198.    Plaintiffs each delivered to Defendants a demand letter detailing their claims, including the amount of the claim, together with a demand for reasonable attorney's fees and expenses to the date of the letter. Therefore, all conditions precedent to Plaintiffs' recovery in this action have been performed or have occurred.

199.    Defendants have not tendered payment or presented an adequate offer of settlement in writing in response to Plaintiffs' demand letters.

200.    Defendants knowingly or intentionally engaged in false, misleading, or deceptive practices in the transactions described above, which were a producing cause of damages to Plaintiffs. Defendants' conduct took advantage of Plaintiffs' lack of knowledge, ability, experience, or capacity to a grossly unfair degree so as to be a producing cause of damages to Plaintiffs.

201.    As a result of Defendants' conduct, Plaintiffs have been injured in that they paid tuition, purchased books and supplies, incurred debt, and attended classes in reliance on Defendants' representations. Plaintiffs also suffered mental anguish due to Defendants' conduct.

202.     Defendants are required to restore to Plaintiffs any money or property that was illegally acquired in violation of the Texas Deceptive Trade Practices Act.

203.     To pursue this claim against Defendants, Plaintiffs had to retain The Carlson Law Firm, PC as attorneys and agreed to pay that law firm reasonable fees for their services in maintaining Plaintiffs' claims. Plaintiffs are entitled to recover those fees from Defendants under Section 17.50(d) of the Texas Business and Commerce Code.

## SECOND CAUSE OF ACTION
### FRAUD

204.     Plaintiffs incorporate paragraphs 1 through 203 of this Complaint as though fully alleged herein.

205.     Defendants made material representations to Plaintiffs about the employment rate of DeVry graduates. The 90% Representations—that 90% of Defendants' graduates were employed in their field of study within six months of graduation—were made through various means such as television, internet webpages, radio, YouTube, brochures, print advertisements, and in person by Defendants' employees.

206.     Defendants' representations about the employment rate of DeVry graduates were false.

207.     Defendants also represented that DeVry graduates would earn more money with statements such as "An education that pays" and "One year after graduation, DeVry University grads report earning 15% more than median earnings reported by all other bachelor's degree graduates."

208.     The Higher Earnings Representations were also false.

209.     When the representations were made, Defendants either knew that they were false or made the representations recklessly without knowledge of the truth and as a positive assertion.

210.     Defendants made the 90% Representations and Higher Earnings representations with the intent that Plaintiffs should act on them by enrolling in DeVry and/or continuing their

studies with DeVry through graduation.

211. Plaintiffs acted in reliance on Defendants' representations in making their decision to enroll and/or continue their studies with Defendants through graduation.

212. Plaintiffs did not obtain employment or a career in their field of study within six months of graduation.

213. Plaintiffs thereby suffered damages.

214. Plaintiffs are hereby entitled to restitution of the monetary benefits conferred unto Defendants, where under Texas law, one who is induced by fraud to enter into a contract may be entitled to an equitable remedy of restitution that would restore him or her to the position s/he would have been in had s/he not been the victim of fraud.

## THIRD CAUSE OF ACTION
### NEGLIGENT MISREPRESENTATION

215. Plaintiffs incorporate paragraphs 1 through 214 of this Complaint as though fully alleged herein.

216. In the course of their business, Defendants' supplied false information about the benefits of obtaining a degree from DeVry in advertising, marketing, or other promotion of its educational products and services. Defendants supplied false information about the employment rate of its graduates, the 90% Representations, for the guidance of others, including Plaintiffs herein.

217. In the course of their business, Defendants also represented that DeVry graduates would earn more money than graduates of other colleges and universities, with statements such as "An education that pays" and "One year after graduation, DeVry University grads report earning 15% more than median earnings reported by all other bachelor's degree graduates"—the Higher Earnings Representations. These representations were made for the guidance of others, including Plaintiffs herein.

218. Although Defendants may claim to have believed that the 90% Representations and

Higher Earnings Representations were true, Defendants did not exercise reasonable care or competence in obtaining or communicating the information.

219.    Plaintiffs justifiably relied on Defendants' representations in deciding to purchase educational products and services from DeVry, and/or continue their studies with DeVry through graduation.

220.    Plaintiffs did not obtain employment or a career in their field of study within six months of graduation, and Defendants' negligent misrepresentations proximately caused Plaintiffs' injuries and damages.

221.    Plaintiffs are entitled to a restoration of the monetary benefits conferred unto Defendants, where these monetary benefits were wrongfully secured by Defendants and it would be unconscionable for Defendants to retain them.

<h3 style="text-align:center">FOURTH CAUSE OF ACTION</h3>
<h3 style="text-align:center">RESTITUTION FOR UNJUST ENRICHMENT</h3>

222.    Plaintiffs incorporate paragraphs 1 through 221 of this Complaint as though fully alleged herein.

223.    Defendants obtained benefits from Plaintiffs in the form of monies paid for tuition, fees, and other costs associated with enrolling in and continuing to pursue studies at DeVry through graduation.

224.    Defendants misrepresented the benefits of obtaining a degree from DeVry. Defendants represented that 90% of Defendants' graduates were employed in their field of study within six months of graduation.

225.    Defendants' representations about the employment rate of DeVry graduates were false.

226.    Defendants also represented that DeVry graduates would earn more money with statements such as "An education that pays" and "One year after graduation, DeVry University grads report earning 15% more than median earnings reported by all other bachelor's degree

graduates."

227. The Higher Earnings Representations were also false.

228. As such, Defendants have been unjustly enriched through wrongfully obtaining benefits from Plaintiffs by fraud and/or the taking of undue advantage of Plaintiffs.

229. Plaintiffs are therefore entitled to restitution and/or restoration for unjust enrichment and/or money had and received.

## DEMAND FOR JURY TRIAL

230. In accordance with Fed. R. Civ. P. 38, Plaintiffs demand a trial by jury on all issues.

## PRAYER FOR RELIEF

Therefore, Plaintiffs respectfully request that Defendants be cited to appear and answer, and that on final hearing, Plaintiffs have:

a. Restitution;

b. Economic damages;

c. Mental anguish damages;

d. Additional DTPA damages of three times each plaintiff's economic and mental anguish damages;

e. Attorney's fees through entry of final judgment in this action;

f. Prejudgment and postjudgment interest;

g. Costs of this suit; and

h. Any other relief that the Court finds proper.


DATED: June 7, 2019

Respectfully submitted,

**THE CARLSON LAW FIRM, P.C.**
1717 N. Interstate Highway 35, Suite 305
Round Rock, Texas 78664
Phone: (512) 671-7277
Fax:     (512) 238-0275

By:     /s/ John R. Fabry
        **JOHN R. FABRY, OF COUNSEL**
        Texas Bar No. 06768480

        JFabry@carlsonattorneys.com

        **LUIS MUNOZ**
        Texas Bar No. 24081056

        LMunoz@carlsonattorneys.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was filed and served electronically through the Court's CM/ECF system on June 7, 2019 upon the following counsel of record:

Terance A. Gonsalves
**STEPTOE & JOHNSON LLP**
115 South LaSalle Street, Suite 3100
Chicago, Illinois 60603
Phone: (312) 577-1275
Fax: (312) 577-1370
tgonsalves@steptoe.com

Stephen K. Lecholop II
**ROSENTHAL PAUERSTEIN SANDOLOSKI AGATHER LLP**
755 East Mulberry Ave., Suite 200
San Antonio, Texas 78212
Phone: (210) 244-8836
Fax: (210) 244-8936
slecholop@rpsalaw.com

/s/ John R. Fabry
**JOHN R. FABRY, OF COUNSEL**