MR. LUIS RANGEL, SETH ADOMAKO, §
CHRISTINA CABELLO, ELISABETH §
NGUYEN, JOSE SANCHEZ, CHRISTAL §        SA-18-CV-00082-JKP
TURNER, MELISSA WILSON, MARTIN §
OLOYEDE, NATHALIE YEKA, §
TRISTEN WILSON, TERRELL WHITE, §
DAVID W. JESSOP, DENAIRIUS §
ROBINSONII, EMRAN ALHYASAT, §
TERESA ANAYA, TIFFANY BROWN, §
MED CULLINS, KEVIN D. EARLS, §
TYHESSIA ELLIS, CRYSTAL §
HAYDEN, RHONDA JAMES, §
EMMANUEL MAKARI, CHRISTOPHER
MARTIN, CATHERINE MCCARTY,
ROSHAWN SAMPSON, VICTOR
SEKGANTSO, MARK DAVIS,
CANDACE D. SMITH, LATASHA
SOLOMON, ALAN TA, GEORGE VAN-
LARE, SAUL VEGA, ROSALINDA A
VELA ESCOBAR, JUSTIN WIGGINS,
PATRICK ACHEAMPONG, JOANNA
AGUILERA, SHAWN J. AUSTIN,
KINNEY BARCUCH, YOUNGHEE
BERMINGHAM, NINA BURNS,
CHRISTIAN BURROW, MIKE DEAN,
FRANKIE EARLYJR., SHARONDA
FORD, JAYSON FOX, COURTNEY
FRAZIER, JENNIFER GAILLEY, RYAN
GRIZZLE, JEREMY HENGY, LISA
HOWARD, NATHANIEL JONES,
DERRICK KEITH, PROSPER
KISWAGA, NORMA MARTINEZ-
CANTU, KASANDRA MCGHEE,
GODFREY MOMANYI, MICHELLE
ORR, LAWRENCE OWONIKOKO,
ANDRES SALAZAR, KIMBERLY
SEARCY, LACHANNA SNEED, SCOTT
SULLIVAN, JULIO VALENCIA,
MIRANDA VAN COLEN, EDWARD
WATTS, WAYNE CARL WILLIAMS,
SEAN WILLIAMS, GLADYS
BERISTAIN, WILLIE GARRET,
RICHARD SHAW, TREVOR REED,
HEATHER MICHELLE EMMONS,

       *Plaintiffs,*

vs.

ADTALEM GLOBAL EDUCATION,
INC., FORMERLY KNOWN AS DEVRY
EDUCATION GROUP, INC.; AND
DEVRY UNIVERSITY, INC.,

        *Defendants.*

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge Jason K. Pulliam:**

This Report and Recommendation concerns Defendants' Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint [#64]. The case was referred to the undersigned for a report and recommendation on Defendants' Motion and the entry of a new scheduling order [#68]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

The Court held a status conference on November 20, 2019, at which all parties appeared through counsel and presented argument on the Motion to Dismiss. Having considered Plaintiffs' Second Amended Complaint in light of the arguments raised in Defendants' Motion, the response and reply thereto [#65, #66], the supplemental authority provided by Plaintiffs [#71], Defendants' response [#74], and the arguments of counsel at the hearing, the undersigned will recommend that the District Court deny the motion. The Court will enter an Amended Scheduling Order by separate order.

## I.  Background

This case was originally filed by over seventy Texas graduates of DeVry University who allege that Defendants Adtalem Global Education, Inc. ("Adtalem") and DeVry University, Inc. ("DeVry") misrepresented the benefits of graduating from DeVry by advertising false employment and income rates of graduates with the purpose of inducing potential students to purchase educational products and services. (Compl. [#1].) Adtalem is the parent company of

DeVry, its subsidiary. Plaintiffs' Original Complaint asserts claims of fraud and negligent misrepresentation and violations of the Texas Deceptive Trade Practices Act ("DTPA") and seeks restitution for the unjust enrichment of Defendants. (*Id.* at ¶¶ 91–121.) Defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6), and Plaintiffs responded with an Amended Complaint. The Court denied Defendants' motion to dismiss as moot but without prejudice to filing a new motion with respect to Plaintiffs' amended pleading, and Defendants filed a second motion asking the Court for dismissal.

While the motion was pending, the District Court consolidated another cause of action into this case, *Lindberg v. Adtalem Global Education, Inc., et al.*, 5:18-CV-649-DAE, and ordered the *Lindberg* Defendants to refile their motion to dismiss. After consolidation, a group of additional Plaintiffs moved for and were granted the right to intervene in this action and filed their Complaint in Intervention. There are now over 100 Plaintiffs in this action. Defendants thereafter stipulated that their pending motions to dismiss applied to the Intervenors' Complaint as well.

Defendants' earlier motion to dismiss argued that Plaintiffs' First Amended Complaint did not meet the particularity requirements of Rule 9(b) governing allegations of fraud and failed to sufficiently allege the misconduct of Adtalem, among other bases for dismissal. The District Court agreed with Defendants and held the following: (1) Rule 9(b) applies to all of Plaintiffs' claims (fraud, negligent misrepresentation, and violations of the DTPA); (2) Plaintiffs failed to satisfy Rule 9(b); and (3) Plaintiffs failed to allege that Adtalem was in control of or benefited from DeVry's advertising practices. (Order [#59].) The Court, however, gave Plaintiffs another opportunity to plead their causes of action and ordered Plaintiffs to file an amended pleading addressing the identified deficiencies within 45 days of its Order.

Plaintiffs timely filed their Second Amended Complaint [#62], which is now the live pleading before the Court. Plaintiffs' 181-page Second Amended Complaint adds over 100 pages of additional factual allegations but does not add any new causes of action. In response to the new Complaint, Defendants filed the motion to dismiss that is the subject of this report and recommendation. After Defendants filed their motion, this case was reassigned to the docket of the Honorable Jason K. Pulliam, who referred the motion to the undersigned for a report and recommendation. For the reasons that follow, the undersigned will recommend the District Court deny Defendants' motion to dismiss and allow Plaintiffs to proceed with their claims.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Although a complaint "does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations pleaded must show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (internal quotation omitted). However, a Court need not credit conclusory allegations or allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*,

836 F.3d 467, 469 (5th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). In short, a claim should not be dismissed unless the court determines that it is beyond doubt that the plaintiff cannot prove a plausible set of facts that support the claim and would justify relief. *See Twombly*, 550 U.S. at 570.

Rule 9(b) imposes a heightened pleading standard for claims sounding in fraud. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The Fifth Circuit has clarified that Rule 9 requires the plaintiff to plead the "who, what, when, where, and how" of the alleged fraud. *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 179 (5th Cir. 1997) (quoting *Melder v. Morris*, 27 F.3d 1097, 1100 n.5 (5th Cir. 1994)). The District Court has already determined that Rule 9(b) governs all of the claims asserted in Plaintiffs' Second Amended Complaint.

### III. Analysis

The District Court should deny Defendants' Motion to Dismiss. Defendants' motion argues that Plaintiffs' Second Amended Complaint still fails to satisfy the heightened pleading standard governing fraud claims; fails to allege viable theories of causation and damages; fails to allege consumer status under the DTPA; fails to allege a plausible claim for unjust enrichment; and fails to allege sufficient allegations against Adtalem. None of these contentions has merit in light of the additional factual allegations contained in Plaintiffs' Second Amended Complaint.

### A.   Plaintiffs' Second Amended Complaint satisfies Rule 9(b).

Defendants, in this motion, again attack the sufficiency of the allegations underlying Plaintiffs' claims of fraud, negligent misrepresentation, and violations of the DTPA. The elements of fraud include: (1) a misstatement or omission; (2) of material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; and (5) which proximately caused the

plaintiff's injury. *Williams*, 112 F.3d at 177. Claims of negligent misrepresentation and claims arising under the DTPA both also require the pleading of false, misleading, or deceptive acts or representations causing a plaintiff's injuries. *See Miller v. LandAmerica Lawyers Title of El Paso*, 362 S.W.3d 842, 845 (Tex. App.—El Paso 2012, no pet.) (listing elements of claim of negligent misrepresentation); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996) (describing basis of DTPA claims).

As described by the District Court in its Order granting Defendants' previous motion to dismiss, Plaintiffs' allegations of fraud rely on two specific advertisements produced by DeVry. (Order [#59] at 2–3; Second Am. Compl. [#62] at ¶¶ 2–3.) Plaintiffs allege the first ad represented that 90% of DeVry graduates actively seeking employment obtained careers in their chosen field within six months of graduation (the "Standard 90% Ad"). (*Id.* at ¶ 2.) Plaintiffs contend the second ad allegedly represented that DeVry graduates obtain higher paying jobs than graduates of other universities (the "Higher Income Ad"). (*Id.* at ¶ 3.) According to the Second Amended Complaint, both ads were produced in various media forms, such as television commercials, Internet webpages, YouTube videos, brochures and other print advertisements, emails, radio ads, and social media platforms. (*Id.* at ¶ 134.) Plaintiffs contend that the representations in the advertisements were also communicated verbally to prospective students by DeVry employees, such as enrollment advisors, counselors, or admissions services representatives. (*Id.* at ¶¶ 135–36.) According to Plaintiffs, all of these representations were conveyed as part of an eight-year *We Major in Careers* marketing campaign to communicate a consistent message regarding DeVry's job placement rate. (*Id.* at ¶¶ 131–33.)

All of Plaintiffs' claims rest on allegations that the representations contained in Defendants' advertisements were false; that Defendants knew they were false or made them with

reckless disregard for their truth or falsity; that Plaintiffs relied on the ads and in-person statements pertaining to the ads in their decision to enroll at DeVry and to continue their studies through graduation; and that Plaintiffs did not obtain a career in their chosen field within six months of graduation.

Although Plaintiffs identified these ads in their First Amended Complaint, the District Court held that the factual allegations in that Complaint did not sufficiently connect the ads and other representations to each individual Plaintiff and his or her reliance thereon. The Court specifically held that each Plaintiff (aside from Plaintiff Crystal Turner) had failed to identify the specific person making an allegedly fraudulent in-person representation, the specifics of such representations, and when the representations were made. (Order [#59] at 10–11.) The Court further found that Plaintiffs failed to allege which form of the ads they saw (such as digital, print, or television) and which specific representations in the ads were relied upon by each Plaintiff, as the Higher Income Ad, for example, only applied to those seeking bachelor's degrees, and some Plaintiffs obtained associate's or master's degrees at DeVry. (*Id.*)

Defendants now contend that Plaintiffs' Second Amended Complaint still fails to allege which advertisements Plaintiffs' saw and relied upon. Defendants also argue that Plaintiffs have not sufficiently alleged that the oral representations and advertisements were false. The undersigned disagrees.

     i.    <u>Particularity</u>

Although the Fifth Circuit applies Rule 9(b) to fraud complaints "with bite and without apology," it also has recognized that Rule 9(b) "supplements but does not supplant Rule 8(a)'s notice pleading" standard. *U.S. ex. Rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009) (internal quotation and citation omitted). Rule 9(b) "requires only simple, concise, and

direct allegations of the circumstances constituting fraud, which after *Twombly* must make relief plausible, not merely conceivable, when taken as true." *Id.* at 186 (internal quotation marks omitted). Plaintiffs have satisfied this standard; their factual allegations, taken as true, state plausible claims that Defendants made material misrepresentations regarding DeVry's post-graduation employment and income rates with the intent that prospective students and current students would rely on the given statistics, purchase their educational services, and continue with their studies through graduation.

Plaintiffs' Second Amended Complaint also contains detailed factual allegations regarding the "who, what, when, where, and how" of the alleged fraud. *See Williams*, 112 F.3d at 179. As to the oral representations, for each Plaintiff (over 100 individuals), the Second Amended Complaint identifies the approximate date of the fraudulent representation (either a date certain or approximate date with the month and year), the identity of the DeVry representative with whom the Plaintiff met and where (e.g., a recruiter visiting a high school during Ms. Kellerman's English class, a meeting on the DeVry campus with Admissions Advisor Gwynn Jackson, a meeting with Student Success Coach Melissa Callaway), and the specific representation made by the DeVry representative (e.g., that 90% of DeVry graduates were employed in their field of study within six months of graduation). (Second Am. Compl. [#62] at ¶¶ 7–10.)

The Second Amended Complaint also sufficiently identifies which advertisements Plaintiffs encountered and in which medium. For example, Plaintiffs allege that Plaintiff Luis Rangel first saw the 90% representation in a Power Point presentation by a recruiter at his high school and was given a brochure repeating the representation, received an email reiterating the representation, and saw the representation on DeVry's website. (*Id.* at ¶ 7.) Some Plaintiffs,

such as Seth Adomako and Melissa Wilson, first saw the 90% representation in a television commercial, and later saw it reiterated again on the DeVry website or other materials. (*Id.* at ¶¶ 7, 13.) For each Plaintiff, the Second Amended Complaint chronicles each representation communicated to Plaintiffs, whether the Plaintiff encountered the Standard 90% Ad or the Higher Income Ad, how the ad was communicated, and alleges reliance thereon. Nothing more can be required, even under the heightened requirements of Rule 9(b).

The opinions cited by Defendants in their motion to dismiss are distinguishable from the Second Amended Complaint before the Court. In *Petrizzo v. DeVry Education Group, Inc.*, a putative class action from the Northern District of Illinois, the court dismissed a complaint against DeVry based on similar 90% representation allegations for failure to satisfy Rule 9(b) where the complaint did not refer to "a particular allegation of time" or the "method of communication" and instead merely alleged generally that each plaintiff "saw and relied upon Defendants' 90% representation in choosing to enroll." No. 16 CV 9754, 2018 WL 827995, at *3 (N.D. Ill. Feb. 12, 2018). In the plaintiffs' complaint, the plaintiffs alleged their residence, the time period in which they attended DeVry, and the degree conferred, but there were no details provided as to the speaker, date, or the circumstances of each plaintiff's encounter with the alleged misrepresentation. *See id.*; *see also Petrizzo v. DeVry Education Grp., Inc.*, 1:16-CV-9754, Dkt. 21 (Complaint) (Dec. 5, 2016). After the Illinois court dismissed the complaint, the plaintiffs amended their pleadings, "increas[ing] the level of detail surrounding the misrepresentations each of them heard or saw" and "often providing the general time frame and location." *Polly v. Adtalem Global Education, Inc.*, No. 16 CV 9754, 2019 WL 587409, at *3

(N.D. Ill. Feb. 13, 2019).[1]  Yet the court found these details were still not "tied to any plaintiff" but were instead alleged as "representative samples" for the entire class.  *Id.* at *4.

The same cannot be said here, where Plaintiffs identify each individual Plaintiff's experience with the alleged misrepresentations, whether in-person or in some other medium. Moreover, not all district courts have agreed with the *Polly* court's application of Rule 9(b) to the types of misrepresentations alleged by Plaintiffs.  A district court in Missouri recently denied a motion to dismiss involving similar 90% allegations against Defendants, concluding that plaintiffs had alleged the circumstances surrounding the fraud with the particularity required under Rule 9(b).  *See Brown v. Adtalem Glob. Educ., Inc.*, No. 19-00250-CV-W-ODS, 2019 WL 5073566, at *5 (W.D. Mo. Oct. 9, 2019).  In doing so, the court emphasized that "[o]ne of the 'main purposes' of Rule 9(b) is 'to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud.'"  *Id.* (quoting *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).  As in this case, the *Brown* plaintiffs identified the individual admissions advisors they met with by name, the approximate date of the meetings, and described the 90% job placement statistic and the promise of higher income.  *Id.*

Finally, the fact that the representations at issue may have differed slightly in form or terminology is not fatal to Plaintiffs' claims.  *Cf. Polly*, 2019 WL 587409, at *4 ("If there were only one DeVry ad or all DeVry ads had exactly the same 90% representation, then perhaps what plaintiffs have alleged would be sufficient.  DeVry would know the wording of the representation made to plaintiffs along with the asterisks and explanations that came with it.").  Here, Plaintiffs have identified specific language from various representations surrounding the

---

[1] *Petrizzo* and *Polly* are opinions in the same cause of action but under different names due to the different style of the original and amended complaints.  The district court's decision in *Polly* is currently on appeal before the Seventh Circuit.  *See Polly v. Adtalem Global Educ., Inc.*, No. 19-1472 (7th Cir. Mar. 18, 2019).

90% statistics, all of which communicate some variation of the 90% statistic. (Second Am. Compl. [#62] at ¶ 131–33.) These variations could matter if Plaintiffs attempted to move for Rule 23 class certification, but they are not fatal to Plaintiffs' Complaint.

ii. _Falsity_

Plaintiffs have also adequately pleaded falsity. Plaintiffs allege that the Standard 90% Ad and associated representations were false, in whatever form they were communicated, because they erroneously included graduates continuing with previous jobs, graduates not employed in their chosen fields, and ignored graduates who were unsuccessful in obtaining jobs after graduation, thereby inflating the percentage quoted to prospective and current students. (Second Am. Compl. [#62] at ¶ 7.) Plaintiffs contend that the Higher Income Ad, which represented that one year after graduation DeVry graduates with bachelor's degrees earned 15% more than graduates with bachelor's degrees from other colleges and universities, was also false.

In making these allegations, Plaintiffs' Second Amended Complaint does rely on allegations made "on information and belief," because Plaintiffs do not yet have access to the documents in Defendants' possession that could directly substantiate their belief that the representations at issue were in fact fraudulent. While fraud may not be pleaded based on speculation or conclusory allegations, where the facts relating to the alleged fraud are peculiarly within the defendant's knowledge, as here, the Fifth Circuit has stated that the pleading requirements of Rule 9(b) may be relaxed to some extent. _U.S. ex rel. Willard v. Humana Health Plan of Texas_, 336 F.3d 375, 385 (5th Cir. 2003); _ABC Arbitrage v. Tchuruk_, 291 F.3d 336, 350 (5th Cir. 2002). Where allegations are made "on information and belief," however, the complaint must set forth a factual basis for such belief. _Willard_, 336 F.3d at 385. Plaintiffs have done so.

After Defendants filed their first motion to dismiss challenging the sufficiency of Plaintiffs' fraud allegations, Plaintiffs asked the Court for early discovery to obtain documentary evidence filed under seal in a 2016 action brought by the Federal Trade Commission ("FTC") against DeVry regarding the same misrepresentations at issue here. (Mot. [#15].) Noting that no discovery requests had yet been served, the undersigned ordered the parties to confer on discovery and Defendants to file objections as needed. (Order [#23].) Plaintiffs ultimately served discovery on Defendants; Defendants moved for protection; and the undersigned did not permit Plaintiffs to utilize the discovery process to develop more detailed factual allegations and satisfy Rule 9(b). (Order [#34].) Plaintiffs nonetheless made a Freedom of Information Act ("FOIA") request to the FTC, which was denied based on certain confidentiality exemptions, and the FTC only granted access to a redacted version of its Civil Investigative Demand issued to DeVry. (Second Am. Compl. [#62] at ¶¶ 149–50, 186 n.20.) Plaintiffs rely on these documents and others in pleading their causes of action based "on information and belief."

These other documents include statements from confidential witnesses and other documents produced by the Department of Education ("DOE") in connection with a FOIA request issued by counsel for plaintiffs in *Pension Trust Fund for Operating Engineers v. DeVry Education Group, Inc., et al.*, Third Am. Compl. [Doc. 84], Case No. 16-CV-05198 (N.D. Ill. Jan. 29, 2018). (*Id.* at ¶¶ 151–52 & n.18.) The plaintiffs in *Pension Trust* quoted these witness statements and DOE documents directly in their complaint to support their allegations that Defendants provided misleading statistics "in order to boost student enrollment and maximize profits." (*Id.* at ¶ 151 n.18.) Plaintiffs also rely on the pleadings and hearing transcripts from the lawsuit the FTC brought after its investigation of Defendants. *See Federal Trade Commission v. DeVry Education Group, Inc.*, Case No. 2:16-CV-579, C.D. Cal., filed Jan. 27, 2016. These

hearing transcripts document that the FTC spent two years investigating Defendants before the suit was filed, and Defendants produced over two million documents to the agency during the investigation. The FTC, the federal agency charged with protecting consumers from fraud, conducted a thorough investigation into Defendants' representations to prospective students. Plaintiffs' allegation that Defendants' representations were false is in part based on the evidence gathered during this investigation and the FTC's actions and conclusions. (Second Am. Compl. [#62] at ¶¶ 163–85.) Finally, Plaintiffs cite to other investigations by governmental entities into Defendants' marketing scheme, such as the New York Attorney General, the Massachusetts Attorney General, the Higher Learning Commission, and the Veterans Administration. (*Id.* at ¶ 190.)

Defendants contend that Plaintiffs cannot borrow from another litigant's complaint and rely solely on "untested allegations" in alleging falsity. The court in *Polly* embraced this argument, holding not only that the plaintiffs' complaint was not sufficiently particularized but that it also failed to plead falsity. 2019 WL 587409, at *4–5. In *Polly*, the plaintiffs also grounded their allegations of falsity on allegations made by the FTC, Department of Education, and attorneys general of Massachusetts and New York, and confidential witness statements made in the *Pension Trust Fund* case, the same bases for falsity asserted here. *See id.* Though the *Polly* court acknowledged that the plaintiffs lacked access to the documents needed to corroborate their theory of fraud, it still found that the government investigations and allegations from other complaints were nothing more than "unproven allegations that do little to move the needle on plausibility" and held that the plaintiffs had not pleaded falsity. *See id.* at *5. The undersigned respectfully disagrees with this conclusion.

Viewing the allegations in Plaintiffs' Second Amended Complaint as a whole, Plaintiffs have stated a plausible claim that Defendants made false representations in their marketing of their educational products. Plaintiffs do not base the claims of falsity on mere conjecture or conclusory allegations. Rather, they have cited to numerous complaints and investigations brought by governmental entities at the state and federal level, as well as a Senate Report on For Profit Higher Education, which also implicated Defendants. And, again, the *Pension Trust Fund* complaint directly quotes some of the DOE documents, which give rise to an inference of falsity. It is not Plaintiffs' burden at this stage of the proceedings to prove their fraud claims. They must merely allege facts, which taken as true, make relief plausible. *See Grubbs*, 565 F.3d at 186. They have done so. "Plaintiff[s] have made the most diligent pre-complaint inquiry within their power and [have] stated enough facts to raise a reasonable expectation that discovery will reveal additional evidence of falsity." *See Brown*, 2019 WL 5073566, at *6. The Court should deny Defendants' motion to dismiss on this ground.

**B.    Plaintiffs' Second Amended Complaint sufficiently alleges causation and damages.**

Plaintiffs have also alleged viable causation and damages theories. Defendants contend that Plaintiff fails to allege any causal nexus between the alleged misrepresentations and Plaintiffs' alleged injuries, as is required for any Texas tort claim and to establish standing. *See Hawkins v. Walvoord*, 25 S.W.3d 882, 892 (Tex. App.—El Paso 2000, pet. denied) ("Cause in fact is an essential element of every negligent or intentional tort recognized in Texas."); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (explaining that constitutional minimum of Article III standing requires causal connection between injury and conduct complained of). In making this argument, Defendants identify Plaintiffs' injuries as their inability to find employment in their fields of study within six months of graduation. According

to Defendants, there is no allegation that Defendants' misrepresentations caused Plaintiffs' inability to find employment and the Second Amended Complaint ignores other key factors affecting the job search. As Plaintiffs make clear in their response, Defendants' argument misconstrues their injury, which is not an inability to find employment but the economic loss relating to the costs of purchasing educational products and services they would not have purchased but for the misrepresentations about the value of a DeVry education. (*See* Second Am. Compl. [#62] at ¶ 201 ("As a result of Defendants' conduct, Plaintiffs have been injured in that they paid tuition, purchased books and supplies, incurred debt, and attended classes in reliance on Defendants' representations.").

The causation standard for a DTPA action, for example, is "producing cause" and "proximate cause," both of which contain a cause-in-fact element, which requires that the defendant's act be "a substantial factor in bringing about the injury and without which the harm would not have occurred." *Hopkins v. Green Dot Corporation*, No. 5:16-CV-365-DAE, 2016 WL 4468272, at *6 (W.D. Tex. Aug. 24, 2016) (quoting *Metro Allied Ins. Agency, Inc. v. Lin*, 304 S.W.3d 830, 835 (Tex. 2009)). Every Plaintiff in this case has alleged that he or she encountered the Standard 90% Ad and heard the 90% statistic during an in-person meeting with a DeVry employee prior to enrollment. (Second Am. Compl. [#62] at ¶¶ 7–115.) Each Plaintiff has also alleged they would not have enrolled but for these representations. (*Id.*) Plaintiffs have adequately pleaded causation.

The Court should similarly reject Defendants' argument that Plaintiffs' claimed damages are too speculative to be cognizable as a matter of law. At the motion-to-dismiss stage, a court's inquiry is limited to whether a complaint plausibly states a non-speculative claim for damages. *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 802 n.41 (5th Cir. 2011). Through

this lawsuit, Plaintiffs seek restoration of "any money or property that was illegally acquired in violation of the [DTPA]"; "restitution of the monetary benefits conferred unto Defendants"; "restoration of the monetary benefits conferred unto Defendants"; and "restitution and/or restoration for unjust enrichment." (*Id.* at ¶¶ 202, 213, 221, 229.) Plaintiffs allege they would not have attended DeVry but for the misrepresentations. Plaintiffs' allegation is that they paid for something that did not have the value represented and they are entitled to restitution. Plaintiffs' damages are therefore measurable; they are the amount Plaintiffs paid for their education at DeVry.

Defendants argue these damages are speculative because it is unknown whether Plaintiffs "considered enrolling in or even applying to any other school with better employment prospects" or whether "tuition at schools with lower placement rates is cheaper than at DeVry," factors considered by other courts in finding damages in similar cases too speculative. *See Petrizzo*, 2018 WL 827995, at *6. These issues related to causation and damages are best resolved at summary judgment or trial. These are not pleading issues; they are evidentiary ones. Plaintiffs' damages, as alleged, are measurable and non-speculative.

**C.     Defendants have not proved that Plaintiffs are not consumers under the DTPA as a matter of law.**

Defendants also argue that Plaintiffs are not "consumers" within the meaning of the DTPA. The Texas Supreme Court has "recognized at least two requirements that must be established for a person to qualify as a consumer under the DTPA." *Sherman Simon Enter., Inc. v. Lorac Serv. Corp.*, 724 S.W.2d 13, 15 (Tex. 1987). To establish DTPA "consumer" status: "(1) a person must have sought or acquired, goods or services, by purchase or lease; and (2) the goods or services, purchased or leased, must form the basis of the complaint." *Cushman v. GC Servs., LP*, 657 F. Supp. 2d 834, 842–43 (S.D. Tex. 2009), *aff'd sub nom. Cushman v. GC Servs.,*

*L.P.*, 397 Fed. App'x 24 (5th Cir. 2010) (internal quotations omitted). According to Defendants, educational qualifications are intangible and therefore not "goods" or "services" under the DTPA.

Defendants have not directed the Court to any case that definitively holds that educational services are not recognized under the definition of consumer for purposes of the DTPA. And the only two cases cited by Defendants did not involve plaintiffs alleging misrepresentations by educational establishments they attended in pursuit of a degree. *See Devine v. Educ. Testing Serv.*, No. Civ. A. H-14-1782, 2014 WL 7072150 (S.D. Tex. Dec. 12, 2014); *Montes v. Am. Hosp. Ass'n*, No. 3:12-CV-1999-M-BK, 2012 WL 4928872 (N.D. Tex. Sept. 18, 2012), *report and recommendation adopted*, No. 3:12-CV-1999-M-BK, 2012 WL 4929853 (N.D. Tex. Oct. 16, 2012). Rather, both *Devine* and *Montes* involved individuals attempting to obtain certifications required for employment based on their performance on tests given by private testing services. Both plaintiffs failed the tests due to alleged issues with the test itself or the testing environment. Both courts held that the individuals were not consumers under the DTPA because the acquisition of an appointment to sit for a certification examination is an intangible, not a good or service. *Devine*, 2014 WL 7072150, at *6; *Montes*, 2012 WL 4928872, at *6.

The Court is not persuaded that either of these opinions addressed the question here— whether the Texas Supreme Court would recognize a course of instruction or training (rather than a seat at an examination)—to be a service under the DTPA. At least one Texas appellate court has held that former students of a defunct law school had presented some evidence of consumer status within the meaning of the DTPA in a lawsuit against a father of a late law-school manager who received tuition payments at his place of business. *Moritz v. Bueche*, 980

S.W.2d 849, 855 (Tex. App.—San Antonio 1998, no pet.)  At issue in that case was whether the students were in contractual privity with the father in order to be consumers, not whether educational services were services under the DTPA.  *Id.*  Nonetheless, the court held that the students "clearly" were consumers because their status under the DTPA was defined by their relationship to the goods or services, here their law school education, not their opponent.  *Id.*  Defendants have not established as a matter of law that Plaintiffs are not consumers under the DTPA.

**D.     Plaintiffs may plead a theory of unjust enrichment.**

Defendants maintain that Plaintiffs cannot bring an independent claim for unjust enrichment where an express contract governs the parties' dispute.  Texas law is unclear as to whether unjust enrichment is recognized as an independent cause of action or merely as a "quasi-contractual theory of recovery."  *Perales v. Bank of Am., N.A.*, No. CIV.A. H-14-1791, 2014 WL 3907793, at *3 (S.D. Tex. Aug. 11, 2014) (Rosenthal, J.); *Compare Elledge v. Friberg-Cooper Water Sup.*, 240 S.W.3d 869, 870 (Tex. 2007) (reaffirming that limitations period for unjust-enrichment claims is two years) *with Foley v. Daniel*, 346 S.W.3d 687, 690 (Tex. App.—El Paso 2009, no pet.) ("Unjust enrichment is not an independent cause of action . . . .").  "Whether unjust enrichment is characterized as a cause of action or a theory of recovery," however, "the elements are clear."  *Perales*, 2014 WL 3907793, at *3.  "Unjust enrichment is an implied-contract basis for requiring restitution when it would be unjust to retain benefits received."  *Id.* (citing *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.).  Unjust enrichment allows recovery "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage."  *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).  "Generally, a party may recover under quantum meruit

only when there is no express contract covering the services or materials furnished." *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990).

Plaintiffs' cause of action for unjust enrichment is entitled "restitution for unjust enrichment" and alleges that Defendants have been unjustly enriched by wrongfully obtaining benefits from Plaintiffs by fraud. (Second Am. Compl. [#62] at ¶¶ 222–29.) Defendants argue that Plaintiffs' enrollment agreements (a contract) govern this dispute and therefore recovery in quasi-contract is not available.

Plaintiffs have not asserted a claim of breach of contract in this case based on their enrollment agreements or any other contract, and it is not clear from Plaintiffs' pleadings whether a contract in fact governs this dispute and would provide the basis for their recovery. Moreover, even where a breach of contract claim is expressly pleaded, courts permit a party to advance alternative theories of recovery at the pleading stage of litigation. *See United States v. BNP Paribas SA*, 884 F. Supp. 2d 589, 616 (S.D. Tex. 2012) ("parties may plead alternative and inconsistent theories of recovery"); *Centerboard Sec., LLC v. Benefuel, Inc.*, No. 3:15-CV-2611-G, 2016 WL 3541846, at *11 (N.D. Tex. June 29, 2016) ("In some situations . . . both a breach of contract and an unjust enrichment claim may survive a motion to dismiss when pled as alternative theories of recovery.") (internal quotation and citation omitted). Defendants have not established that they are entitled to dismissal of Plaintiffs' claim or theory of unjust enrichment.

**E.    Plaintiffs' Second Amended Complaint contains sufficient allegations against Adtalem.**

Defendants' final basis for dismissal of Plaintiffs' Second Amended Complaint is an argument that Plaintiffs have not alleged conduct implicating Adtalem in the alleged fraud. In its previous order on Defendants' earlier motion to dismiss, the District Court held that Plaintiffs' First Amended Complaint failed to allege that Adtalem was in control of or benefitted from

DeVry's advertising practices. The Second Amended Complaint, however, contains extensive allegations against Adtalem, including allegations regarding how it controlled and benefited from DeVry's advertising practice.

Plaintiffs' Second Amended Complaint contains ample allegations connecting Adtalem's executives to the misrepresentations at issue and alleging that Adtalem controlled, approved, ratified, and benefitted from DeVry's misrepresentations. (Second Am. Compl. [#62] at ¶¶ 138–62.) The theory against Adtalem is that its high-level corporate officers and executives knew the 90% representation was false or acted with reckless disregard for the truth and nonetheless and were directly involved in drafting, reviewing, publishing, and disseminating the false and misleading statements at issue in this case. (*Id.*) For example, Plaintiffs allege that Adtalem President and CEO Daniel Hamburger ratified and approved the methodology used for calculating employment outcomes based on his statements quoted in the *Pension Trust Fund* complaint. (*Id.* at ¶ 153.) The *Pension Trust Fund* complaint also references confidential witnesses who were directors of Adtalem reported that Hamburger knew about the discrepancy between the 90% statistic and the actual reported data. (*Id.* at ¶ 156.) Plaintiffs have alleged sufficient participation in the alleged fraud by Adtalem executives, and the Court should not dismiss this Defendant from this action.

### IV. Conclusion and Recommendation

Having considered Plaintiffs' Second Amended Complaint in light of the arguments made in Defendants' Motion to Dismiss, the undersigned recommends that Defendants' Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint [#64] be **DENIED**.

### V. Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 13th day of December, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE